UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

Case No.:  6:12-bk-10227


IN RE:


8 MILE RANCH, LLC,                                    VOLUME II

            Debtor.


_____/



HEARING

DATE:              MARCH 30, 2015

TIME:              1:10 P.M. - 4:08 P.M.

BEFORE:            THE HONORABLE KAREN S. JENNEMANN

LOCATION:          UNITED STATES BANKRUPTCY COURT
                   400 WEST WASHINGTON STREET
                   ORLANDO, FL 32801

1                          A P P E A R A N C E S

2    RICK WEBBER, ESQUIRE, AND SCOTT BAKER, ESQUIRE,

3         ON BEHALF OF THE DEBTOR

4    RUBEN JOSEPH O'BERRY ON BEHALF OF DEBTOR

5    JOSEPH JONES, ESQUIRE, AND LEWIS KILLIAN, ESQUIRE, ON BEHALF OF

6         CREDITOR MACHADO FAMILY LIMITED PARTNERSHIP No.1 AND No.3

7    LUIS MACHADO AND CEFERINO MACHADO, ON BEHALF OF CREDITOR

8

1                                  I N D E X

2    TESTIMONY OF SCOTT SHUKER ..........................................................117

3          DIRECT EXMINATION BY MR. JONES ....................................117

4          CROSS-EXAMINATION BY MR. WEBBER ...............................123

5    DEBTOR'S EXHIBIT 19 ADMITTED ........................................127

6    TESTIMONY OF RUBEN JOSEPH O'BERRY .......................................128

7          DIRECT EXAMINATION BY MR. WEBBER ...............................129

8    DEBTOR'S EXHIBIT 15 ADMITTED .........................................150

9          CROSS-EXAMINATION BY MR. JONES ...............................165

10   CREDITOR'S EXHIBIT 12 ADMITTED ....................................173

11   COURT TAKES JUDICIAL NOTICE OF DOCUMENTS 57 AND 58 ....................190

12   COURT TAKES JUDICIAL NOTICE OF DOCUMENT 1 .......................................192

13         REDIRECT EXAMINATION BY MR. WEBBER ........................................196

14   CLOSING ARGUMENT BY MR. KILLIAN ...............................................198

15   CLOSING ARGUMENT BY MR. WEBBER ...........................................203

16   MOTION TO COMPEL TAKEN UNDER ADVISEMENT BY THE COURT.........221

17   CERTIFICATE OF OATH ...............................................................223

18

P R O C E E D I N G S

1

2          THE CLERK:  THE COURT CALLS CASE NUMBER 12-10227,

3      8 MILE RANCH, LLC.

4          ALL INTERESTED PARTIES, PLEASE COME FORWARD AND

5      ENTER YOUR APPEARANCE.

6          MR. WEBBER:  GOOD AFTERNOON, JUDGE.  RICK WEBBER

7      RETURNING FOR DEBTOR 8 MILE RANCH LLC.  RUBEN JOSEPH

8      O'BERRY, MANAGING MEMBER, IS SEATED AT COUNSEL TABLE.

9          MR. JONES:  GOOD AFTERNOON, YOUR HONOR.  JOSEPH JONES

10     FROM THE FIRM OF BERGER SINGERMAN; AND WITH ME I HAVE MR.

11     LEWIS KILLIAN.  I HAVE MR. LUIS MACHADO AND MR. CEFERINO

12     MACHADO; AND WE REPRESENT THE CREDITORS, MACHADO

13     FAMILY LIMITED PARTNERSHIPS NO. 1 AND NO. 3.

14         THE COURT:  VERY GOOD.  THANK YOU.  WE TOOK A BREAK

15     FROM THE HEARING ON MARCH 3RD.  WE MADE A VALIANT EFFORT,

16     BUT DIDN'T QUITE GET THROUGH EVERYTHING ON THAT DATE.  MY

17     NOTES REFLECT THAT THERE NEEDS TO BE THE TESTIMONY OF MR.

18     O'BERRY AND CLOSING ARGUMENTS.  I DID SEE A SUPPLEMENTAL

19     WITNESS LIST THAT WAS SUPPLIED; AND I GUESS I WOULD LIKE AN

20     UPDATE FROM BOTH PARTIES AS TO WHAT YOU ANTICIPATE THIS

21     AFTERNOON.  I DON'T MUCH CARE WHO GOES FIRST.  MR. JONES OR

22     MR. KILLIAN?

23         MR. JONES:  YES, YOUR HONOR.  WE FILED OUR

24     SUPPLEMENTAL WITNESS LIST FOR MR. SCOTT SHUKER, WHO WAS

25     THE MEDIATOR IN THIS CASE, SINCE THE DISCUSSIONS ABOUT THE

1    MEDIATION AND THINGS THAT OCCURRED DURING THE MEDIATION

2    TOOK PLACE DURING MR. WEBBER'S DIRECT TESTIMONY; AND WE

3    BROUGHT HIM IN AS A REBUTTAL WITNESS, BECAUSE HE HAS

4    INFORMATION THAT WOULD GREATLY AID THE COURT IN MAKING

5    ITS DETERMINATION.  I ANTICIPATE LESS THAN HALF A PAGE FOR

6    MR. SHUKER.  HE'LL BE VERY BRIEF -- OH, MY CROSS-EXAMINATION

7    OF MR. BERRY.  I'M SORRY, YOUR HONOR.  THEN MR. KILLIAN WILL

8    JUST BE HANDLING THE BRIEF LEGAL CLOSINGS FOR ME AND THAT

9    WILL BE IT.

10          THE COURT:  VERY GOOD.  VERY GOOD.  AND MR. WEBBER?

11          MR. WEBBER:  YES, JUDGE, WE HAD FILED A SUPPLEMENTAL

12    EXHIBIT LIST, AS WELL.  WE ADDED EXHIBIT NUMBER 19, WHICH

13    WAS THE DECEMBER 18, 2013, POST-CONFIRMATION STATUS

14    CONFERENCE TRANSCRIPT.  MR. O'BERRY WOULD BE THE ONE

15    WITNESS.  MR. SHUKER IS A BUSY MAN.  I DON'T CARE IF HE GOES

16    FIRST.

17          THE COURT:  AND YOU DON'T OPPOSE HIS TESTIMONY?

18          MR. WEBBER:  NO.  NO.  HE WAS THE MEDIATOR.  THAT'S FINE.

19          THE COURT:  WITHOUT OPPOSITION, THEN, LET'S GO AHEAD

20    AND DO THAT.  IF YOU WANT TO TAKE MR. SHUKER NEXT, THEN.

21          MR. JONES:  YES, YOUR HONOR.  THANK YOU.

22          THE COURT:  AND MR. SHUKER, IF YOU WANT TO COME

23    FORWARD AND BE SWORN.

24          THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.  DO YOU

25    SOLEMNLY SWEAR THE TESTIMONY YOU'RE ABOUT TO GIVE WILL

1    BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH,

2    SO HELP YOU GOD?

3         THE WITNESS:  I DO.

4                        R. SCOTT SHUKER, ESQUIRE,

5    HAVING BEEN DULY SWORN, WAS EXAMINED AND TESTIFIED AS

6    FOLLOWS:

7         THE CLERK:  PLEASE STATE YOUR NAME AND ADDRESS FOR

8    THE RECORD.

9         THE WITNESS:  R. SCOTT SHUKER, 3517 LEGACY HILLS COURT,

10   LONGWOOD, FL, 32779.

11        THE CLERK:  PLEASE HAVE A SEAT.

12                     DIRECT EXAMINATION

13   BY MR. JONES:

14        Q     GOOD AFTERNOON, MR. SHUKER.

15        A     GOOD AFTERNOON.

16        Q     THANK YOU FOR TAKING SOME TIME OUT TO COME THIS

17   AFTERNOON.  I REALIZE IT'S A LITTLE UNUSUAL FOR A MEDIATOR TO BE

18   CALLED IN TO PROCEEDINGS FOR TESTIMONY.  I JUST WANT TO GIVE YOU

19   BRIEFLY AN EXPLANATION.  EARLIER, WE HAD SOME DIRECT TESTIMONY

20   CONCERNING THE MEDIATION; AND THE COURT DETERMINED THAT

21   CIRCUMSTANCES AND SITUATIONS THAT OCCURRED DURING MEDIATION

22   WERE SO IMPORTANT TO THE DETERMINATION OF THE ULTIMATE ISSUES

23   IN THIS CASE THAT THE CONFIDENTIALITY AND PRIVILEGE OF THE

24   MEDIATION HAS BEEN WAIVED.

25        SO, WITH THAT SAID, I'M GOING TO BE ASKING YOU SOME PRETTY

1    POINTED QUESTIONS ABOUT DISCUSSIONS AND PROCEDURES AND THINGS

2    THAT HAPPENED DURING THE MEDIATION, OKAY?

3        A    OKAY.

4        Q    GREAT.  THE FIRST THING I'M GOING TO DO IS HAND YOU --

5    IT'S BEEN LABELED DEBTOR'S EXHIBIT SIX.  I GUESS WE'LL PUT IT IN, AS

6    WELL.  WE CAN SHARE THAT AFTERWARDS.  BUT WHAT I'VE JUST PUT IN

7    FRONT OF YOU IS THE MEDIATED SETTLEMENT AGREEMENT IN THIS CASE.

8    DO YOU RECOGNIZE THIS DOCUMENT?

9        A    I DO.

10       Q    OKAY.  AND HOW DO YOU RECOGNIZE IT?

11       A    I SERVED AS MEDIATOR FOR THIS MEDIATION; AND ONCE I

12   GOT THE SUBPOENA FROM YOUR FIRM, I WENT AND DUG IT BACK OUT

13   AND READ IT AGAIN.

14       Q    OKAY.  GREAT.  SO, PRIOR TO COMING TODAY, THEN, YOU

15   HAVE REVIEWED THE FILE, REFRESHED YOUR MEMORY?

16       A    I HAVE.

17       Q    OKAY.  GREAT.

18           THE COURT:  LET ME CONFIRM WITH THE DEBTOR.  THERE IS

19           NO OBJECTION TO MR. SHUKER'S -- I KNOW YOU DIDN'T OBJECT TO

20           HIM TESTIFYING, BUT AS TO THE CONFIDENTIALITY STIPULATION?

21           MR. WEBBER:  NO.  I AGREE WITH MR. JONES, JUDGE, THAT

22           YOU HAD -- WE HAD BROUGHT THAT INTO ISSUE AS TO THE TERMS

23           OF -- IN THE SETTLEMENT AGREEMENT, WHY THEY WERE REACHED,

24           ET CETERA.  SO, I DON'T OBJECT, JUDGE.

25           THE COURT:  VERY GOOD.  THANK YOU.  GO AHEAD MR.

1      SHUKER.

2   BY MR. JONES:

3      Q      OKAY, MR. SHUKER.  AS YOU HAD JUST EXPLAINED, YOU

4   WERE THE MEDIATOR IN THIS CASE; AND ALTHOUGH SOMEWHAT

5   REDUNDANT, THIS CASE DID SETTLE.  IS THAT CORRECT?

6      A      CORRECT.

7      Q      OKAY.  WHAT PART DID YOU PLAY, IF ANY, IN PUTTING

8   TOGETHER THIS MEDIATED SETTLEMENT AGREEMENT?

9      A      I THINK AT THE END OF THE DAY IT WAS CONCEPTUALLY MY

10   IDEA.  THE PARTIES WERE FAIRLY FAR APART IN THEIR POSITIONS.  THERE

11   WAS REALLY ONLY ONE CREDITOR, THE FOLKS REPRESENTED BY BROAD

12   AND CASSEL.  AND SO, AFTER GOING BACK AND FORTH WITH THE TWO

13   SIDES, IT WAS ME WHO SUGGESTED WHY DON'T WE WRAP THIS ALL UP IN

14   THE PLAN, GIVE THE DEBTOR AN AMOUNT OF TIME TO ATTEMPT TO SELL

15   THE PROPERTY, AGREE ON A STRIKE PRICE AND THE SPLIT OF THE

16   PROCEEDS, AND THEN AGREE TO THE DISPOSITION OF THE PROPERTY IF

17   IT'S NOT SOLD BY SOME TARGET; AND I THINK IT WAS ME THAT

18   SUGGESTED DO THIS THROUGH THE PLAN AND THEN YOU CAN SAVE DOC

19   STAMPS.  SO, IT WAS KIND OF MY IDEA AS TO HOW YOU COULD GET TO

20   THE POINT.  AND THEN WE FILLED IN NEGOTIATING THE DIFFERENT

21   POINTS OF IT IN TERMS OF THE AMOUNT TO BE SOLD FOR AND THE SPLIT

22   OF PROCEEDS.

23      Q      ONE OF THE THINGS THAT'S BEEN IN CONTENTION IS THIS

24   NOTION THAT SOMETHING LESS THAN THE ENTIRE DEBTOR'S ESTATE

25   WAS TO BE DISPOSED OF THROUGH THIS MEDIATED SETTLEMENT

1  AGREEMENT IN TERMS OF THE REAL PROPERTY.  DO YOU HAVE ANY

2  KNOWLEDGE OF ANY PORTION OF THIS AGREEMENT WHICH ALLOWS THE

3  DEBTOR TO RETAIN ANY OF ITS REAL PROPERTY ASSETS?

4        A       IF I UNDERSTAND THE QUESTION CORRECTLY, NO, I DON'T

5  KNOW OF ANY PROPERTY THAT WAS TO REMAIN WITH THE DEBTOR.

6        Q       SO, ALL OF THE DEBTOR'S PROPERTY THAT CAME INTO THE

7  BANKRUPTCY WAS TO BE LIQUIDATED BY VIRTUE OF THIS AGREEMENT.

8  IS THAT ACCURATE?

9        A       THAT WAS MY UNDERSTANDING.

10        Q       OKAY.  AT ANY TIME DURING THE MEDIATION, WAS THERE

11  ANY DISCUSSION OF THE DEBTOR RETAINING PROPERTY IN SECTION 23?

12  DOES THAT --

13        A       THERE WAS NOT DISCUSSION OF THE DEBTOR RETAINING

14  ANY REAL PROPERTY.  THERE WAS DISCUSSION ABOUT A TRACTOR OR

15  SOMETHING LIKE THAT.  BUT AS TO THE REAL PROPERTY, NO.  THERE WAS

16  NO SEPARATE DISCUSSION ABOUT RETAINING ANY REAL PROPERTY.

17        Q       SO, ALL THE REAL PROPERTY WAS TO BE LIQUIDATED?

18        A       YES.

19        Q       I JUST WANTED TO ASK YOU JUST VERY BRIEFLY.  ATTACHED

20  TO THE BACK OF THIS MEDIATED SETTLEMENT AGREEMENT, THERE ARE

21  A NUMBER OF QUIT CLAIM DEEDS; AND WE'VE DISCUSSED THESE BACK

22  AND FORTH.  AND DO YOU HAVE A RECOLLECTION OR A KNOWLEDGE OF

23  WHY THOSE DEEDS ARE ATTACHED TO THIS MEDIATED SETTLEMENT

24  AGREEMENT?

25        A       NO.  I'D HAVE TO STUDY IT.

1     Q     OKAY.  HOW DID YOU COME UP WITH THE STRIKE PRICE

2  NUMBER OF $3 MILLION IN PARAGRAPH 1(C)?

3     A     IT WAS JUST A BACK AND FORTH.  THERE WAS A CERTAIN

4  AMOUNT SHOWN -- WELL, I KNOW DURING THE MEDIATION I ASKED, I

5  THINK IT WAS MS. VILMOS, TO GET THE DEBTOR'S SCHEDULES TO SEE

6  WHO THERE WAS ON UNSECUREDS; AND IT CONFIRMED THAT THE

7  MACHADO FAMILY WAS THE SOLE SECURED CREDITOR.  AND THERE WAS

8  SOME DISPUTE OVER WHAT WAS OWED.  THERE WERE TWO LAWSUITS

9  BETWEEN THE PARTIES, AND SO IT WAS REALLY A BACK AND FORTH IN

10  TERMS OF THE AMOUNT THAT THE MACHADO FAMILY WOULD TAKE TO

11  BE PAID IN FULL, BECAUSE THEY WERE ASSERTING IT WAS MORE ;

12  DEBTOR WAS ASSERTING IT WAS LESS, AND IT WAS JUST A CLASSIC

13  NEGOTIATION BACK AND FORTH.

14     Q     OKAY.  LOOKING AT PARAGRAPH 1(F) ON PAGE TWO, I'D LIKE

15  YOU TO JUST TAKE A LOOK AT THAT.  AND WHAT THAT CONCERNS IS THE

16  SPLIT OF THE NET PROCEEDS -- OR, THE SPLIT OF THE PROCEEDS, THE $3

17  MILLION, ABOVE -- LET ME BACK UP -- SPLIT OF PROCEEDS ABOVE $3

18  MILLION 50/50 BETWEEN DEBTOR AND CREDITORS.  DO YOU HAVE A

19  RECOLLECTION AS TO WHY THAT PROVISION IS IN HERE?

20     A     WELL, YEAH.  BECAUSE SINCE WE WERE DOING THIS AS PART

21  OF A PLAN, YOU HAD TO PROVIDE FOR UNSECURED CREDITORS; AND

22  THERE WEREN'T REALLY ANY OTHER ASSETS FOR UNSECURED.  AND

23  THERE WEREN'T VERY MANY UNSECURED CREDITORS TO SPEAK OF.  BUT

24  THERE WAS THE IDEA THAT YOU NEEDED TO THROW, SOMETIMES WE

25  CALL IT EUPHEMISTICALLY, A WISH NOTE OR A HOPE NOTE THAT THERE

1    WOULD BE SOMETHING TO GET; AND SO, THERE WOULD BE AN AMOUNT

2    OVER THREE MILLION FOR UNSECURED CREDITORS, AND THEN DEBTOR,

3    IF THE UNSECURED CREDITORS WERE PAID IN FULL.

4         Q    WAS THERE ANY DISCUSSION DURING THE MEDIATION AT

5    ANY POINT THAT THE DEBTOR -- WELL, YOU'VE PREVIOUSLY SAID THERE

6    WAS NO DISCUSSION THAT THE DEBTOR WOULD RETAIN ANY REAL

7    PROPERTY OUT OF THE ESTATE.  WAS THERE ANY DISCUSSION THAT THE

8    DEBTOR WAS GOING TO WORK THE LAND OR TRY TO GENERATE INCOME

9    FROM THE PROPERTY TO PAY UNSECURED CREDITORS?

10        A    NO.  THE DISCUSSION -- THIS WAS A MITIGATION BANK.  AND I

11   HAD ACTUALLY -- I THINK ONE OF THE REASONS THEY HIRED ME, OR

12   ASKED ME TO MEDIATE, WAS THAT I HAD DONE A CHAPTER 11 FOR

13   MITIGATION BANK BEFORE.  SO, THERE WAS DISCUSSIONS ABOUT HOW TO

14   SELL IT AND WHAT REAL ESTATE BROKER TO USE, BECAUSE IT WAS

15   SPECIALIZED PROPERTY, BEING A MITIGATION BANK.  BUT I DON'T

16   RECALL ANY DISCUSSION ABOUT WORKING THE LAND.

17        Q    OKAY.  IS THERE ANYTHING ELSE THAT YOU FEEL YOU CAN

18   CONTRIBUTE TO THE COURT'S UNDERSTANDING OF THIS MATTER THAT

19   WOULD BE HELPFUL?

20        A    I DON'T THINK SO.

21        Q    OKAY.

22             MR. JONES:  THANK YOU, MR. SHUKER.  I APPRECIATE YOUR

23   TIME.

24             THE WITNESS:  SURE.

25             THE COURT:  AND MR. WEBBER.

1          CROSS-EXAMINATION

2   BY MR. WEBBER:

3          Q      DO YOU HAVE EXHIBIT NUMBER -- DEBTOR'S EXHIBIT

4   NUMBER SIX IN FRONT OF YOU, MR. SHUKER?

5          A      I DO.

6          Q      YOU KNOW -- OR MAYBE YOU DON'T KNOW -- THERE WASN'T

7   A SALE IN THE SIX-MONTH PERIOD THAT WE HAD COME UP WITH FOR THE

8   STRIKE PRICE.  AND SO, IF YOU LOOK AT PARAGRAPH SMALL 4, "I", LITTLE

9   "v" ON PAGE TWO, DO YOU SEE THAT THIS ALSO COVERS THE DISPOSITION

10  OF THE PROPERTY IN THE EVENT NO THIRD-PARTY SALE OCCURS.  DO

11  YOU AGREE?

12         A      I DON'T -- I SEE A PARAGRAPH ONE.  WHERE ARE YOU

13  LOOKING?  I'M SORRY.

14         Q      I'M SORRY.  PARAGRAPH BIG ONE, AND THEN AT THE END --

15         A      OH, SURE.

16         Q      -- SMALL FOUR.

17         A      OKAY.  YEAH, THAT'S WHAT IT SAYS.

18         Q      AND JUST SO YOU KNOW, THERE WAS NO SALE TO A THIRD

19  PARTY.  SO, WE'RE INTO WHAT I CALL "PLAN B," OR SMALL ROMAN

20  NUMERAL "IV."  AND WOULD YOU AGREE WITH ME THAT PARAGRAPH "E"

21  DOWN FURTHER ON THAT SAME PAGE WOULD COVER WHAT WOULD

22  OCCUR IF THERE WASN'T A SALE TO A THIRD PARTY?

23         A      YES.

24         Q      AND IF YOU GO RIGHT BACK UP ABOVE WHERE WE WERE

25  JUST LOOKING TO THE SMALL ROMAN "ii" OR TWO, WHATEVER YOU

1    WANT TO CALL IT, IN PARAGRAPH ONE.

2          A          YES.

3          Q          DO YOU SEE AFTER THE ADDRESS THE WORDS "THAT IS

4    ENCUMBERED BY THE MORTGAGE"?

5          A          YES.

6          Q          DO YOU REMEMBER THAT THE DEBTOR ASKED FOR THAT

7    LANGUAGE TO BE INCLUDED IN THE MEDIATED SETTLEMENT

8    AGREEMENT?

9          A          I DON'T HAVE A RECOLLECTION ONE WAY OR THE OTHER.  I

10   CAN ONLY TELL YOU THAT MY RECOLLECTION IS THAT ALL THAT WAS

11   DISCUSSED WAS THAT THE WHOLE THING WOULD BE SOLD AND THERE --

12   EITHER WOULD HIT THE STRIKE PRICE OR ALL THE REAL PROPERTY

13   WOULD GO FOR THE CREDIT BID SALE.

14         Q          OKAY.  SO, YOU HAVE NO SPECIFIC RECOLLECTION OF THAT

15   NEGOTIATED TERM?

16         A          THE CLAUSE "THAT IS ENCUMBERED BY THE MORTGAGE"?

17         Q          YES.

18         A          I DO NOT.  NO.

19         Q          OKAY.  OKAY.  AND JUST FOR YOUR INFORMATION, WE'RE

20   LITIGATING OVER WHAT REAL PROPERTY IS ENCUMBERED --

21         A          OKAY.

22         Q          -- BY THE MORTGAGE TODAY.  SO, IF THERE WAS PROPERTY

23   THAT WAS NOT ENCUMBERED BY THE MORTGAGE, THAT WOULD BE

24   OTHER PROPERTY FOR CREDITORS, WOULD YOU AGREE?  ON MY

25   HYPOTHETICAL?

1    A    I THINK I'VE GONE INTO OPINION TESTIMONY.  IF YOU WANT

2    MY OPINION BASED ON WHAT WAS HERE, WAS THAT THIS WAS THE ONLY

3    CREDITOR OF -- ONLY SECURED CREDITOR OF THE DEBTOR; AND MY

4    RECOLLECTION OF IT WAS THAT IT WAS AN ALL-OR-NOTHING-TYPE

5    THING.  I DON'T REMEMBER SAYING "WE'RE ONLY GIVING YOU THE PART

6    THAT THERE'S PART OF A MORTGAGE, AND IF THERE'S A PART THAT'S

7    NOT COVERED BY THE MORTGAGE, DEBTOR, YOU GET TO KEEP THAT."

8    THAT MAY HAVE BEEN SOMEBODY'S INTENT, BUT THAT WAS NEVER

9    DISCUSSED.

10    Q    BUT YOU DON'T ACTUALLY REMEMBER WHY THIS CLAUSE

11    WAS PUT IN?

12    A    I DON'T.  NO.

13    Q    OKAY.

14    A    I DON'T RECALL A DISCUSSION OF THAT CLAUSE.

15    Q    OKAY.  ALL RIGHT.  AND THEN, YOU SEE RIGHT AFTER THAT

16    CLAUSE, "AS WELL AS THE PARCELS OWNED BY THE MACHADO FAMILY

17    LIMITED PARTNERSHIP NO. 3."  SO, THAT WOULD BE IN ADDITION TO THE

18    REAL PROPERTY ENCUMBERED BY THE MORTGAGE.

19    A    YES.

20    Q    DO YOU REMEMBER THE DISCUSSION OF WHY THAT

21    PROPERTY WAS NECESSARY IN THE SETTLEMENT?

22    A    I RECALL A DISCUSSION ABOUT THERE BEING PROPERTY

23    NEARBY OR ADJACENT TO THE DEBTOR'S REAL PROPERTY AND THAT IT

24    BEING MORE ADVANTAGEOUS -- I DON'T KNOW IF IT WAS BECAUSE OF

25    MITIGATION BANK OR REAL PROPERTY VALUES OR EVEN ACCESS, BUT

1   THERE WAS SOME PERCEIVED ADVANTAGE TO SELLING -- TO LISTING

2   THIS ALL TOGETHER.

3        Q      OKAY.  AND THEN YOU SEE -- DOWN BELOW THAT YOU SEE

4   COLLECTIVELY THE "PROPERTY" WHICH WOULD INCLUDE THE PROPERTY

5   ENCUMBERED BY THE MORTGAGE PLUS THESE ADDITIONAL PARCELS.

6        A      THAT'S HOW I READ THIS.

7        Q      OKAY.  AND THE ADDITIONAL PARCELS ARE THE LEGALS

8   THAT ARE ATTACHED --

9        A      OKAY.

10       Q      -- TO THE SETTLEMENT AGREEMENT.  I KNOW YOU DIDN'T

11  HAVE TIME TO GO THROUGH IT.  NOW, IF WE LOOK OVER ON PAGE THREE,

12  MR. SHUKER, THE NEXT PAGE, PARAGRAPH "H."  COULD YOU JUST READ

13  THAT TO YOURSELF FOR A MINUTE?  JUST -- ON PAGE THREE, SMALL

14  PARAGRAPH "H."

15       A      OKAY.

16       Q      THERE ARE FIVE LAWSUITS THAT ARE SETTLED ON PAGE

17  ONE.  I THINK YOU HAD SAID "TWO" A MINUTE AGO, BUT THERE WERE

18  TWO IN FLORIDA, TWO IN TEXAS, AND AN ADVERSARY PROCEEDING.

19       A      OKAY.

20       Q      AND DO YOU REMEMBER THIS BEING A GLOBAL SETTLEMENT

21  OF ALL OF THAT LITIGATION AND DOING IT THROUGH A PLAN?

22       A      THAT WAS MY UNDERSTANDING.

23       Q      OKAY.  IF YOU LOOK BACK AT THAT PARAGRAPH "H" THAT I

24  JUST HAD YOU LOOK AT; AND IF, INDEED, THE PROPERTY IS GOING TO BE

25  DEEDED TO THE SECURED CREDITOR, WOULD THAT BE UNTIL THE

1    PROPERTY IS SOLD IN THAT PARAGRAPH?

2          A      YEAH, I WOULD THINK SO.

3          Q      OKAY.

4                 MR. WEBBER:  JUDGE, I DON'T HAVE ANY FURTHER

5    QUESTIONS FOR MR. SHUKER.

6                 THE COURT:  AND MR. JONES?

7                 MR. JONES:  I HAVE NOTHING ELSE, YOUR HONOR.

8                 THE COURT:  THANK YOU FOR YOUR TIME TODAY.

9                 THE WITNESS:  THANK YOU.  HAVE A GOOD DAY.

10                THE COURT:  YOU, TOO.

11                MR. WEBBER:  THANK YOU.

12                THE COURT:  ANYTHING -- WELL, LET ME ASK BEFORE I

13   FORGET -- IS THERE ANY OBJECTION TO THE RECEIPT OF THE

14   DEBTOR'S SUPPLEMENTAL EXHIBIT NUMBER 19, THE TRANSCRIPT?

15                MR. JONES:  NO, YOUR HONOR.

16                THE COURT:  VERY GOOD.  IT WILL BE ADMITTED.

17                MR. WEBBER:  THANK YOU, JUDGE.

18                THE COURT:  AND THEN, MR. O'BERRY, IF YOU'D LIKE TO

19   COME AND BE SWORN, UNLESS THERE'S SOMETHING ELSE WE NEED

20   TO DISCUSS.  NO?  MR. O'BERRY, IF YOU'D COME FORWARD AND BE

21   SWORN.

22                MR. WEBBER:  AND, JUDGE, I JUST WANTED TO REMIND YOU

23   MR. O'BERRY IS ALMOST TOTALLY DEAF.  I'M LOUD AND LOW, BUT

24   I JUST WANT TO REMIND THE COURT.

25                THE COURT:  I'LL DO MY BEST.

1          MR. WEBBER:  THANK YOU.

2          THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.  DO YOU

3     SOLEMNLY SWEAR THE TESTIMONY YOU'RE ABOUT TO GIVE WILL

4     BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH,

5     SO HELP YOU GOD?

6          THE WITNESS:  YES, MA'AM.

7                    RUBEN JOSEPH O'BERRY,

8     HAVING BEEN DULY SWORN, WAS EXAMINED AND TESTIFIED AS

9     FOLLOWS:

10          THE CLERK:  PLEASE STATE YOUR NAME AND ADDRESS FOR

11     THE RECORD.

12          THE WITNESS:  RUBEN JOSEPH O'BERRY, 5400 8 MILE RANCH

13     ROAD, ST. CLOUD, FLORIDA.

14          THE CLERK:  PLEASE HAVE A SEAT.

15          THE COURT:  DO WE HAVE OUR EARPHONES HERE, BY ANY

16     CHANCE?  WE'RE GOING TO GIVE MR. O'BERRY -- IT'S AN AMPLIFIED

17     MICROPHONE.  HOPEFULLY, THIS WILL HELP YOU HEAR A LITTLE

18     BIT BETTER, MR. O'BERRY.

19          THE WITNESS:  ALL RIGHT.

20          THE CLERK:  THE VOLUME, SO JUST TURN IT HOWEVER YOU

21     CAN HEAR BEST.

22          THE COURT:  DOES THAT HELP?

23          THE WITNESS:  YES, MA'AM.

24          THE COURT:  MR. -- LET'S SEE.  WHERE WERE WE AT ON THE

25     EXAMINATION?  I THINK IT IS MR. JONES?

1          MR. JONES:  I'M SORRY, JUDGE.  CAN YOU --

2          THE COURT:  I WAS JUST ASKING WHO WANTS TO ASK MR.

3   O'BERRY QUESTIONS?

4          MR. JONES:  YES, IT'S YOUR WITNESS.

5          MR. WEBBER:  I THOUGHT THAT THEY WERE GOING TO ASK

6   FIRST, JUDGE, BUT I'LL BE HAPPY TO START.

7          THE COURT:  OKAY.

8          MR. WEBBER:  HAPPY TO START.

9          THE COURT:  AND I DIDN'T WRITE THAT PIECE OF

10  INFORMATION DOWN, SO GO AHEAD AND GO FORWARD.

11                      DIRECT EXAMINATION

12  BY MR. WEBBER:

13        Q       THERE ARE TWO BOOKS IN FRONT OF YOU, MR. O'BERRY.

14  WOULD YOU GRAB THE WHITE ONE, WHICH IS THE DEBTOR'S EXHIBITS?

15  AND WOULD YOU PLEASE TURN TO EXHIBIT NUMBER ONE?  COULD YOU

16  TELL THE COURT WHAT THIS IS?

17        A       IT'S A MORTGAGE ON --

18        Q       WHICH MORTGAGE?

19        A       -- ON CENTER STATE BANK.

20        Q       IS IT ON THE REAL PROPERTY --

21        A       YES.

22        Q       -- THAT WE'RE LITIGATING ABOUT TODAY?

23        A       YES.

24        Q       WOULD YOU PLEASE TURN TO THE LEGAL DESCRIPTIONS,

25  WHICH IS NEAR THE END OF THE EXHIBIT?  IF YOU LOOK RIGHT TO THE

1  LEFT, THERE, YOU'LL SEE A DATE ON THAT PIECE OF PAPER THAT SAYS

2  "PAGE 7 OF 8." COULD YOU TELL THE COURT WHAT DATE THAT IS? TO

3  THE LEFT, MR. O'BERRY.

4        A      IT'S THE 9TH OF APRIL 2007.

5        Q      DO YOU REMEMBER IF THAT'S THE TIME THAT YOU

6  EXECUTED THE MORTGAGE?

7        A      YES, I GUESS SO. THAT'S WHEN I SIGNED IT.

8        Q      NOW, WOULD YOU LOOK TO THE RIGHT, THERE, WHERE IT

9  HAS THE PARCEL ONE AND PARCEL TWO?

10       A      YES, SIR.

11       Q      WHEN YOU SIGNED THIS MORTGAGE, DID YOU READ THESE

12  LEGAL DESCRIPTIONS?

13       A      NO, SIR.

14       Q      NOW, YOU NOTICE UP AT THE TOP, THERE, IT HAS "PARCEL

15  ONE" AND "PARCEL ONE" TWICE.

16       A      YES, SIR.

17       Q      DID YOU NOTICE THAT WHEN YOU SIGNED THE MORTGAGE?

18       A      NO, SIR.

19       Q      NOW, IN PARCEL ONE, WHAT OTHER --

20              MR. WEBBER: JUDGE, I'M TRYING TO HELP THE COURT HERE.

21       THERE ARE SECTIONS AND QUARTERS OF SECTIONS AND

22       DIRECTIONS AND SECTIONS; AND THEN THERE'S ALWAYS THESE

23       "LESS OUT" AREAS, OKAY? SO, I'M TRYING TO HELP THE COURT

24       SHOW WHAT PARCEL ONE AND PARCEL TWO SECTIONS COVER.

25  BY MR. WEBBER:

1      Q      WHAT ARE THE THREE SECTIONS COVERED UNDER PARCEL

2   ONE?

3      A      PARCEL ONE IS 13, 24, AND 19.

4      Q      OKAY.  NOW --

5             MR. WEBBER:  JUDGE, MAY I APPROACH AND JUST MOVE

6      THAT PICTURE JUST A LITTLE?

7             THE COURT:  CERTAINLY.

8   BY MR. WEBBER:

9      Q      NOW, ARE YOU FAMILIAR WITH THIS REAL PROPERTY, MR.

10  O'BERRY, THAT I HAVE ON DEBTOR'S EXHIBIT 15 NEXT TO YOU ON THAT

11  BIG AERIAL?

12     A      YES.

13     Q      AND HOW LONG HAVE THE O'BERRYS OWNED THIS

14  PROPERTY IN SOUTHERN OSCEOLA COUNTY?

15     A      ROUGHLY, A LITTLE OVER 30 YEARS.

16     Q      A LITTLE OVER 30 YEARS?  NOW, YOU SEE THAT TURQUOISE

17  OR BLUE LINE?

18     A      YES, SIR.

19     Q      WHAT'S TO THE LEFT OF THAT TURQUOISE OR BLUE LINE?

20     A      THIS SECTION HERE?

21     Q      YES.

22     A      THAT'S SECTION 23.

23     Q      AND THAT'S THE NORTHEAST QUARTER --

24     A      YES.

25     Q      -- OF SECTION 23?  COULD YOU POINT TO THE JUDGE WHERE

1    SECTION 24 IS?

2          A       YEAH.  IT'S RIGHT BESIDE OF IT RIGHT HERE.

3          Q       AND SO, IT WOULD BE TO THE RIGHT --

4          A       YES.

5          Q       -- OF THAT PURPLE LINE?  AND CAN YOU POINT TO THE JUDGE

6    WHERE SECTION 13 IS?

7          A       RIGHT UP HERE.

8          Q       OKAY.  IS THAT WHAT I'M LOOKING AT THESE SECTION 13,

9    SECTION 24?  NOW, IS SECTION 19 ON THAT MAP?

10         A       YES, PART OF IT IS OVER RIGHT IN THE FAR CORNER RIGHT

11   HERE.

12                 THE COURT:  YOU CAN GET UP, SIR, IF YOU NEED TO -- I

13                 WOULD LIKE YOU TO GET UP.  SHOW ME.

14   BY MR. WEBBER:

15         Q       OKAY.  THAT'S SECTION 19.

16         A       YEAH.  RIGHT THERE.

17         Q       AND SO, THAT -- THAT'S WHAT WAS SUPPOSED TO BE PARCEL

18   ONE IN THE MORTGAGE, RIGHT?

19         A       YES.  YES.

20         Q       OKAY.  NOW, YOU OWNED PARCEL 19 BEFORE.  IS THAT

21   ACCURATE?

22         A       NO.

23         Q       OKAY.

24         A       WE OWNED 19 AND THE NORTH HALF.

25                 THE COURT:  AND CAN YOU SPEAK UP JUST A LITTLE BIT SO

1          WE CAN HEAR YOU?

2                    THE WITNESS:  OKAY.

3                    THE COURT:  OKAY.

4     BY MR. WEBBER:

5          Q        DID YOU OWN PART OF SECTION 19 BEFORE YOU INHERITED

6     THE LAND?

7          A        YES.

8          Q        TELL THE JUDGE WHAT LAND YOU INHERITED, ON THAT

9     PICTURE, FROM YOUR PARENTS.

10         A        I INHERITED 13 AND 24.

11         Q        AND SECTION 23?

12         A        AND SECTION 23.  YEAH.

13         Q        OKAY.  NOW, IF WE LOOK AT PARCEL TWO, GO BACK AND

14    LOOK AT THOSE LEGAL DESCRIPTIONS IN DEBTOR'S EXHIBIT ONE THAT

15    ESSENTIALLY COVERS THREE SECTIONS, TOO, AS WELL.  IS THAT RIGHT?

16         A        THAT'S RIGHT.

17         Q        AND WOULD YOU TELL THE JUDGE WHAT SECTIONS THOSE

18    ARE?

19         A        SECTIONS 20, 21, AND SECTION 16.

20         Q        OKAY.  NOW, NONE OF THOSE SECTIONS ARE ON THAT

21    PICTURE, ARE THEY?

22         A        NO, SIR.

23         Q        THOSE PARCELS ARE WHAT DIRECTION?

24         A        THOSE PARCELS, THEY WOULD BE OVER SOUTH OF THIS

25    RIGHT HERE.  EAST --

1     Q    EAST.  EAST.

2     A    -- OF THIS SECTION RIGHT HERE.

3     Q    OKAY.  SO, ALL RIGHT.  NOW, IF YOU TURN IN THE BLUE

4  BOOK, WHICH IS THE MACHADO EXHIBITS; AND YOU WOULD TURN,

5  PLEASE, TO MACHADO EXHIBIT NUMBER ONE.  DO YOU SEE THAT

6  APPRAISAL?

7     A    YES, SIR.

8     Q    THIS IS WHAT WE CALL THE JUNE 2006 APPRAISAL.  AND IF

9  YOU WOULD GO TO, PLEASE, TO PAGE ONE, WHAT ARE THE LEGAL

10  DESCRIPTIONS?  AGAIN, THE SECTIONS.  I'M TRYING TO MAKE THIS

11  EASIER.

12     A    THE SECTIONS ON THIS LEGAL HERE IS SECTION 20, SECTION

13  21, AND SECTION 16.

14     Q    OKAY.  SO, THAT WOULD MATCH UP WITH PARCEL TWO THAT

15  WE JUST LOOKED AT IN DEBTOR'S EXHIBIT NUMBER ONE.  IS THAT RIGHT?

16     A    THAT'S RIGHT.

17     Q    OKAY.  LET'S GO TO MACHADO EXHIBIT NUMBER TWO.  THIS

18  IS WHAT WE CALL THE SEPTEMBER 2006 APPRAISAL.  WOULD YOU PLEASE

19  GO TO PAGE ONE, LEGAL DESCRIPTION.

20     A    YES, SIR.

21     Q    WHAT SECTIONS DOES THIS APPRAISAL COVER?

22     A    IT'S SECTION 13, 24, AND 19.

23     Q    OKAY.  AND IF YOU LOOK BACK AT DEBTOR'S EXHIBIT

24  NUMBER ONE, ARE THOSE THE PARCELS IN PARCEL ONE?

25     A    YEAH.  THERE'S ONE IN PARCEL ONE.

1          Q          OKAY.  SO, WE HAVE SECTION 13, SECTION 24, AND SECTION

2     19.  NOW, LOOKING AT DEBTOR'S EXHIBIT NUMBER ONE, DO YOU SEE

3     WHERE IT SAYS "THE NORTHEAST QUARTER OF SECTION 24, TOWNSHIP 27

4     SOUTH, RANGE 31 EAST, LESS," THE LESS LANGUAGE GOING ON?  DO YOU

5     KNOW IF THAT IS A TYPOGRAPHICAL ERROR OR A WRONG LEGAL?

6          A          IT'S NOT WHAT WE AGREED ON AT THE BANK.

7          Q          OKAY.  DID YOU TYPE UP THIS LEGAL DESCRIPTION?

8          A          NO.

9          Q          DO YOU KNOW WHO DID?

10         A          I GUESS SOMEONE AT THE BANK PULLED IT UP.

11         Q          OKAY.

12         A          I DON'T KNOW.

13         Q          NOW, IN MACHADO EXHIBIT NUMBER TWO, WOULD YOU

14    PLEASE TURN TO PAGE 18?  DO YOU SEE THE FIVE YEARS SALES HISTORY

15    THERE?

16         A          YES, SIR.

17         Q          IS THAT ACCURATE?  WHO IS R. W. O'BERRY AND BEATRICE

18    O'BERRY?

19         A          THAT'S MY MOTHER AND FATHER.

20         Q          HAD THEY OWNED THE LAND FOR FIVE YEARS?

21         A          YES.

22         Q          IT SAYS "THE APPRAISERS WERE NOTIFIED BY OUR CLIENT" --

23    AND I ASSUME THAT TO BE CENTER STATE BANK -- "THAT TITLE TO THE

24    SUBJECT WILL BE TRANSFERRED TO JOE O'BERRY PRIOR TO THE LOAN

25    CLOSING."  IS THAT TRUE?

1       A       THAT'S TRUE.

2       Q       OKAY.  AND ONCE AGAIN, THE LEGAL IN THIS APPRAISAL

3   DOESN'T INCLUDE THE NORTHEAST QUARTER OF SECTION 23, DOES IT?

4       A       NO.  NO.

5       Q       ALL RIGHT.  NOW, IF WE TURN TO MACHADO -- AND THAT'S IN

6   THAT BLUE BOOK THERE --- EXHIBIT SIX.  DO YOU RECOGNIZE THIS DEED?

7       A       YES.

8       Q       ALL RIGHT.  TELL THE JUDGE WHAT THIS DEED IS, PLEASE.

9       A       IT'S A TRUSTEE DEED WHERE WE DIVIDED THE PROPERTY UP

10   AS MY FATHER'S ESTATE.

11              THE COURT:  AND I'M SORRY.  I JUST NEEDED THE EXHIBIT

12          NUMBER.

13              MR. WEBBER:  I'M SORRY.  SIX.  MACHADO SIX.

14              THE COURT:  GOT IT.  THANK YOU.  SORRY, MR. O'BERRY.

15              MR. WEBBER:  YOU'RE WELCOME.

16   BY MR. WEBBER:

17       Q       HAD YOUR -- THIS DEED WAS RECORDED ON MARCH 28, 2007.

18   HAD YOUR PARENTS PASSED AWAY PRIOR TO 2007?

19       A       YES.

20       Q       AND WHO IS EVERETT O'BERRY?

21       A       THAT'S MY OLDEST BROTHER.

22       Q       AND IS HE THE TRUSTEE PURSUANT TO THE TRUST

23   AGREEMENT?

24       A       YES.  YES.

25       Q       AND WHAT'S THE PURPOSE OF THIS TRUSTEE'S DEED.

1      A      THIS IS TO DIVIDE UP THE PROPERTY.

2      Q      OKAY.  WAS IT TO GIVE YOU AND MARSHA, YOUR WIFE,

3   YOUR PART OF THE INHERITANCE?

4      A      YES.

5      Q      WERE THERE OTHER PEOPLE WHO ALSO INHERITED LAND?

6      A      YES.  I HAVE TWO MORE BROTHERS BESIDES EVERETT.

7      Q      OKAY.  SO, YOU HAVE EVERETT; AND THEN WHO ARE YOUR

8   OTHER TWO BROTHERS?

9      A      CECIL AND DANNY.

10     Q      CECIL AND -- IS IT DANIEL?

11     A      YEAH.  DANIEL O'BERRY.

12     Q      NOW, THAT MAP THAT'S RIGHT NEXT TO YOU THERE.  I THINK

13  WE'VE ALREADY TALKED ABOUT THE THREE PARCELS THAT YOU GOT,

14  BUT LET'S JUST REVIEW THEM AGAIN.  LOOK IN THERE.  THERE'S THREE

15  PARCEL ID NUMBERS UP AT THE TOP.  DO YOU SEE THAT?

16     A      YES, SIR.

17     Q      AND YOU KNOW THAT IT GOES SECTION, RANGE, ET CETERA,

18  IN A PARCEL ID NUMBER?

19     A      YES.

20     Q      SO, WHAT THREE SECTIONS DOES THIS DEED DEAL WITH?

21     A      IT DEALS WITH SECTION 13, SECTION 23, AND 24.

22     Q      OKAY.  AND IF YOU GO DOWN AFTER THE WITNESS

23  PARAGRAPH, YOU GET THE DESCRIPTIONS OF THE SOUTH HALF OF

24  SECTION 13, THE NORTHEAST QUARTER OF SECTION 23, AND THE NORTH

25  HALF OF SECTION 24.

1      A      YEAH.

2      Q      AND YOU'VE ALREADY POINTED OUT TO JUDGE JENNEMANN

3   ON THAT MAP WHERE THOSE SECTIONS ARE LOCATED.

4      A      YEAH.

5      Q      NOW, WHAT LAND DID YOUR BROTHERS GET?  CAN YOU

6   POINT -- POINT TO THE GENERAL AREA?  YOU CAN STAND UP.

7      A      CECIL GOT THIS HALF.  THIS WAS DIVIDED IN HALF.  THERE

8   ARE TWO 80-ACRE BLOCKS.  CECIL GOT THIS HALF, AND THEN DANNY GOT

9   THIS HALF, AND THEN THIS IS A 45-ACRE ORANGE GROVE -- BEARING

10  GROVE THAT EVERETT GOT.

11     Q      OKAY.  SO, CECIL AND DANIEL BOTH GOT 80 ACRES?

12     A      YEAH.

13     Q      AND EVERETT GOT HOW MANY ACRES?

14     A      THERE'S 40, 45 ACRES IN THE GROVE.

15     Q      OKAY.  YOU CAN SIT BACK DOWN.  WHY DID EVERETT GET

16  LESS ACREAGE?

17     A      WELL, HE GOT A BEARING FRUIT GROVE -- ORANGE GROVE --

18  CITRUS GROVE.

19     Q      SO, HE HAD CASH -- CASH --

20     A      HE HAD A CASH INCOME.  AND THIS PROPERTY HERE IS JUST,

21  YOU KNOW, WHERE YOU LEASE IT FOR GRAZING AND STUFF LIKE THAT

22  FOR CATTLE.

23     Q      HOW COME YOU AND MARSHA GOT SO MUCH MORE LAND?

24     A      WELL, THIS PIECE OF PROPERTY, TO PAY OFF THE MORTGAGE

25  ON IT, I HAD TO SELL A PIECE OF PROPERTY IN LAKE COUNTY.  AND WHEN

1    I SOLD THE PIECE OF PROPERTY IN LAKE COUNTY, I JUST WANTED THAT

2    ACREAGE BACK PUT HERE; AND THAT'S PRETTY MUCH WHAT WE DONE.

3    WE JUST PULLED OUT WHAT I SOLD AND THEN DIVIDED THE REST OF IT

4    UP.

5        Q    HAD YOU ORIGINALLY OWNED ALL THE LAND BEFORE THE

6    TRUST?

7        A    NO.  NO.  MY FATHER OWNED HALF OF IT.

8        Q    AND YOU OWNED HALF OF IT?

9        A    YEAH.

10        Q    OKAY.  BEFORE THE TRUST WAS SET UP?  DO YOU KNOW?

11        A    BEFORE THE TRUST WAS SET UP?

12        Q    WHO OWNED THE LAND BEFORE THE TRUST WAS SET UP?

13        A    IT WAS OWNED JOINTLY WITH ME AND MY FATHER.

14        Q    OKAY.  AND THAT'S WHY YOU AND MARSHA GOT BACK

15    MORE ACREAGE THAN YOUR THREE BROTHERS?

16        A    WELL, I PAID A NOTE OFF ON THIS PIECE OF PROPERTY --

17        Q    HOW MUCH WAS THE NOTE?

18        A    -- BY SELLING THE --

19        Q    HOW MUCH WAS THE NOTE, JOE?

20        A    TWO HUNDRED AND FORTY THOUSAND.

21        Q    OKAY.  IS THAT ANOTHER REASON THAT YOU GOT MORE

22    LAND?

23        A    YEAH.

24        Q    NOW, WHEN YOU LOOK AT THE NORTHEAST DESCRIPTION,

25    THE NORTHEAST QUARTER OF SECTION 23 – IT'S RIGHT THERE IN THAT

1    DEED IN FRONT OF YOU – DO YOU SEE HOW IT GOES "LESS THE NORTH

2    HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF

3    THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION

4    23"?  DO YOU SEE THAT?

5         A     YES, SIR.

6         Q     OKAY.  IT'S OVER ON THE DEED TO THE LEFT, JOE.  THE BLUE

7    BOOK.

8         A     THE BLUE BOOK.

9         Q     READ THE LESS FROM NORTHEAST QUARTER OF SECTION 23.

10        A     I'M LOST RIGHT NOW ON THIS RIGHT.

11              MR. WEBBER:  JUDGE.

12              THE CLERK:  HE CAN TURN THAT UP, TOO.

13              MR. WEBBER:  YOU CAN TURN THAT UP.  ADJUST THE

14    VOLUME.

15              THE WITNESS:  YEAH, I AM.  THANK YOU.

16    BY MR. WEBBER:

17        Q     THIS LESS LANGUAGE.

18        A     ALL RIGHT.  IT SAYS "LESS THE NORTH ONE-HALF OF THE

19    SOUTHWEST ONE-QUARTER OF THE NORTHEAST ONE-QUARTER OF THE

20    NORTHWEST ONE-QUARTER OF THE NORTHEAST ONE-QUARTER OF

21    SECTION 23."

22        Q     CAN YOU TELL THE JUDGE WHAT THAT MEANS OR WHAT

23    THAT IS, THAT "LESS" LANGUAGE?

24        A     IT'S THE -- CUT OUT.

25        Q     OKAY.  AND HOW MUCH IS CUT OUT AND WHO OWNS IT?

1        A       IT'S 160 PLUS ONE OR TWO ACRES; AND IT BELONGS TO ME

2   AND MY WIFE.

3        Q       WHAT ABOUT THE LESS OUT PORTION, JOE?  WHO OWNS

4   THAT?

5        A       THE LITTLE ACRE AND A QUARTER PIECE IN IT?

6        Q       YES.

7        A       THAT BELONGS TO SOMEBODY OVERSEAS SOMEWHERE.  IT'S

8   A -- IT'S ACTUALLY RIGHT HERE IN THIS SWAMP.  IT'S -- YOU CAN'T GET

9   TO IT.  IT'S JUST AN ACRE AND A QUARTER OR HALF ACRE OR SO.  I NEVER

10  REALLY RESEARCHED IT.  BUT IT'S IN THE WATER ABOUT THIS DEEP.  SO,

11  IT'S REALLY WASN'T NO VALUE TO US.

12       Q       AND WAS THAT LESS OUT -- WAS THAT LESS OUT THERE

13  WHEN THE PROPERTY WAS PURCHASED BACK IN THE '80S?

14       A       OH, YEAH.

15       Q       OKAY.        NOW, IF YOU WOULD PLEASE TURN TO

16  MACHADO EXHIBIT NUMBER SIX.  IT'S THE BLUE ONE.  IF YOU WOULD GO

17  TO THAT.  WHAT IS THIS CONFIRMATION TERMINATION AGREEMENT?

18       A       ON SIX?

19       Q       NO.  YOU'RE ON SEVEN NOW.

20       A       SEVEN.  OKAY.  THIS CONFIRMATION AGREEMENT IS

21  BETWEEN ME AND MY FATHER THAT, YOU KNOW, HE COULD HAVE THE

22  RIGHT TO EITHER BUY ME OUT OR I HAD THE RIGHT TO BUY HIM OUT.

23  AND WE TERMINATED IT WHENEVER THE TRUST WAS -- WHENEVER THEY

24  TOOK OVER -- MY BROTHER TOOK OVER.

25       Q       OKAY.  AND THEN YOU WERE ABLE TO DISTRIBUTE THE LAND

1    OUT AS IN THE DEED WE LOOKED AT?

2        A      YEAH.

3        Q      OKAY.  IF YOU WOULD PLEASE TURN TO THE NEXT EXHIBIT,

4    WHICH IS MACHADO EIGHT.  AND WHAT'S THIS AGREEMENT TO BUY OR

5    SELL?

6        A      THE AGREEMENT -- THIS EIGHT IS A COPY OF THE OLD

7    ORIGINAL DEED, ISN'T IT?

8        Q      YEAH.  AND THAT'S WHAT?  APRIL 14, 1983?

9        A      YES, SIR.

10       Q      NOW, IF YOU FLIP BACK IN THAT SAME TOOK TO MACHADO

11   EXHIBIT NUMBER THREE.  DO YOU RECOGNIZE EXHIBIT NUMBER THREE?

12       A      YES.

13       Q      WHAT IS IT?

14       A      IT'S A SKETCH THAT KAREN GIEL WANTED JUST SOMETHING

15   TO SHOW HER BASICALLY, YOU KNOW, THE LAY OF THE WHOLE

16   PROPERTY IN THERE, PRETTY MUCH LIKE WHAT WE GOT UP HERE, BUT

17   YOU KNOW, IT WAS AN AERIAL PHOTO AND SHE JUST WANTED TO SEE

18   ACTUALLY WHERE IT WAS AT.

19       Q      OKAY.  SO, WE -- MR. BEEKMAN, THE SURVEYOR, TESTIFIED

20   LAST TIME.  DID YOU EMPLOY MR. BEEMAN TO DO THIS SKETCH FOR MS.

21   GIEL AT CENTER STATE BANK?

22       A      YES.

23       Q      OKAY.  NOW, WHAT'S THE DATE OF THIS SKETCH?

24       A      SEPTEMBER 21, TWO THOUSAND AND -- IS IT SIX?

25       Q      I THINK IT'S SIX.  I THINK IT'S SIX.  NOW, IF YOU GO UP TO

1    WHERE IT SAYS "'A' LEGAL DESCRIPTION" AT THE TOP, IT HAS -- AGAIN,

2    WE'RE TRYING TO GO BY SECTIONS -- IT HAS FOUR SECTIONS UP THERE,

3    RIGHT?

4        A      YES.

5        Q      OKAY.  AND WHAT ARE THE FOUR SECTIONS?

6        A      THIRTEEN, TWENTY-THREE, TWENTY-FOUR, AND NINETEEN.

7        Q      OKAY.  NOW, YOU ALREADY OWN 19, RIGHT?

8        A      YES.

9        Q      AND IN SEPTEMBER OF 2006, YOU DIDN'T OWN THE

10   NORTHEAST QUARTER OF SECTION 23 YET, DID YOU?

11       A      NO.

12       Q      AND YOU DIDN'T OWN SECTION 13?

13       A      NO.

14       Q      AND YOU DIDN'T OWN SECTION 24?

15       A      NO.

16       Q      SO, WAS THE PURPOSE OF THIS TO SHOW MS. GIEL THE

17   PROPERTY THAT WAS TO BE INHERITED IN THE FUTURE?

18       A      YES.

19       Q      AND SHE SPECIFICALLY ASKED FOR THAT?

20       A      YES.

21       Q      OKAY.  NOW, DID YOU EVER INTEND TO ENCUMBER THE

22   NORTHEAST QUARTER OF SECTION 23 WITH THE CENTER STATE BANK

23   MORTGAGE?

24       A      NO.  NO, THEY HAD ENOUGH WITH THE APPRAISALS.

25       Q      ALL RIGHT.  NOW, YOU DID INTEND TO ENCUMBER IN PARCEL

1   ONE, NOW.  REMEMBER THERE'S TWO PARCELS, BUT WE'RE JUST TALKING

2   ABOUT PARCEL ONE IN THIS LITIGATION, SO WE'RE GOING TO JUST

3   IGNORE PARCEL TWO.

4        A      YEAH.

5        Q      YOU HAD SECTION 24 --

6        A      YEAH.

7        Q      -- SECTION 19 AND SECTION 13.

8        A      YEAH.

9        Q      YOU INTENDED FOR ALL THOSE SECTIONS TO HAVE

10  MORTGAGES ON THEM TO CENTER STATE BANK?

11       A      YEAH.  EVERYTHING JUST THE ONE.

12       Q      NOW, LOOKING BACK AT MACHADO THREE, YOU HAD HEARD

13  MR. BEEKMAN'S TESTIMONY THAT IN THE PICTURE HE MADE AN ERROR.

14  DO YOU REMEMBER THAT TESTIMONY?

15       A      YES.  HE WAS JUST WRITING DOWN KIND OF WHERE

16  EVERYTHING WAS AT.

17       Q      RIGHT.  AND HE SAYS WHERE IT SAYS "THE NORTHEAST

18  QUARTER OF SECTION 24" HE SHOULD HAVE HAD THE NORTHEAST

19  QUARTER OF SECTION 23.  DO YOU REMEMBER THAT TESTIMONY?

20       A      YEAH.

21       Q      AND YOU WOULD AGREE THAT THAT'S THE NORTHEAST

22  QUARTER OF SECTION 23, EVEN THOUGH IT SAID "SECTION 24"?

23       A      YEAH.  YEAH.

24       Q      OKAY.  ALL RIGHT.  NOW, DID YOU DISCUSS THE LAND THAT

25  WOULD BE COVERED BY THE CENTER STATE BANK MORTGAGE WITH

1    KAREN GIEL?

2         A    YES, I DID.

3         Q    AND DID YOU DISCUSS THE NORTHEAST QUARTER OF

4    SECTION 23?

5         A    YES.

6         Q    TELL THE JUDGE WHAT YOUR DISCUSSION WAS.

7         A    THE DISCUSSION WITH SECTION 23 IS ME AND MY WIFE

8    WITHHELD THAT OUT, YOU KNOW, FOR OURSELF [SIC], BECAUSE THE

9    BANK HAD ENOUGH COLLATERAL TO COVER WITH -- THAT'S THE REASON

10   WHY WE GOT THE APPRAISALS ON IT.

11        Q    OKAY.  NOW, SO YOU'RE SAYING TO CENTER STATE BANK

12   "YOU GOT A THOUSAND ACRES WORTH $12 MILLION; YOU'VE GOT

13   ENOUGH COLLATERAL."

14        A    THAT'S RIGHT.

15        Q    AND "I'M NOT GOING TO GIVE YOU A MORTGAGE ON THE

16   NORTHEAST QUARTER OF SECTION 23."

17        A    THAT'S RIGHT.

18        Q    HOW OLD ARE YOU, MR. O'BERRY?

19        A    I'M SIXTY-SIX.

20        Q    AND WHAT KIND OF WORK HAVE YOU DONE DURING YOUR

21   LIFE, GENERALLY?

22        A    RANCH WORK, RUN CATTLE, PLANT GRASS, BUILD RANCHES.

23        Q    OKAY.  WHAT DO YOU DO NOW?

24        A    I'M BUILDING FENCE RIGHT NOW.

25        Q    FOR THE INTERSTATE SYSTEM IN THE STATE OF FLORIDA?

1      A      YES, SIR.

2      Q      DO YOU KNOW HOW MANY ACRES ARE IN A SECTION?

3      A      SIX HUNDRED AND FORTY.

4      Q      AND HOW DO YOU KNOW THAT?

5      A      WELL, THAT'S ONE OF THE BASIC THINGS YOU LEARN ON A

6   CARING CAPACITY FOR CATTLE.  I MEAN, YOU JUST CAN'T BUY A BUNCH

7   AND THROW THEM ON A PIECE OF PROPERTY, BECAUSE IT JUST DEPENDS

8   ON WHAT THE TYPE OF PROPERTY IT IS.

9      Q      OKAY.  SO, IN A SECTION THAT'S 640 ACRES, AND LET'S SAY

10  IT'S UNDEVELOPED.  HOW MANY HEAD OF CATTLE CAN YOU RUN ON 640

11  ACRES?

12     A      YOU CAN RUN ROUGHLY A HUNDRED HEAD.

13     Q      AND A QUARTER SECTION WOULD BE 640 DIVIDED BY FOUR?

14     A      YEAH, 160.

15     Q      AND SO, THAT NORTHEAST QUARTER OF SECTION 23 IS

16  APPROXIMATELY HOW MANY ACRES?

17     A      A HUNDRED AND SIXTY ACRES.

18     Q      NOW, WHAT WAS THE REASON THAT YOU WENT IN FOR THIS

19  CONSOLIDATION LOAN WITH CENTER STATE BANK FOR THE $1.4 MILLION?

20     A      WE WERE GOING TO PUT A MITIGATING BANK TOGETHER.

21     Q      OKAY.  SO, YOU WERE GOING TO TRY TO PUT A MITIGATING

22  BANK TOGETHER.  AND WHO WERE YOU GOING TO DO THAT WITH?

23     A      IT WAS THE MACHADOS.

24     Q      OKAY.  AND YOU GOT SOME CASH FROM THE --

25     A      YEAH.

1       Q      -- LOAN AND YOU CONSOLIDATED OTHER LOANS.  IS THAT

2  RIGHT?

3       A      YEAH.  THAT'S RIGHT.

4       Q      AND WE'LL GO THROUGH THOSE SPECIFICS IN A MINUTE.

5  NOW, THERE'S BEEN SOME DISCUSSION OF THE ACREAGE THAT 8 MILE

6  RANCH LLC, THE DEBTOR, OWNS IN THIS CASE IN SOUTHERN OSCEOLA

7  COUNTY, HOLOPAW, ST. CLOUD.  ARE THERE ANY ADDRESSES OUT THERE

8  FOR THIS LAND?

9       A      NO.  JUST BASICALLY WHERE I LIVE.

10      Q      AND THAT'S -- WHAT'S YOUR ADDRESS WHERE YOU GET

11  MAIL?

12      A      YES.

13      Q      WHAT IS IT?

14      A      5400 8 MILE RANCH ROAD, ST. CLOUD, FLORIDA.

15      Q      OKAY.  NOW, HOW MUCH, IN ROUND NUMBERS, ACRES, DOES

16  THE DEBTOR OWN?

17      A      THIRTEEN HUNDRED, ROUGHLY.

18      Q      NOW, IF YOU WOULD TURN -- THIS IS IN THE WHITE BOOK --

19  DEBTOR'S EXHIBIT NUMBER 16.

20      A      THAT'S 16?

21      Q      SIXTEEN.  ONE SIX.  YOU SEE THIS IS THE SURVEY THAT THE

22  MACHADOS HAD PREPARED?

23      A      YES.

24      Q      CAN YOU SHOW THE JUDGE OR TELL THE JUDGE WHERE ON

25  THIS SURVEY YOUR HOMESTEAD IS?

1        A      ON THIS PARTICULAR SURVEY, MY HOMESTEAD IS TO THE

2 FAR RIGHT, IS WHERE IT'S AT.

3        Q      OKAY.  AND IS IT THAT LITTLE CHIMNEY-SHAPED AREA?

4        A      YEAH.

5        Q      AND HOW MANY ACRES IS YOUR HOMESTEAD?

6        A      IT'S RIGHT AT 39 ACRES.

7        Q      OKAY.  SO, IN THIS SURVEY, ALL THE WAY OVER TO THE

8 RIGHT, THAT LITTLE CHIMNEY-SHAPED AREA IS WHERE YOUR

9 HOMESTEAD IS?

10      A      YES, SIR.

11      Q      IS THERE A FIRST MORTGAGE ON YOUR HOMESTEAD?

12      A      YES.

13      Q      WHO HOLDS IT?

14      A      CENTER STATE BANK.

15      Q      IS THAT MORTGAGE LOAN BY CENTER STATE BANK, IS 8 MILE

16 RANCH ON THAT DEBT?

17      A      YEAH.

18      Q      ISN'T IT JUST AN INDIVIDUAL MORTGAGE?

19      A      YEAH, TO ME.

20      Q      AND MARSHA.

21      A      YEAH.

22      Q      HOW MUCH ACREAGE IS MACHADO GOING TO GET IN THE

23 QUIT CLAIM DEED PROPOSED UNDER THE PLAN?

24      A      ROUGHLY A THOUSAND.

25      Q      AND HOW MUCH LAND IS THE DEBTOR GOING TO KEEP?

1        A        ROUGHLY 300 ACRES; YOU KNOW, 160 AND 38 IS 200 ACRES,

2    SOMETHING LIKE THAT.

3        Q        TURN TO DEBTOR'S EXHIBIT 15, WHICH IS IN FRONT OF YOU.

4    IT'S THE COLOR PHOTOGRAPH.

5                MR. WEBBER:  NOW, JUDGE, THIS IS THE BIG ONE.  BUT FOR

6                ELECTRONIC FILING AND FOR EASE FOR EVERYBODY TO HAVE ONE

7                IN THEIR BOOK, WE TOOK A PHOTOGRAPH OF IT.

8    BY MR. WEBBER:

9        Q        MR. O'BERRY, TELL THE JUDGE, DID YOU GO GET THIS AERIAL

10   PHOTOGRAPH?

11       A        YES.

12       Q        WHERE DID YOU GO?

13       A        I WENT TO THE PROPERTY APPRAISER'S OFFICE IN OSCEOLA

14   COUNTY.

15       Q        OKAY.  AND THEN, DOES IT SAY IN THE MIDDLE AT THE

16   BOTTOM THERE "O'BERRY PROPERTY?"

17       A        YES.

18       Q        AND IS IT A CERTIFIED COPY?

19       A        YES.

20       Q        AND WHY DID YOU GET THIS AERIAL CERTIFIED PICTURE?

21       A        TO SHOW WHAT THE PROPERTY WAS THAT WAS IN DISPUTE,

22   YOU KNOW, AND GET THE JUDGE FAMILIAR WITH THE PIECE OF

23   PROPERTY WE WERE DISCUSSING, BECAUSE HERE'S SECTION 23 AND

24   THEN THIS HERE'S THE PIECE THAT'S ENCUMBERED BY THE MORTGAGE,

25   IS WHAT IT WAS.

1          MR. WEBBER:  AND, JUDGE, THEY HAD STIPULATED THIS

2     COULD BE USED AS A DEMONSTRATIVE EXHIBIT, BUT I WOULD LIKE

3     TO MOVE THIS IN.  I'VE CREATED A FOUNDATION.  IT'S A CERTIFIED

4     COPY.  AND I BELIEVE IT WOULD HELP THE COURT.

5          THE COURT:  AND MR. JONES OR MR. KILLIAN?

6          MR. JONES:  RIGHT.  OKAY, JUDGE.  WE'RE GOING TO BE FINE

7     WITH THAT AS LONG AS IT'S FOR THE PICTURE, BUT NOT AS TO THE

8     MATTERS ASSERTED AS TO WHAT THE PICTURE MEANS

9     [INAUDIBLE] --

10         THE COURT:  CERTAINLY.  I AGREE WITH THAT.  THAT

11    CERTAINLY IS SUBJECT TO INTERPRETATION IN TERMS OF THAT

12    THIS IS A PICTURE FROM THE OSCEOLA COUNTY PROPERTY

13    APPRAISER'S OFFICE THAT REFLECTS GENERALLY THE LAND

14    THAT'S IN DISPUTE.  WHAT IT MEANS IS A DIFFERENT ISSUE.  BUT I

15    WILL ADMIT EXHIBIT 15.

16         MR. WEBBER:  THANK YOU, JUDGE.  THANK YOU.  ALL RIGHT.

17    BY MR. WEBBER:

18         Q     NOW, CAN THE NORTHEAST QUARTER OF SECTION 23 BE USED

19    FOR INCOME PRODUCTION?

20         A     OH, YEAH.

21         Q     AND HOW COULD IT BE USED?  TELL THE JUDGE HOW IT

22    COULD BE USED FOR INCOME PRODUCTION.

23         A     THE PIECE OF PROPERTY HAS GOT -- THIS PIECE RIGHT IN

24    HERE IS ALL IMPROVED IN [INDISCERNIBLE] GRASS ALL THE WAY DOWN

25    INTO HERE; AND YOU CAN USE IT FOR GRAZING.  YOU CAN LEASE IT OUT.

1  THERE'S ALL WAYS OF MAKING MONEY.  CUTTING SILAGE OFF OF IT,

2  CUTTING HAY OFF OF IT.  IT CAN BE FARMED, YOU KNOW, FOR THE AG

3  PURPOSES OR FOR CATTLE.  AND THAT'S BASICALLY WHAT WE USE IT

4  FOR IS TO, YOU KNOW, CUT SILAGE OFF OF IT OR RUN MAMA COWS ON IT

5  – COW/CALF OPERATION.

6       Q     OKAY.  NOW, IS THAT ONE OF THE REASONS, TOO, THAT YOU

7  DIDN'T OFFER NORTHEAST QUARTER OF SECTION 23 TO CENTER STATE

8  BANK FOR A MORTGAGE PROPERTY?

9       A     YES.  THAT'S ONE OF THE REASONS.

10      Q     OKAY.  ALL RIGHT.  IF YOU WOULD PLEASE TURN IN THE

11  BLUE BOOK, MACHADO FOUR.  DO YOU RECOGNIZE THIS PROMISSORY

12  NOTE?

13      A     YES, SIR.

14      Q     WHAT'S THE DATE OF THIS NOTE?

15      A     THE DATE OF THIS, DECEMBER 31, 2008.

16      Q     ISN'T IT OCTOBER 31, 2006?

17      A     OH, YEAH.  OCTOBER 2006.  I CAN'T SEE.

18      Q     YES?  WHAT'S THE AMOUNT OF THE NOTE?

19      A     THE AMOUNT IS A MILLION FOUR.

20      Q     OKAY.  IF YOU WOULD TURN IN -- AND IF YOU LOOK UP AT

21  THE TOP, IT SAYS "PAGE 5 OF 12" UP AT THE TOP TOP.  PAGE FIVE -- IN

22  THAT SAME TAB.

23      A     FIVE OF TWELVE?

24      Q     FIVE OF TWELVE.  LOOK UP AT THE TOP.  ARE YOU THERE?

25      A     YES.

1        Q        HOW MANY LOANS WERE CONSOLIDATED?  DO YOU SEE

2    THEM --

3        A        YES.  THERE'S FOUR.

4        Q        -- LISTED RIGHT THERE?

5        A        FOUR LOANS.

6        Q        FOUR.  AND A LITTLE OVER A MILLION DOLLARS IN

7    LIABILITY?

8        A        YEAH.

9        Q        OKAY.  AND WHAT WAS THE AMOUNT OF CASH THAT YOU

10   AND MARSHA WERE GOING TO GET FROM THIS NOTE?

11       A        THREE HUNDRED THOUSAND.

12       Q        AND WHAT DID YOU DO WITH THE 300,000?

13       A        I PURCHASED A PLACE IN CROCKETT, TEXAS.

14                THE COURT:  I'M SO SORRY.  WHAT DID YOU USE IT FOR?

15                THE WITNESS:  I PURCHASED A RANCH IN TEXAS --

16   CROCKETT, TEXAS.

17                THE COURT:  THANK YOU.

18   BY MR. WEBBER:

19       Q        AND WERE YOU IN PARTNERSHIP WITH ANYBODY THERE?

20       A        YEAH, IT WAS CEFERINO AND LUIS MACHADO.

21       Q        WITH THE MACHADOS?

22       A        YES.

23       Q        AND WHAT HAPPENED TO THAT INVESTMENT?

24       A        THEY TOOK IT.

25       Q        OKAY.  SO, YOU HAVE NOTHING TO SHOW FOR THAT?

1    A    NO.

2    Q    SO, THEY -- THEY'RE GOING TO HAVE A DEED FOR OVER A

3  THOUSAND ACRES OF PROPERTY AND THEY GOT 300,000 CASH THAT YOU

4  GOT FROM THIS NOTE FOR AN INVESTMENT IN THE TEXAS RANCH.  DO

5  YOU HAVE ANYTHING ELSE FROM THIS NOTE LEFT OVER?

6    A    NO.

7    Q    IF YOU WOULD -- DEBTOR'S EXHIBIT TWO, WHICH IS IN THE

8  WHITE BOOK.  IT'S A WARRANTY DEED.  ARE YOU THERE?

9    A    YES, SIR.

10    Q    WHAT'S THIS WARRANTY DEED?

11    A    THIS IS THE DEED DEEDING THE PROPERTY TO LLC.

12    Q    THE 8 MILE RANCH LLC?

13    A    YEAH.

14    Q    AND IS IT FROM YOU AND MARSHA?

15    A    YES.

16    Q    OKAY.  AND WHY DID YOU TRANSFER ALL THAT LAND IN TO

17  THE DEBTOR, 8 MILE RANCH LLC?

18    A    FOR THE TAXES AND LIABILITY.

19    Q    OKAY.  IF YOU WOULD TURN TO DEBTOR'S NUMBER 11 IN

20  THAT SAME BOOK.  ARE YOU FAMILIAR WITH THE DEBTOR'S PLAN OF

21  LIQUIDATION?

22    A    SOMEWHAT.  YEAH.

23    Q    OKAY.  YOU REMEMBER SEEING IT AT THE TIME, RIGHT?

24    A    YES, SIR.

25    Q    AND ON PAGE 10, IF YOU WOULD -- UP AT THE TOP, IT'S 10 OF

1   28, OR ON THE BOTTOM, PAGE 10, HOWEVER YOU WANT TO LOOK AT IT.

2        A      OKAY.  I GOT IT.

3        Q      ALL RIGHT.  DO YOU SEE THE DESCRIPTION OR DEFINITION OF

4   "PROPERTY"?

5        A      YES, SIR.

6        Q      AND DO YOU SEE THE DEFINITION OF "REAL PROPERTY"?

7        A      YES, SIR.

8        Q      AND DO YOU SEE THE DEFINITION OF "MEDIATED REAL

9   PROPERTY"?  AT THE BOTTOM OF THE PAGE.

10       A      MEDIATED REAL PROPERTY?

11       Q      YES.

12       A      YES, SIR.

13       Q      OKAY.  CAN YOU READ THAT, MEDIATED REAL PROPERTY?

14       A      "SHALL MEAN THE PROPERTY LOCATED AT 5400 8 MILE

15   RANCH ROAD, ST. CLOUD, FLORIDA, 34773, THAT IS ENCUMBERED BY THE

16   MORTGAGE, AS WELL AS PARCELS OWNED BY THE MACHADO FAMILY

17   LIMITED PARTNERSHIP NO. 3, WHICH DESCRIPTIONS ARE ATTACHED TO

18   THE MEDIATION SETTLEMENT AGREEMENT."

19       Q      OKAY.  THEN IF YOU TURN TO PAGE 15 OF THAT EXHIBIT, YOU

20   SEE "CLASS 2 MACHADO SECURED CLAIM"?

21       A      YES.

22       Q      AND "CLASS 3 MACHADO NO. 3 CLAIM"?

23       A      YES.

24       Q      NOW, WHAT WERE THE MACHADOS GOING TO GET IF THE

25   SALE DIDN'T OCCUR?  AND WE ALL AGREE THE SALE DIDN'T OCCUR BY

1    JUNE 1. WHAT WERE THE MACHADOS GOING TO GET UNDER THE PLAN?

2        A        UNDER THE PLAN, THEY WERE SUPPOSED TO GET WHAT

3    PROPERTY WAS IN THE MORTGAGE.

4        Q        OKAY.  THAT WOULD BE ENCUMBERED BY THE MORTGAGE.

5    SO, THAT'S THE MEDIATED SETTLEMENT PROPERTY, RIGHT?

6        A        YEAH.

7        Q        OKAY.  AND WE'RE GOING TO GET TO THE MEDIATED --

8                 MR. JONES:  JUDGE, I'M GOING TO OBJECT TO THAT.  I DON'T

9             SEE WHERE IT SAYS THAT THEY GET THE MEDIATED SETTLEMENT

10            PROPERTY ON PAGE 15 C AND D.

11                THE COURT:  AND I'M GOING TO GIVE YOU THE CHANCE TO

12            ASK HIM ABOUT IT, BUT THAT'S MORE APPROPRIATELY DONE ON

13            CROSS-EXAMINATION.  GO AHEAD AND PROCEED, MR. WEBBER.

14                MR. WEBBER:  THANK YOU, JUDGE.

15    BY MR. WEBBER:

16        Q        AND THAT'S BOTH FOR CLASS 2 AND CLASS 3, RIGHT?

17        A        YEAH.

18        Q        AND THEY WERE COMBINED FOR A TOTAL OF THREE

19    MILLION.  IS THAT YOUR RECOLLECTION, MR. O'BERRY?

20        A        YES, THAT'S . . .

21        Q        NOW, WHAT WERE THE UNSECURED CREDITORS SUPPOSED

22    TO GET IN CLASS 4?  JUST READ THAT PARAGRAPH.

23        A        "A PRO RATA SHARE ON ANY NET PROCEEDS OF THE CAUSES

24    OF ACTION OR ANY ASSETS WHICH ARE NOT ENCUMBERED BY LIENS AND

25    NOT TRANSFERRED UNDER THE PLAN."

1    Q    OKAY.  NOW, THERE ARE NO CAUSES OF ACTIONS, RIGHT?  SO

2    THEY GET NO PRO RATA AMOUNT OF THAT.

3    A    YEAH.

4    Q    AND THEN, ASSETS NOT ENCUMBERED BY LIENS.  THAT

5    WOULD BE WHAT?

6    A    THAT WOULD BE THE 160 ACRES.

7    Q    OKAY.  ALL RIGHT.  AND THAT WAS NOT TO BE TRANSFERRED

8    UNDER THE PLAN, RIGHT?

9    A    THAT'S RIGHT.

10    Q    OKAY.  NOW, IF YOU GO OVER TO PAGE 16, CLASS 5.  IT'S AT

11    THE TOP.  IT'S THE SAME EXHIBIT YOU WERE JUST IN, WHICH IS 11, AND

12    GO TO PAGE 16 AT THE TOP.

13    A    OKAY.

14    Q    DO YOU SEE WHERE IT SAYS "CLASS 5 EQUITY INTEREST"?

15        MR. WEBBER:  JUDGE, MAY I APPROACH?

16        THE COURT:  YES.  YES, PLEASE POINT --

17        THE WITNESS:  CLASS 5 ON 16.  CLASS 5 EQUITY.

18        MR. WEBBER:  RIGHT HERE.

19        THE WITNESS:  YEAH.

20    BY MR. WEBBER:

21    Q    AND WHAT DOES THAT SAY?

22    A    "CLASS 5 CONSISTS OF ALL EQUITY INTEREST IN THE DEBT, IN

23    THE DEBTORS, ALL CURRENTLY ISSUES AND OUTSTANDING EQUALITY

24    INTEREST IN THE DEBTOR SHALL NOT BE EXTINGUISHED, CLASSIFIED AS

25    IMPAIRED AND ELIGIBLE TO VOTE."

1      Q      OKAY.  WHO WERE THE TWO MEMBERS OF 8 MILE RANCH

2  LLC?

3      A      ME AND MY WIFE.

4      Q      OKAY.  AND YOU WERE GOING TO KEEP YOUR INTERESTS?

5      A      YES.

6      Q      IF YOU WOULD PLEASE TURN IN THIS SAME BOOK TO

7  DEBTOR'S EXHIBIT NUMBER SIX.  DO YOU RECOGNIZE THE MEDIATED

8  SETTLEMENT AGREEMENT?

9      A      YES.

10      Q      AND DO YOU REMEMBER WE WENT TO THE MEDIATION ON

11  NOVEMBER 29, 2012?

12      A      THAT'S RIGHT.

13      Q      AND WE WERE THERE ALL DAY?

14      A      YES.

15      Q      AND YOU JUST HEARD MR. SHUKER, THE MEDIATOR,

16  TESTIFY?

17      A      YES.

18      Q      AND DID WE SETTLE THE FIVE LAWSUITS LISTED ON PAGE

19  ONE?

20      A      YES.

21      Q      AND IF WE GO TO PAGE TWO, PARAGRAPH ONE -- FLIP THE

22  PAGE, I THINK.  ARE YOU ON IT?  PARAGRAPH ONE?

23      A      YEAH, I'M ON PARAGRAPH.

24      Q      OKAY.  AND YOU SEE LITTLE -- TWO LITTLE "II"?  IT STARTS

25  WITH "THE MECHANISM FOR THE SALE OF THE PROPERTY."

1  A  YEAH.

2  Q  DO YOU SEE THE CLAUSE "THAT IS ENCUMBERED BY THE

3 MORTGAGE"?

4  A  YES, SIR.

5  Q  DID YOU REQUEST THAT LANGUAGE BE PUT INTO THE

6 MEDIATED SETTLEMENT AGREEMENT?

7  A  YES.

8  Q  AND WHY DID YOU REQUEST THAT THAT CLAUSE BE PUT IN

9 THE MEDIATED SETTLEMENT AGREEMENT?

10  A  BECAUSE THAT'S WHAT I AGREED TO AND THAT'S WHAT

11 MACHADO AGREED TO WHEN THEY ASSUMED THE MORTGAGE.

12  Q  OKAY.  NOW, THAT'S BECAUSE THE NORTHEAST QUARTER OF

13 SECTION 23 IS NOT COVERED BY THE MORTGAGE.

14  A  THAT'S RIGHT.

15  Q  OKAY.  AND THEN, DO YOU KNOW WHY IT GOES -- IT KEEPS

16 GOING ON AFTER THAT PHRASE "AS WELL AS THE PARCELS OWNED BY

17 MACHADO NO. 3."  AND THEN THEY ATTACHED THE LEGALS OF THOSE.

18 AND THEN IT SAYS, "COLLECTIVELY, THE 'PROPERTY.'"  OKAY?

19   NOW, WHAT WAS THAT OTHER PARCELS OF REAL PROPERTY THAT

20 WAS IN ADDITION TO THE PROPERTY ENCUMBERED BY THE MORTGAGE?

21 TELL THE JUDGE WHAT THAT -- THOSE PARCELS WERE.

22  A  THEY WERE PARCELS WHEN WE WERE PUTTING THE

23 MITIGATING BANK TOGETHER, I ACTUALLY HAVE A COPY OF -- IT WOULD

24 PROBABLY BE BETTER THAN ME EXPLAINING IT TO YOU.  IT'S OVER

25 THERE.  BUT THE PIECES ARE RIGHT IN HERE.  UP HERE.  THESE HERE ARE

1    LOTS RIGHT IN HERE THAT WE BOUGHT UP TO TIE THE PARCEL TWO AND

2    PARCEL ONE TOGETHER AS THE -- WHENEVER WE WERE DOING THE

3    ENGINEERING, THEY SAID IF THOSE -- IF THESE TWO PARCELS WERE

4    TOGETHER THAT THEY WOULD, YOU KNOW, BE MORE VALUABLE AS

5    MITIGATING CREDITS BECAUSE OF THE FLOW OF THE WATER COMING

6    ACROSS.  AND THAT'S THE REASON WE PICKED THOSE UP.

7          Q      DO YOU KNOW HOW MANY LOTS TOTAL ARE IN THAT TO THE

8    RIGHT OF THAT IN THERE, DO YOU KNOW?  DO YOU KNOW?  YOU MAY

9    NOT KNOW.

10          A      I THINK THERE'S SOMEWHERE AROUND 82.  IT WAS LIKE AN

11    80-ACRE BLOCK.

12          Q      OKAY.  AND THEY'RE ABOUT ONE ACRE EACH?

13          A      YEAH.

14          Q      AND YOU BOUGHT SOME OF THEM SO THERE WOULD BE A

15    CONTINUATION AND CONNECTION?

16          A      YEAH.  WE BOUGHT THEM.  IT'S KIND OF A LONG "L" SHAPE.

17          Q      OKAY.  NOW, THE PROPERTY DIDN'T SELL, DID IT?

18          A      NO.

19          Q      SO, THE PROPERTY THAT'S ENCUMBERED BY THE

20    MORTGAGE, AS WELL AS THESE LOTS THAT ARE IN THERE NEED TO BE

21    DEEDED TO MACHADO; AND YOU AGREE TO THAT, RIGHT?

22          A      YEAH.

23          Q      OKAY.  NOW, THIS -- MR. SHUKER, THE MEDIATOR, DIDN'T

24    REMEMBER THIS CLAUSE AT ALL, BUT YOU SUGGESTED THIS "THAT IS

25    ENCUMBERED BY THE MORTGAGE," CORRECT?

1    A    THAT'S RIGHT.

2    Q    AND THIS WAS AN IMPORTANT CLAUSE TO YOU IN THIS

3  AGREEMENT?

4    A    VERY IMPORTANT.

5    Q    OKAY.  NOW, HAVE YOU PAID ANY MONEY TO UNSECURED

6  CREDITORS YET?

7    A    HAVE WE PAID ANY?

8    Q    HAVE YOU PAID ANY MONEY TO UNSECURED CREDITORS,

9  CLASS 4?

10   A    NOT RECENTLY.  NO.

11   Q    OKAY.  AND WHY IS THAT?

12   A    WELL, BECAUSE WE'RE STILL WAITING ON THE LEGAL -- THE

13  SURVEY FROM --

14   Q    TO DETERMINE THIS -- THE --

15   A    YEAH.  FROM MACHADO.

16   Q    OKAY.  SO, WHAT HAS TO BE TRANSFERRED AND WHAT

17  DOESN'T?

18   A    YEAH.

19   Q    OKAY.  NOW, IF YOU WOULD TURN TO DEBTOR'S EXHIBIT 13.

20  IT'S IN THIS WHITE BOOK.  DO YOU SEE PARAGRAPH 10?  JUST READ IT TO

21  YOURSELF.  YOU DON'T NEED TO READ IT OUT LOUD.  IT'S IN EVIDENCE.

22  HAVE YOU READ IT?

23   A    YES.

24   Q    OKAY.  TELL THE JUDGE WHY PARAGRAPH 10 IS IN THE

25  ORDER.

1      A      I AM READING THE RIGHT 10, AIN'T [SIC] I?  THIS ONE HERE?

2      Q      YES.  IT GOES ON TO THE NEXT PAGE, TOO.

3      A      WELL, I DIDN'T READ OVER -- THIS HERE'S THE CLAUSE

4   WHERE THE JUDGE IS GOING TO TRANSFER THE PROPERTY WHENEVER

5   THE LEGAL DESCRIPTION IS PREPARED AND ON IT FOR THE FORECLOSING

6   ACTION.

7      Q      OKAY.  SO, PARAGRAPH 10 IS SO THAT THE LEGAL

8   DESCRIPTION CAN BE COMPLETED WITH A SURVEY?

9      A      YEAH.

10     Q      NOW, WHO IS DENNIS FOUNTAIN?

11     A      DENNIS FOUNTAIN WAS AN ATTORNEY THAT WE USED WHEN

12  WE WERE FIRST STARTING OUT SETTING UP THE MITIGATING BANK, AND

13  THEN WHENEVER WE FIRST STARTED IN THIS AGREEMENT, HE WAS AN

14  ATTORNEY THERE.

15     Q      AND YOU OWE HIM MONEY; AND HE'S AN UNSECURED

16  CREDITOR, RIGHT?

17     A      YES.

18     Q      AND WHO IS OSCEOLA ENGINEERING, INC.?

19     A      THEY'RE THE ONES THAT DONE THE ENGINEERING WORK FOR

20  THE MITIGATING BANK.

21     Q      AND YOU OWE THEM MONEY, TOO, RIGHT?

22     A      WELL, THE MONEY WAS SUPPOSED TO BE ASSUMED BY THE

23  MACHADOS, BUT I DON'T KNOW --

24     Q      BUT THEY DIDN'T PAY IT, DID THEY?

25     A      NO.  I GOT STUCK WITH IT.

1      Q       AND THEN, RENAISSANCE CONSTRUCTION COMPANY?

2      A       THEY WERE PEOPLE THAT WERE GIVING ADVICE, YOU KNOW,

3   SETTING IT UP, AND LEGAL COUNSEL ON HOW TO SET UP A MITIGATING

4   BANK.

5      Q       AND DO YOU INTEND TO PAY THESE CREDITORS?

6      A       OH, YEAH.  I'LL PAY EVERY ONE OF THEM.

7      Q       ALL RIGHT.  NOW, DO YOU REMEMBER THE TRIAL WE HAD

8   WITH JUDGE JENNEMANN LAST YEAR ABOUT THE EQUIPMENT?

9      A       OH, YEAH.

10      Q       AND THE JUDGE RULED AGAINST US AND SAID THAT

11   MACHADO OWNED ALL THE EQUIPMENT.  DO YOU REMEMBER THAT?

12      A       I REMEMBER.

13      Q       WAS IT YOUR INTENTION TO LIQUIDATE SOME OF THAT

14   EQUIPMENT TO MAKE THE FIRST PAYMENT TO THOSE UNSECURED

15   CREDITORS?

16      A       YES, IT WAS.

17      Q       AND BECAUSE WE LOST, WE DIDN'T HAVE ANY EQUIPMENT

18   TO LIQUIDATE, DID WE?

19      A       THAT'S RIGHT.

20      Q       NOW, 8 MILE RANCH CURRENTLY OWNS THE NORTHEAST

21   QUARTER OF SECTION 23, RIGHT?

22      A       THAT'S RIGHT.

23      Q       NOW, IF YOU'D GO AGAIN IN THIS WHITE BOOK TO DEBTOR'S

24   17 -- DEBTOR'S EXHIBIT 17.  DO YOU REMEMBER THE QUIT CLAIM DEED

25   THAT THE MACHADO ATTORNEY SENT OVER TO ME?

1          A          YES.

2          Q          AND YOU CAME TO MY OFFICE TO EXECUTE IT?

3          A          THAT'S RIGHT.

4          Q          AND WE LOOKED AT IT AND WE EXECUTED IT; AND YOU SAID

5    YOU WANTED TO CHECK ALL THE LEGALS BEFORE WE DELIVERED IT.  DO

6    YOU REMEMBER THAT?

7          A          THAT'S RIGHT.

8          Q          AND YOU SEE THIS LITTLE SHEET THAT'S RIGHT IN HERE IN

9    THE BEGINNING?  THERE'S SOME PRETTY BIG ERRORS IN PARAGRAPH 2,

10   10, 11, 13, AND 14, AREN'T THERE?

11         A          OH, YEAH.  YES, SIR.

12         Q          ALL RIGHT.  AND THEN, IF YOU JUST TURN, YOU CAN SEE

13   THAT IT WAS EXECUTED ON JANUARY 29TH OF THIS YEAR, BUT IT HAS NOT

14   BEEN DELIVERED.  IF YOU GO TO WHERE IT SAYS "EXHIBIT A," YOU SEE

15   THAT THERE'S SOME WRITING THERE IN PARAGRAPH TWO?  ARE YOU ON

16   EXHIBIT A?  AT THE TOP.  EXHIBIT A.  KEEP GOING.  I THINK -- EXHIBIT A?

17               MR. WEBBER:  MAY I APPROACH?

18               THE COURT:  YES.

19               THE WITNESS:  YEAH, I'VE GOT IT.  EXHIBIT A.

20   BY MR. WEBBER:

21         Q          PARAGRAPH TWO, THE CORRECTION IS INTERLINEATED,

22   WRITTEN IN THERE, RIGHT?

23         A          THAT'S RIGHT.

24         Q          NOW, TO CHECK ALL THESE LEGALS THAT MACHADO'S

25   COUNSEL GAVE US, WHAT -- TELL THE JUDGE WHAT YOU DID.

1      A      I CARRIED IT TO THE OSCEOLA PROPERTY APPRAISER AND

2  SAT DOWN WITH EMILY WHITE THAT DOES THIS TYPE OF WORK; AND SHE

3  WENT THROUGH IT AND MAPPED OUT EACH ONE OF THEM AND WENT

4  THROUGH IT AND BROUGHT UP ALL THE ERRORS THAT'S IN IT, BECAUSE

5  THEY PRE GO THROUGH ALL THAT STUFF BEFORE THEY RECORD IT TO

6  MAKE SURE IT'S RIGHT.

7      Q      OKAY.  HOW LONG -- HOW MANY HOURS DID YOU SPEND IN

8  THE OSCEOLA COUNTY LAND DEPARTMENT?

9      A      I WAS ALL -- THERE ALL MORNING AT FOUR AND A HALF

10  HOURS.

11      Q      FOUR HOURS?  OKAY.  AND THEN, IF YOU TURN TO THE NEXT

12  PAGES, YOU'LL LOOK AT PARCEL 10.

13          MR. WEBBER:  JUDGE, I'M NOT GOING TO GO THROUGH EACH

14          SPECIFIC ONE, BUT THIS IS SO YOU CAN SEE WHY THIS DEED

15          COULDN'T BE DELIVERED.

16  BY MR. WEBBER:

17      Q      PARCEL 11.  AND ALL THIS WRITING IN HERE, THAT WAS TO

18  CORRECT ALL THE MISTAKES, RIGHT?

19      A      THAT'S RIGHT.

20      Q      AND THEN IF YOU GO TO THE NEXT PAGE, ALL OF THE

21  INTERLINEATIONS, MEANING HANDWRITING, SHOWS THE PROBLEMS AND

22  ERROR, RIGHT?

23      A      THAT'S RIGHT.

24      Q      IF ALL OF THESE ARE CORRECTED AS OUTLINED IN EXHIBIT

25  NUMBER 17, WOULD YOU BE WILLING TO EXECUTE A NEW DEED AND

1   DELIVER THIS?

2          A      OH, YEAH.

3                 MR. WEBBER:  JUDGE, THAT'S ALL I HAVE FOR MR. O'BERRY.

4                 THE COURT:  LET'S TAKE A SHORT BREAK BEFORE WE DO

5    ANYTHING ELSE, JUST TO GIVE EVERYBODY A CHANCE TO

6    STRETCH.  IT'S 2:22.  WE'LL TAKE JUST A 10-MINUTE OR SO BREAK

7    AND THEN WE'LL COME BACK.

8                 MR. WEBBER:  THANK YOU, JUDGE.

9                 (WHEREUPON, A BRIEF RECESS WAS TAKEN FROM 2:22 P.M.

10   UNTIL 2:39 P.M.)

11                THE COURT:  DO YOU NEED YOUR EARPHONES?  YOU HAVE

12   THEM RIGHT THERE.  VERY GOOD.  GO AHEAD AND RESUME.  AND

13   MR. JONES.

14                MR. JONES:  ALL RIGHT, JUDGE.

15                            CROSS-EXAMINATION

16   BY MR. JONES:

17          Q      GOOD AFTERNOON, MR. O'BERRY.

18          A      AFTERNOON.

19          Q      ONE OF THE FIRST THINGS THAT YOU STATED UNDER

20   EXAMINATION FROM MR. WEBBER IS THAT YOU SIGNED THE MORTGAGE

21   THAT'S CREATING ALL THESE PROBLEMS, BUT YOU DIDN'T READ THE

22   LEGAL DESCRIPTION.  IS THAT CORRECT?

23          A      I'M NOT FAMILIAR WITH THE LEGAL DESCRIPTION AS FAR AS,

24   YOU KNOW -- NO, I DIDN'T READ THE LEGAL ON THERE.  YOU KNOW, I GO

25   BY THE SECTION, PRETTY MUCH, BUT I WASN'T -- I DIDN'T TAKE IT TO AN

1    ATTORNEY, IF THAT'S WHAT YOU'RE ASKING.

2    Q    BUT YOU DIDN'T -- YOU DIDN'T READ IT.  THAT WAS YOUR

3    TESTIMONY.  WHAT I'D LIKE TO DO, MR. O'BERRY, I WOULD LIKE TO GO

4    TO -- AND YOU'LL HAVE TO EXCUSE ME, BECAUSE MY EXHIBIT LIST IS

5    MISSING, SO I'M GOING TO GO TO THE MORTGAGE, WHICH IS --

6    THE COURT:  DEBTOR'S EXHIBIT ONE.

7    MR. JONES:  -- ONE.

8    THE COURT:  AND MR. JONES, YOU NEED TO STAY AT THE

9    PODIUM.  WE CANNOT PICK UP SOUND FROM THERE.

10    MR. JONES:  OH, I APOLOGIZE, YOUR HONOR.  I'M JUST TRYING

11    TO GET TO THE RIGHT PAGE HERE.  DEBTOR'S ONE?

12    MR. WEBBER:  DEBTOR'S ONE IS THE WHITE BOOK.

13    THE COURT:  DEBTOR'S ONE IS IN THE OTHER BOOK.  IF

14    YOU'RE LOOKING FOR THE MORTGAGE, IT'S IN DEBTOR'S EXHIBIT

15    ONE.  IS THERE A PAGE YOU WANTED HIM TO LOOK AT?

16    MR. JONES:  THE LEGAL DESCRIPTION, YOUR HONOR.

17    THE COURT:  I THINK HE CAN PROBABLY FIND THAT.

18    BY MR. JONES:

19    Q    OKAY.  LAST PAGE OF DEBTOR'S EXHIBIT ONE, MR. O'BERRY,

20    WHICH IS THE LEGAL DESCRIPTION OF -- WHICH IS THE LEGAL

21    DESCRIPTION OF THE MORTGAGE.

22    A    YEAH, I GOT IT.

23    Q    WHAT I WOULD LIKE YOU TO DO IS ON THIS MAP THAT MR.

24    WEBBER HAS PRODUCED, I'D LIKE TO GO THROUGH AND HAVE YOU SHOW

25    ME EXACTLY WHERE THIS PARCEL NUMBER ONE LEGAL DESCRIPTION IS

1    ON THIS MAP.

2              MR. JONES:  AND, YOUR HONOR, I'D LIKE TO, IF I COULD,

3        STAND?

4              THE COURT:  SURE.

5              THE WITNESS:  THE BEST I KNOW, THIS HERE IS SECTION --

6        HALF OF SECTION 13.

7    BY MR. JONES:

8        Q     OKAY.

9        A     THIS RIGHT HERE IS SECTION 19, THE NORTH HALF.  AND THIS

10   RIGHT HERE IS SECTION 24.

11       Q     OKAY.

12       A     RIGHT HERE -- RIGHT IN HERE IS THE NORTH HALF.  THIS

13   HERE IS THE BOTTOM HALF OF SECTION 24.  THIS HERE IS SECTION 20

14   OVER HERE.

15       Q     HOLD ON, MR. O'BERRY.  PLEASE -- PLEASE SHOW ME THE

16   NORTHEAST QUARTER OF SECTION 24.

17       A     THE NORTHEAST QUARTER OF SECTION 24, BECAUSE THIS IS

18   THE SECTION.  THE NORTHEAST QUARTER WOULD BE RIGHT HERE.  NOW,

19   I'M NOT A SURVEYOR, SO I'M JUST TAKING THIS AS I KNOW IT FROM

20   WORKING THE LAND.

21       Q     I UNDERSTAND.  BUT IF THIS IS SECTION -- YOU IDENTIFIED

22   SECTION 24 AS BEING NEXT TO SECTION 23, THE LAND THAT'S IN

23   QUESTION, CORRECT?

24       A     YES.  SEE THIS LINE COMING RIGHT THROUGH HERE?

25       Q     YES.

1      A      THAT'S A SECTION LINE.  SEE THIS SECTION LINE COMING

2  RIGHT THROUGH HERE?  THAT'S WHAT DIVIDES THEM ALL UP INTO HALF

3  SECTIONS, FULL SECTIONS.

4      Q      OKAY.  LET ME BACK UP, THEN.  IDENTIFY SECTION 24 FOR

5  ME, PLEASE.

6      A      TWENTY-FOUR IS RIGHT HERE.

7      Q      HOW FAR OVER DOES IT GO?

8      A      I'M -- IT WOULD BE SOMEWHERE RIGHT IN HERE.  THIS PIECE

9  RIGHT HERE, IN HERE LIKE THIS HERE.

10     Q      AND WHERE DOES SECTION 19 START?

11     A      NINETEEN STARTS RIGHT OVER HERE AND GOES DOWN.

12  RIGHT HERE; DOWN HERE AND OVER.  OVER LIKE THAT.

13     Q      AND WHAT IS THIS SECTION, THEN, THAT YOU LEFT OUT?

14     A      THIS IS 24.

15     Q      OKAY.  SO, THIS SECTION IS 24, AS WELL?

16     A      YEAH, THERE'S A FULL SECTION HERE, 24.

17     Q      OKAY.  IS THIS THE NORTHEAST QUARTER OF SECTION 24,

18  RIGHT HERE WHERE THE GROVE IS?

19     A      YEAH, I'M ASSUMING THAT'S WHERE IT'S AT.

20     Q      OKAY.  WELL, YOU POINTED TO THE NORTHWEST QUARTER

21  BEFORE.

22     A      I'M NOT THE SURVEYOR.  I'M JUST TRYING -- YOU'RE

23  CONFUSING ME.

24     Q      OKAY.  WELL, I APOLOGIZE FOR THAT.  I'M TRYING TO

25  ESTABLISH WHERE THE NORTHEAST QUARTER OF SECTION 24 IS.

1        A        IT WOULD BE -- THE NORTHEAST QUARTER WOULD BE RIGHT

2    HERE.

3        Q        OKAY.  WHERE THE GROVE IS.  IS THAT CORRECT?  THIS IS

4    THE AREA KNOWN AS THE GROVE?

5        A        YEAH, AS I REFER TO IT AS TO MY BROTHER AND STUFF.

6        Q        OKAY.  MR. O'BERRY, WHEN'S THE LAST TIME YOU PAID

7    PROPERTY TAXES ON SECTION 23?

8        A        LAST YEAR.

9        Q        YOU PAID THE PROPERTY TAXES ON SECTION 23?

10        A        I HAVE TO CHECK WITH MY WIFE AND SEE.  I CAN'T TELL YOU

11    RIGHT OFF HAND.

12        Q        WHEN'S THE LAST TIME YOU PAID INSURANCE ON SECTION

13    23?

14        A        I DON'T KNOW.  I'M ASSUMING THAT WE PAID THEM THIS

15    YEAR.

16        Q        ISN'T IT ACCURATE YOU'VE NOT PAID ANY PROPERTY TAXES

17    OR INSURANCE ON SECTION 23 SINCE THIS CASE STARTED?

18        A        I HAVE TO CHECK AND SEE.  I'M NOT UP TO DATE WITH IT.

19    I'M NOT SURE.

20        Q        NOW, MR. O'BERRY, YOU TESTIFIED EARLIER THAT YOU

21    INHERITED SECTION 13, 24, AND 23.  IS THAT ACCURATE?

22        A        PORTIONS OF IT, YEAH.

23        Q        WHEN DID YOU INHERIT THAT?

24        A        WHEN WE HAD THE AGREEMENT WITH THE TRUSTEE.

25        Q        WHEN DID YOU ACTUALLY OWN SECTION 23, MR. O'BERRY?

1       A       WHEN WE DEEDED IT OUT AMONG MY BROTHERS AND

2   MYSELF.

3       Q       OKAY.  YOU WERE INVOLVED WITH YOUR FAMILY IN SOME

4   LAWSUITS OVER THIS LAND, WEREN'T YOU, MR. O'BERRY, BACK IN 2004?

5               MR. WEBBER:  JUDGE, IF IT DOESN'T INVOLVE THE

6   MACHADOS, I'M GOING TO OBJECT AS TO RELEVANCE.

7               MR. JONES:  OH, IT'S HIGHLY RELEVANT, YOUR HONOR.

8               THE COURT:  EXPLAIN TO ME WHY.  GIVE ME SOME FLAVOR.

9               MR. JONES:  BECAUSE ACCORDING TO MY INFORMATION, MR.

10  O'BERRY DID NOT INHERIT THIS LAND AT ALL.

11              THE COURT:  I WILL OVERRULE THE OBJECTION.  GO AHEAD.

12  BY MR. JONES:

13      Q       MR. O'BERRY, I'LL REPEAT THE QUESTION.  YOU WERE

14  INVOLVED IN LITIGATION INVOLVING ALL OR MOST OF THIS LAND IN 2004

15  WITH YOUR FAMILY, WEREN'T YOU?

16      A       YEAH.

17      Q       AND YOU SETTLED THAT LITIGATION, DIDN'T YOU?

18      A       NO, I DIDN'T SETTLE IT WITH MY FATHER.  I SETTLED IT WITH

19  MY BROTHER --

20      Q       NO, SIR --

21      A       -- WHEN THEY TOOK ON THE --

22      Q       -- I'M ASKING:  WAS THE LITIGATION SETTLED?

23      A       NO.

24      Q       IT WAS NOT SETTLED?

25      A       NOT WITH -- NOT UNTIL THE TRUST AGREEMENT COME

1    ALONG.

2         Q        SO, YOU DID NOT ENTER INTO A SETTLEMENT AGREEMENT

3    CONCERNING THIS LAND?

4         A        WHEN MY BROTHER SETTLED THE AGREEMENT.

5         Q        BUT YOUR BROTHER DIDN'T OWN THE LAND.  YOU STATED

6    ON THE RECORD THAT --

7         A        HE'S TRUSTEE.

8         Q        -- YOU INHERITED THE LAND.

9         A        HE'S TRUSTEE OF THE ESTATE.

10        Q        MR. O'BERRY, ISN'T IT TRUTHFUL THAT YOU STARTED

11   OWNING THIS LAND IN 2006?  ISN'T THAT REALLY THE TRUTH?

12        A        I DIDN'T OWN IT UNTIL WE HAD THE SETTLEMENT

13   AGREEMENT WITH THE TRUSTEES.

14        Q        MR. O'BERRY, ISN'T IT ACCURATE THAT ON JULY 16, 2006,

15   JOSEPH AND MARSHA O'BERRY RECEIVED IMMEDIATE OWNERSHIP, FREE

16   AND CLEAR OF ALL CLAIMS AND ENCUMBRANCES, IN THE PROPERTY IN

17   DISPUTE, DESCRIBED AS THE SOUTH HALF OF SECTION 13, THE

18   NORTHEAST QUARTER LESS THE NORTH HALF OF THE SOUTHWEST

19   QUARTER OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER

20   OF THE NORTHEAST QUARTER OF SECTION 23?  AND I'LL JUST STOP

21   THERE.  ISN'T THAT ACCURATE?

22        A        IF THAT'S WHEN THE TRUSTEE'S AGREEMENT WAS SIGNED.

23        Q        OKAY.  BUT YOU -- YOU ENTERED INTO A SETTLEMENT

24   AGREEMENT THAT GAVE YOU IMMEDIATE TITLE TO THIS PROPERTY.

25   JOSEPH AND MARSHA O'BERRY SHALL RECEIVE IMMEDIATE OWNERSHIP,

1  FREE AND CLEAR OF ALL CLAIMS AND ENCUMBRANCES OF ALL

2  PROPERTY IN DISPUTE, WHICH IS WHAT WE JUST READ, EXCEPT THE 40

3  ACRES OF PROPERTY KNOWN AS THE GROVE, WHICH SHALL BE

4  TRANSFERRED TO EVERETT O'BERRY.  THAT'S WHAT REALLY HAPPENED,

5  ISN'T IT?

6          A      NO.  THAT'S NOT --

7          Q      THAT'S NOT WHAT HAPPENED?

8          A      NO.  THEY -- BROTHERS DANNY AND CECIL GOT THIS PIECE

9  HERE AND THIS PIECE HERE AND EVERETT GOT THE GROVE.  AND THAT'S

10 WHAT THEY -- WE AGREED ON.

11              MR. WEBBER:  JUDGE, COULD WE HAVE THE SETTLEMENT

12          AGREEMENT IN EVIDENCE?  HE'S READING FROM IT AND I OBJECT

13          TO THAT.

14              THE COURT:  I'M NOT SURE THIS ISN'T REBUTTAL, THOUGH.

15          I'M GOING TO ALLOW IT FOR JUST A LITTLE BIT.  BUT IF YOU NEED

16          TO SEE IT, YOU'RE WELCOME TO SEE IT.

17              THE WITNESS:  WELL, I NEED TO SEE SOMETHING, BUT IT'S --

18              MR. JONES:  I'M HAPPY TO PROVIDE A COPY OF IT.

19              THE COURT:  THAT MIGHT BE BETTER.  WHY DON'T WE GO

20          AHEAD AND MARK IT, THEN.  WE'LL MARK IT AS CREDITOR'S

21          EXHIBIT NUMBER -- I THINK 12, BUT CLARIFY IT.

22              MR. WEBBER:  JUDGE, WELL, OF COURSE I OBJECT TO THIS,

23          BECAUSE IT WAS NEVER DISCLOSED.  THEY HAVE TO SHARE

24          EXHIBITS.

25              THE COURT:  THIS IS REBUTTAL.  I HAVE TO ADMIT.  IT'S

1      REBUTTAL, MR. WEBBER.

2          MR. WEBBER:  IT'S THEIR MOTION TO COMPEL, JUDGE.  IT'S

3      NOT REBUTTAL.  THIS IS THEIR EXAMINATION OF MR. O'BERRY IN

4      THEIR CASE-IN-CHIEF.

5          THE COURT:  I OVERRULE.  I WILL PERMIT THIS SETTLEMENT

6      TO COME IN.

7          MR. WEBBER:  THIS -- I OBJECT AS IT NOT BEING DISCLOSED.

8          THE COURT:  VERY GOOD.  AND I THINK IT'S 12.  IS THAT

9      CORRECT?  IS IT EXHIBIT NUMBER 12?

10     BY MR. JONES:

11         Q    MR. O'BERRY, CAN YOU PLEASE TURN TO PAGE SIX OF THIS

12     AGREEMENT?  IS THAT YOUR SIGNATURE HALFWAY DOWN?

13         A    YES.  YES, THAT'S MY SIGNATURE.

14         Q    OKAY.  AT THE VERY TOP OF THAT --

15         MR. JONES:  OH, YOUR HONOR, I'M SORRY.  I DIDN'T GIVE YOU

16     A COURTESY COPY.

17         THE COURT:  DO YOU WANT TO PASS ONE UP IF YOU HAVE

18     ONE?  IF YOU DON'T, DON'T WORRY.  I'LL FOLLOW UP.

19         MR. JONES:  I APOLOGIZE, YOUR HONOR.  ALL I DID WAS I

20     JUST WROTE CREDITOR'S 12.  SORRY.

21         THE COURT:  THANK YOU.

22     BY MR. JONES:

23         Q    OKAY, MR. O'BERRY, THAT'S YOUR SIGNATURE ON PAGE SIX,

24     ISN'T IT?

25         A    YES.

174

1      Q      AND THAT'S YOUR MOTHER'S SIGNATURE, BEATRICE

2  O'BERRY.  IS THAT ACCURATE?  UP ABOVE?

3      A      I CAN'T TESTIFY TO THAT.  THAT'S NOT WHAT IT LOOKED

4  LIKE TO ME.  IT LOOKS TO ME LIKE SOME SCRIBBLING.

5      Q      OKAY.  WAS SHE ALIVE IN JULY OF 2006?

6      A      I BELIEVE SO.

7      Q      OKAY.  PLEASE TURN TO PAGE NUMBER TWO, PARAGRAPH

8  THREE.  ARE YOU THERE?

9      A      I'M ON PAGE TWO.

10     Q      OKAY.  PARAGRAPH NUMBER THREE WHERE IT SAYS "JOSEPH

11 AND MARSHA O'BERRY SHALL RECEIVE IMMEDIATE OWNERSHIP FREE

12 AND CLEAR OF ALL CLAIMS AND ENCUMBRANCES, ALL OF THE PROPERTY

13 IN DISPUTE EXCEPT THE 40 ACRES OF PROPERTY REFERRED TO AS THE

14 GROVE," WHICH YOU JUST IDENTIFIED IN THE NORTHEAST QUARTER OF

15 SECTION 24.  WHICH SHALL BE TRANSFERRED -- WELL, THE GROVE --

16 EXCEPT FOR THE GROVE, WHICH SHALL BE TRANSFERRED TO EVERETT

17 O'BERRY, TOGETHER WITH EASEMENTS, ET CETERA, ET CETERA.

18     FLIP OVER TO WHAT'S NUMBERED PAGE TWO, WHICH IS THE

19 PREVIOUS PAGE, PLEASE, WHERE THE LEGAL DESCRIPTION IS.  YES,

20 YOU'RE ON IT.  WHAT SECTIONS ARE COVERED UNDER THIS SETTLEMENT

21 AGREEMENT, MR. O'BERRY?

22     A      IN THIS AGREEMENT IT SAYS:  13, 23, 24, AND 19.

23     Q      SO, IT'S ACCURATE TO SAY THAT WHEN YOU SIGNED THIS

24 AGREEMENT AND IT WAS SIGNED OFF ON, YOU RECEIVED IMMEDIATE

25 OWNERSHIP OF THIS PROPERTY, CORRECT?

1          MR. WEBBER:  JUDGE, OBJECTION.  THAT CALLS FOR A LEGAL

2     CONCLUSION.  THERE'S NO DEED RECORDED UNTIL 2007.

3          THE WITNESS:  NO, THIS IS -- THIS HERE WAS AN AGREEMENT

4     --

5          THE COURT:  MR. O'BERRY, WAIT JUST ONE SECOND.  I'M

6     GOING TO ALLOW MR. O'BERRY TO GIVE WHATEVER ANSWER HE

7     SO CAN DO.  YOU'RE NOT A LAWYER, BUT IF YOU CAN ANSWER THE

8     QUESTION, YOU CAN DO THAT, SIR.

9          THE WITNESS:  MY BROTHER WAS TRYING TO SETTLE THIS

10    AGREEMENT, IS WHAT HE WAS TRYING TO DO, AND TO GET SOME

11    KIND OF DIRECTION ON THIS THING.  THERE WAS NO NOTHING

12    TRANSFERRED, NOTHING RECORDED.  THIS DOCUMENT WAS NEVER

13    RECORDED UNTIL AFTER THE SETTLEMENT AGREEMENT WHEN THE

14    TRUSTEES -- WHEN WE WENT TO THE TRUSTEE COURT AND ALL

15    THAT, BECAUSE HE COULD NOT -- THEY COULD NOT GIVE ME

16    LEGALLY THIS PIECE OF PROPERTY WITHOUT GOING THROUGH THE

17    TRUSTEE COURT, IS WHAT THEY BASICALLY SAID.  SO, IT REALLY

18    ISN'T WORTH THE PAPER IT WAS WROTE ON.

19    BY MR. JONES:

20         Q     BUT, MR. O'BERRY, NEVERTHELESS, YOU SIGNED THIS

21    AGREEMENT AND THE LITIGATION WAS DISMISSED.  ISN'T THAT RIGHT?

22         A     WE WERE TRYING TO GET SOME KIND OF UNDERSTANDING

23    WITH IT.

24         Q     RIGHT.

25         A     AND NOT ONLY SIGN IT, BUT MY BROTHER SIGNED IT.  IF YOU

1    GET TO LOOKING IN THE BACK, IT WASN'T EVEN WITNESSED.

2        Q        MR. O'BERRY, I'M NOT ASKING AS TO THE FORMALITIES, BUT

3    I -- WHAT I'M GETTING TO IS --

4        A        WELL, YOU ASKED ME IF I GOT SOMETHING THAT I DIDN'T

5    GET.  AND THE ANSWER IS NO.

6        Q        WELL, MR. O'BERRY, YOU TESTIFIED THAT YOU INHERITED

7    THIS LAND.  AND YET, YOU HAVE PROVIDED NO DOCUMENT TO THIS

8    COURT ANYWHERE THAT SHOWS THAT YOU INHERITED THIS LAND.

9    INSTEAD, WHAT WE HAVE IS WE HAVE A DOCUMENT THAT SAYS THAT

10    YOU OWNED THIS LAND WHEN YOU APPLIED FOR THE LOAN.  AND YOU

11    TESTIFIED, AND YOUR LAWYER HAS TESTIFIED THAT THAT IS NOT TRUE.

12        A        IT'S BEEN ALL VERBAL AGREEMENT WITH MY BROTHERS UP

13    UNTIL WE COME TO THE SETTLEMENT AGREEMENT WITH DAVID TERRY.

14    THAT IS WHENEVER WE SIT DOWN AND AGREED AND EVERYBODY GOT --

15    THE TRUSTEE GOT THE DEED.  GO LOOK AT THE TRUSTEE DEED.  I MEAN

16    THE PROPERTY THEY GOT.  I DON'T HAVE --

17        Q        WE'RE GOING TO GET TO THAT, MR. O'BERRY.  WE'LL GET TO

18    THAT.  BUT THE POINT IS THAT WHEN YOU GOT THIS PROPERTY, THERE

19    WAS SOMETHING YOU WERE SUPPOSED TO DO WITH IT, ISN'T THERE?

20    YOU WERE SUPPOSED TO LIST IT FOR SALE, WEREN'T YOU?

21        A        NO.  I'M NOT SELLING MY PLACE.

22        Q        OKAY.  CAN YOU PLEASE FLIP OVER TO PAGE 4, PARAGRAPH

23    5; AND READ NUMBER 5, PLEASE, TO YOURSELF.

24        A        NO, I THINK THIS -- THAT WAS SOME OF THE DISPUTE THAT

25    WE HAD OVER THE THING.

1       Q       RIGHT.

2       A       BECAUSE I WASN'T SELLING NO PROPERTY AND EVERETT

3   WASN'T SELLING IT EITHER.

4       Q       WELL, MR. O'BERRY, WHAT IT SAYS IS IS THAT -- AND YOU

5   SIGNED AND YOUR WIFE SIGNED THAT YOU AGREED TO PUT THIS

6   PROPERTY UP FOR SALE, THE VERY PROPERTY THAT YOU SAY YOU WERE

7   WORKING AND PAYING CREDITORS AND ALL THIS OTHER STUFF.  NOW

8   THERE'S AN AGREEMENT AT PRECISELY THE TIME YOU APPLIED FOR THIS

9   LOAN THAT SAYS YOU SHALL IMMEDIATELY UNDERTAKE TO SELL THIS

10  PROPERTY OR PAY THE TRUST $500,000.  DID YOU DO THAT?

11      A       NO, I AIN'T [SIC] SELLING NOTHING.

12      Q       WHY NOT?

13      A       BECAUSE WE DIDN'T AGREE ON THIS.

14      Q       WERE THE LAWSUITS DISMISSED?

15      A       EVERETT -- MY BROTHER WENT THROUGH IT.  WE SAT DOWN;

16  WE WERE GOING OVER IT.  I TOLD HIM, "EVERETT, THAT'S NOT GOING TO

17  WORK."  HE SAID, "I KNOW IT'S NOT GOING TO WORK."  I SAID, "WELL, THE

18  SIMPLEST THING TO DO IS JUST SPLIT IT UP, GIVE DANNY AND THEM --

19      Q       MR. O'BERRY --

20      A       -- AND YOU GET THAT UP YONDER AND WE GET THE REST OF

21  IT AND THAT TAKES CARE OF EVERYTHING --

22      Q       RIGHT.

23      A       -- AND NOBODY'S GOT TO COME UP WITH NO MONEY."

24      Q       BUT NEVERTHELESS, MR. O'BERRY, WHAT WE HAVE IN FRONT

25  OF US FOR THE FIRST TIME IS A DOCUMENT DEALING WITH THE PROPERTY

1    THAT YOU CLAIMED, FIRST, THAT YOU DID NOT OWN WHEN YOU APPLIED

2    FOR THE LOAN AND, SECOND, THAT YOU INHERITED.  AND THOSE TWO

3    THINGS ARE NOT ACCURATE, ARE THEY?

4          A      WE NEVER DONE -- DONE THIS.

5          Q      MR. O'BERRY, YOU TESTIFIED EARLIER THAT YOU WERE

6    PLANNING ON WORKING SECTION 23 LAND TO PAY OFF UNSECURED

7    CREDITORS.  IS THAT CORRECT?

8          A      YES.

9          Q      AND YOU TESTIFIED EARLIER THAT YOU -- YOU HADN'T

10   DONE THAT YET, BECAUSE YOU WERE AWAITING THE DEED FROM THE

11   MACHADOS.  IS THAT CORRECT?

12         A      I WAS WAITING FOR THE LEGAL DESCRIPTION TO GET IRONED

13   OUT.  I MEAN --

14         Q      OKAY.

15         A      -- IT HAD SO MANY ERRORS IN IT WHENEVER I WENT OVER TO

16   MR. WEBBER'S TO SIGN THE THING.  I TOLD HIM, I SAID, "I NEED TO TAKE

17   IT SOMEWHERE," AND WHEN IT COME BACK, WE HAD ALL THESE

18   QUESTIONS IN THERE.

19         Q      OKAY.  UNDERSTOOD.

20         A      AND WE'RE STILL WAITING ON IT.

21         Q      WELL, WHAT -- PUTTING ALL THAT ASIDE, WHAT KEPT YOU

22   FROM WORKING THE LAND AND PAYING OFF UNSECURED CREDITORS

23   OVER THE PAST 16 MONTHS, IF THAT'S WHAT YOU REALLY WERE GOING

24   TO DO?

25         A      I'M WAITING ON THE LEGAL SO WE CAN SETTLE THIS AND

1    THEN I CAN MOVE FORWARD.  I MEAN, I --

2         Q      WELL, AREN'T YOU --

3         A      -- I'M SURE THAT IT'S GOOD TO PAY THEM OFF.

4         Q      -- YOU'RE -- YOU'RE IN POSSESSION OF THE LAND.  ISN'T

5    THAT CORRECT?

6         A      THAT'S RIGHT.

7         Q      YOU'RE ON THE LAND.

8         A      THAT'S RIGHT.

9         Q      THE MACHADOS ARE NOT ON THE LAND, ARE THEY?

10        A      NO.

11        Q      NOBODY ELSE IS ON THE LAND, ARE THEY?

12        A      NO.

13        Q      JUST YOU AND YOUR WIFE, CORRECT?

14        A      THAT'S RIGHT.

15        Q      AND YET, YOU HAVE NOT DONE A SINGLE THING IN 16

16   MONTHS, INCLUDING PAYING THE TAXES, TO PAY THESE UNSECURED

17   CREDITORS.  THAT'S CORRECT, ISN'T IT?

18        A      THAT'S CORRECT.

19        Q      OKAY.  LET'S TALK ABOUT -- A LITTLE BIT ABOUT -- THERE'S

20   BEEN A LOT SAID ABOUT THIS APPRAISAL.  AND I WANT TO GET TO THIS.

21   AND I BELIEVE THE APPRAISAL WAS CREDITOR'S EXHIBIT NUMBER TWO,

22   WHICH IS THE APPRAISAL FROM AUGUST OF 2006.  YES, SIR.

23        A      IT'S WHERE AT?  IN THE --

24               MR. WEBBER:  IT'S IN THE BLUE BOOK.

25               MR. JONES:  CREDITOR'S NUMBER TWO.

1   BY MR. JONES:

2         Q      ARE YOU WITH ME?  YES?

3         A      YEAH.

4         Q      OKAY.  LET'S GO TO PAGE ONE, PLEASE, AT THE VERY TOP

5   WHERE IT SAYS "LEGAL DESCRIPTION."  PAGE ONE OF THE APPRAISAL;

6   NOT THE COVER LETTER.  NEXT PAGE, MR. O'BERRY.

7               MR. JONES: JUDGE, MAY I?

8               THE COURT:  YES.

9   BY MR. JONES:

10        Q      RIGHT HERE, SIR.

11        A      THAT'S PAGE ONE?

12        Q      WE'RE ON TWO.  FROM AUGUST OF 2006.  LEGAL

13  DESCRIPTION.  THIS IS WHAT MR. WEBBER WAS ASKING YOU ABOUT

14  EARLIER.  NOW, YOU HAD TESTIFIED THAT YOU KNEW THAT A SECTION

15  WAS 640 ACRES, RIGHT?

16        A      UNLESS IT'S WHERE THEY MEET; AND THEN THEY CALL IT A

17  BIG SECTION, WHICH SOMETIMES CAN BE SEVEN -- YOU KNOW, THE

18  WORLD'S ROUND.  IT'S NOT SQUARE.

19        Q      SURE.

20        A      SO YOU CAN HAVE A LARGE SECTION.

21        Q      BUT YOU TESTIFIED THAT A SECTION WAS 640 ACRES,

22  CORRECT?

23        A      YEAH, MOST OF THEM ARE 640 ACRES.

24        Q      LET'S DO SOME QUICK MATH, IF WE COULD, PLEASE.  THE

25  FIRST LINE, THE SOUTH HALF OF SECTION 13, HOW MANY ACRES IS A

1    HALF OF A SECTION?

2         A    320.

3         Q    OKAY.  THEN THE NEXT CALL IS THE NORTH HALF OF

4    SECTION 24.  HOW MANY ACRES IS THAT?

5         A    THAT WOULD BE 320 ACRES.

6         Q    OKAY.  AND THEN THE NEXT CALL IS THE NORTHWEST

7    QUARTER OF A SECTION.  HOW MANY ACRES IS THAT?

8         A    160.

9         Q    OKAY.  BY MY CALCULATIONS, THAT'S 800 ACRES.  DO YOU

10   AGREE WITH THAT?

11        A    WELL, YOU'RE ADDING IT UP.

12        Q    WELL, DO YOU --

13        A    I DON'T -- YOU KNOW, I DON'T KNOW.  I'M JUST --

14        Q    320 AND 320 IS 640.

15        A    YEAH.

16        Q    PLUS 160 IS 800.  DO YOU AGREE WITH THAT?

17        A    YEAH, I GUESS, IF YOU SAY SO.

18        Q    OKAY.  PLEASE TURN TO PAGE SIX WHERE IT SAYS "SITE

19   DESCRIPTION."  ARE YOU THERE, SIR?

20        A    YES.

21        Q    OKAY.  THE SECOND FULL PARAGRAPH, HOW MANY ACRES IS

22   THIS SITE?

23        A    THE SUBJECT SITE IS LOCATED ACROSS FROM THE 700 WEST

24   OF THE TWO HUNDRED --

25        Q    NEXT PARAGRAPH DOWN, SIR.

1    A    HUH?

2    Q    NEXT PARAGRAPH DOWN.

3    A    THE SITE IS APPROXIMATELY 38,628 SQUARE FEET.

4    Q    AND -- OR APPROXIMATELY 886.67 ACRES.  ISN'T THAT WHAT

5 IT SAYS?  RIGHT.

6    A    YEAH.

7    Q    SO, THAT'S ABOUT 86.67 ACRES MORE THAN WHAT THE

8 LEGAL DESCRIPTION SAYS, ISN'T IT?

9    A    IT'S WHAT NOW?

10    Q    WHEN WE JUST DID OUR MATH, WE CAME UP WITH 800 ACRES.

11    A    YEAH.

12    Q    THIS PAGE IN THE SAME APPRAISAL SAYS THAT IT'S 886.67

13 ACRES.

14    A    YEAH.

15    Q    AND YOU WERE SITTING HERE WHEN MS. GIEL TESTIFIED

16 THESE APPRAISALS ARE A STARTING LINE, NOT A FINISH LINE, RIGHT?

17    A    THESE APPRAISALS ARE THE APPRAISALS THEY WENT BY TO

18 LOAN THE MONEY.

19    Q    RIGHT.  BUT THAT'S A DISCREPANCY IN THIS APPRAISAL,

20 ISN'T IT?

21    A    I DON'T SEE -- IF THEY'RE ADDING THEM TOGETHER.  BUT IT

22 KEEPS SAYING SOME OF THESE IT'S LESS -- YOU KNOW, IF IT'S A LARGE

23 SECTION --

24    Q    WELL, THIS --

25    A    -- OR A SMALL SECTION.  SEE, THAT'S WHAT I DON'T

1   UNDERSTAND, BECAUSE THAT'S WHERE YOU HAVE TO GET A SURVEYOR

2   IN THERE AND SURVEY IT.

3       Q       WELL, MR. O'BERRY, THIS IS THE SECOND APPRAISAL THAT

4   WAS DONE FOR YOUR LOAN.  AND --

5       A       IN WHICH PIECE OF --

6       Q       -- BY OUR CALCULATIONS, IT -- THE LEGAL DESCRIPTION

7   EQUATED TO 800 ACRES; AND YET, THE APPRAISAL SAYS 886.  MY POINT

8   BEING THAT THIS APPRAISAL IS NOT VERY ACCURATE, IS IT?

9       A       BANK'S LOANED MONEY ON THEM.  I DON'T UNDERSTAND

10  WHAT YOU'RE SAYING.  I MEAN, IT'S A -- YOU'RE SAYING THAT IT'S A

11  86-ACRE DISCREPANCY FROM YOUR FIGURES FROM THEIR FIGURES AND I

12  DON'T KNOW WHETHER IT'S A LARGE SECTION OR A HALF A SECTION OR

13  IS 742 ACRES.  I DO KNOW THAT THIS PIECE OF PROPERTY DOWN BELOW

14  THIS THING IS -- THERE'S THREE PARCELS IN HERE THAT ONE OF THEM'S

15  40; ONE OF THEM'S 82; AND ONE'S 170 ACRES, WHICH IS, YOU KNOW,

16  THAT'S WHERE ALL THE SECTIONS COME TOGETHER.

17      Q       OKAY.

18      A       SO, I DON'T -- I'M ASSUMING THAT'S WHAT --

19      Q       BUT THAT'S NOT APPRAISED IN THIS APPRAISAL, IS IT?

20      A       I -- I DON'T --

21      Q       IT'S NOT.

22      A       NO, IT'S NOT IN THIS APPRAISAL.

23      Q       RIGHT.

24      A       THIS APPRAISAL HERE IS --

25      Q       NOW, MR. O'BERRY, WE JUST WENT OVER THE SETTLEMENT

184

1    AGREEMENT.  AND I THINK THIS IS PRETTY IMPORTANT.  WE JUST WENT

2    OVER THE SETTLEMENT AGREEMENT WHERE YOU IMMEDIATELY

3    RECEIVED OWNERSHIP OF THE PROPERTY -- THAT'S WHAT THIS

4    DOCUMENT SAYS -- EXCEPT FOR THE GROVE.  ISN'T THAT ACCURATE?

5    ISN'T THAT WHAT THIS AGREEMENT SAYS?

6         A    THAT'S WHAT IT SAYS, BUT WE NEVER -- IT NEVER WAS

7    RECORDED.

8         Q    AND EARLIER, YOU POINTED TO THE GROVE AS BEING IN

9    SECTION 24.  THAT'S THE NORTH HALF OF SECTION 24.  YOU IDENTIFIED

10   THAT, RIGHT?

11        A    I ASSUME THAT IT IS.  I DON'T -- I DON'T KNOW WHETHER IT --

12   IT'S NOT MARKED OUT.  I DON'T KNOW WHERE IT'S AT.

13             MR. JONES:  JUDGE, IF I MAY?

14             THE COURT:  (RESPONDING IN THE AFFIRMATIVE.)

15   BY MR. JONES:

16        Q    OKAY.  MR. O'BERRY, WHEN MR. WEBBER WAS QUESTIONING

17   YOU, YOU POINTED TO THE GROVE AND TALKED ABOUT ORANGES.

18        A    YEAH.

19        Q    OKAY.

20        A    BUT THERE'S A LINE THAT SPLITS THAT GROVE UP; AND PART

21   OF IT'S IN 19 AND PART OF IT'S IN --

22        Q    SURE.

23        A    -- 24.

24        Q    BUT THAT IS THE GROVE, CORRECT?

25        A    YEAH.

1        Q        AND THIS PART OF IT IS IN SECTION 24.  YOU'VE ALREADY

2   IDENTIFIED THAT.

3        A        YEAH.

4        Q        OKAY.  AND THIS IS THE NORTH HALF OF SECTION 24.  YOU'VE

5   IDENTIFIED THAT.

6        A        YEAH.

7        Q        OKAY.  GO TO THE SETTLEMENT AGREEMENT, IF YOU WOULD,

8   SIR, THE ONE I HANDED YOU THAT'S BEEN --

9        A        THIS HERE THAT'S NOT BEEN RECORDED?

10       Q        YES, SIR.  THAT ONE.

11       A        WHY ARE WE GOING OVER IT?

12       Q        BECAUSE I'M ENTITLED TO ASK YOU QUESTIONS ABOUT IT,

13   MR. O'BERRY.

14       A        BUT WHY ARE WE GOING OVER AN AGREEMENT THAT WAS

15   NEVER RECORDED?

16            THE COURT:  AND YOU JUST NEED TO ANSWER SOME

17       QUESTIONS.  MR. O'BERRY, YOU JUST NEED TO ANSWER SOME

18       QUESTIONS MR. JONES IS GOING TO ASK YOU.

19            THE WITNESS:  OKAY.  I'LL ANSWER THE QUESTION.

20   BY MR. JONES:

21       Q        MR. O'BERRY, PARAGRAPH THREE, WHAT HAPPENS TO THE

22   GROVE LAND?

23       A        IT GOES TO MY BROTHER, I GUESS.  EVERETT.

24       Q        OKAY.  AND THE GROVE IS LOCATED IN THE NORTH HALF OF

25   SECTION 24, RIGHT?

1      A      YEAH.

2      Q      THAT'S WHAT WE JUST WENT OVER.  AND THE APPRAISAL

3   THAT WE JUST TALKED ABOUT APPRAISED THE NORTH HALF OF SECTION

4   24, WHICH INCLUDED THE GROVE, WHICH WAS OWNED BY YOUR

5   BROTHER AT THE TIME IT WAS DONE, DIDN'T IT?

6      A      I DON'T KNOW.  MAYBE IT DID.

7      Q      WELL, ISN'T THAT WHAT THE DOCUMENT SAYS?

8             MR. WEBBER:  JUDGE, HE DIDN'T DO THIS APPRAISAL.  SO,

9       HOW'S HE GOING TO KNOW THAT?  I OBJECT.

10            THE COURT:  I'M GOING TO SUSTAIN THAT OBJECTION.

11            MR. JONES:  OKAY.

12   BY MR. JONES:

13     Q      WHO OWNS THE GROVE TODAY, MR. O'BERRY?

14     A      EVERETT.  THAT'S MY OLDEST BROTHER.

15     Q      OKAY.  MR. O'BERRY, IF YOU COULD PLEASE, IN THE WHITE

16   NOTEBOOK, TURN TO EXHIBIT 11, THE PLAN OF LIQUIDATION.

17     A      WHERE IS THAT AT?

18     Q      IN THE WHITE NOTEBOOK, SIR.  IT'S NUMBER 11.  ARE YOU

19   THERE, SIR?

20     A      YEAH, I'M HERE.

21     Q      EARLIER, MR. WEBBER HAD ASKED YOU ABOUT SOME

22   DEFINITIONS ON PAGE 10, REAL PROPERTY, MEDIATED REAL PROPERTY?

23     A      YEAH.

24     Q      DID YOU EVER TELL MR. WEBBER THAT YOU WANTED TO

25   RETAIN SECTION 23?

1    A    YES.  IT'S NOT IN THE MORTGAGE.

2    Q    CAN YOU SHOW ME IN THIS DOCUMENT HERE, THE PLAN,

3 ANYWHERE WHERE IT SAYS YOU'RE ALLOWED TO RETAIN SECTION 23

4 AND WORK IT TO PAY OTHER CREDITORS?

5    A    RIGHT DOWN HERE WHERE IT SAYS THE MORTGAGE AND THE

6 PROPERTY THAT'S ENCUMBERED IN IT, THAT'S THE REASON IT WAS PUT

7 IN THERE.

8    Q    WELL, YOU WERE SITTING HERE WHEN YOU HEARD MR.

9 SHUKER TESTIFY EARLIER, WHO MEDIATED THIS CASE.  DO YOU RECALL

10 THAT?

11    A    YEAH, I KNEW HE WAS SITTING HERE.

12    Q    OKAY.  AND HE TESTIFIED THAT THERE WAS NO DISCUSSION

13 ABOUT THIS ISSUE WHATSOEVER AT MEDIATION.  DO YOU RECALL THAT?

14    A    I RECALL THAT, BUT THAT'S HIS VERSION OF WHY DID WE

15 PUT IT IN THERE, THE MORTGAGE.

16    Q    SO, COMING OUT OF MEDIATION, ONE OF THE THINGS THAT

17 WAS SUPPOSED TO HAPPEN IS THE PROPERTY WAS SUPPOSED TO BE

18 LISTED BY TWO BROKERS.  ISN'T THAT ACCURATE, MR. O'BERRY?

19    A    THAT'S RIGHT.

20    Q    DID YOU HIRE ONE OF THOSE BROKERS?

21    A    YES, WE HAD A BROKER TRYING TO SELL THE PROPERTY FOR

22 US.

23    Q    OKAY.  MR. O'BERRY, IF YOU WERE TRYING TO RETAIN

24 SECTION 23 FOR YOURSELF, WHY WAS ALL OF THE LAND AT 5400 8 MILE

25 RANCH ROAD LISTED FOR SALE BY THE TWO BROKERS?

1      A       THE REASON FOR IT WAS LISTED IN THERE IS TO TRY AND

2   GET SOME KIND OF OFFER ON THE PIECE OF PROPERTY AS FAR AS IT GOES.

3   THE SALE OF THE PROPERTY NEVER SOLD; AND WE WERE TALKING

4   ABOUT THE PROPERTY THAT WAS ON THE MORTGAGE, TO SELL IT.  WE

5   DID NOT SAY -- THE BASIS IN HERE, WHAT PROPERTY IS IN THE

6   MORTGAGE IS WHAT WE WERE GOING TO SELL.

7      Q       WELL, MR. O'BERRY, ISN'T IT ACCURATE THAT THEY WERE

8   TASKED WITH SELLING ALL OF THE PROPERTY LOCATED AT 5400 8 MILE

9   RANCH ROAD?

10     A       I WASN'T SELLING MY HOME; AND I WASN'T SELLING THE 160

11  ACRES.

12     Q       WHEN YOU FILED YOUR -- WHEN YOU FILED ON BEHALF OF

13  THE DEBTOR, 8 MILE RANCH, DIDN'T 8 MILE RANCH OWN SECTION 23?

14     A       IT OWNED SECTION 23 AND IT OWNED WHERE MY HOUSE IS

15  AT.

16     Q       AT THE TIME WHEN YOU FILED, IT OWNED WHERE YOUR

17  HOUSE WAS?

18     A       WHERE MY HOUSE IS, YEAH, I OWNED IT.  I MEAN, WHAT AM I

19  GOING TO DO, SELL EVERYTHING?  MY HOUSE AND ALL?

20     Q       NO, I'M ASKING YOU AT THE TIME THAT YOU FILED THIS

21  PETITION, ARE YOU SAYING THAT THE DEBTOR OWNED YOUR

22  HOMESTEAD?

23     A       NO, THE DEBTOR DON'T OWN MY HOMESTEAD.

24     Q       OKAY.

25     A       BUT YOU'RE SAYING THAT I PUT ALL THE PROPERTY UP FOR

1   SALE.

2        Q       BUT ISN'T THAT WHAT HAPPENED AS A RESULT OF

3   MEDIATION?

4        A       NO.  WE AIN'T [SIC] PUT IT ALL UP FOR SALE; JUST WHAT WAS

5   IN THE MORTGAGE.

6             MR. JONES:  YOUR HONOR, I DON'T HAVE -- UNFORTUNATELY,

7        WE FIGURED THIS OUT EARLY ON THE WAY DOWN -- IT'S ITEMS

8        NUMBER 57 AND 58, WHICH IS THE APPLICATION FOR -- THE

9        APPLICATION TO EMPLOY THE BROKERS; AND AS THE COURT CAN

10       SEE --

11            SPEAKER:  THAT'S DOCKET NUMBERS --

12            THE COURT:  YEAH, I GOT IT.  I WAS JUST PULLING IT UP.  AND

13       WHAT IS IT -- DID YOU WANT COPIES OF THOSE?  IS THAT WHAT

14       YOU WANTED?

15            MR. JONES:  NO, YOUR HONOR, BUT THE POINT BEING THAT

16       THERE WAS NO BREAKOUT WHATSOEVER.

17            MR. WEBBER:  WHAT ARE THE ECF'S?

18            THE COURT:  FIFTY-SEVEN AND FIFTY-EIGHT.  I'M PULLING IT

19       UP.  ARE YOU ASKING ME TO TAKE JUDICIAL NOTICE OF THESE TWO

20       DOCUMENTS?

21            MR. JONES:  YES, YOUR HONOR.  YES.

22            THE COURT:  IS THERE ANY OBJECTION TO THAT?

23            MR. WEBBER:  JUDGE, I HAVEN'T SEEN THEM.  I'D LIKE TO

24       READ THEM.

25            THE COURT:  WELL, YOU FILED THEM BOTH, BUT --

1          MR. WEBBER:  I FILED BOTH FOR HIRING THEIR BROKER?  ARE

2     YOU SURE?

3          THE COURT:  THAT'S WHAT THE DOCKET ENTRY SAYS.

4          MR. WEBBER:  ARE YOU SURE BROAD AND CASSEL DIDN'T

5     FILE THE ONE TO HIRE THEIR BROKER?

6          THE COURT:  I'M LOOKING IT UP.  I'M READING YOU THE

7     DOCKET ENTRY.

8          MR. KILLIAN:  NO, WE SELECTED, BUT YOU RETAINED THEM.

9          MR. WEBBER:  THAT MAY HAVE BEEN WHAT IT IS, JUDGE.

10         THE COURT:  IT'S REALLY SLOW COMING UP.  I CAN'T GET IT

11    TO PULL UP, BUT AT LEAST THE DOCKET ENTRY REFLECTS THAT

12    YOU FILED THEM BOTH.  I'M GOING TO TAKE JUDICIAL NOTICE OF

13    BOTH OF THEM IN ANY EVENT.  WHICH ONE WAS THE NAME OF

14    YOUR REAL ESTATE AGENT, MR. O'BERRY?  WAS IT MR. DUBOIS?

15         THE WITNESS:  YES.

16         THE COURT:  OKAY.

17         MR. JONES:  OKAY, YOUR HONOR?

18         THE COURT:  YES.

19         MR. JONES:  OKAY.  THANK YOU.

20    BY MR. JONES:

21         Q     MR. O'BERRY, IN THE WHITE NOTEBOOK, IF YOU COULD

22    PLEASE TURN TO NUMBER 13.  AND IN FRONT OF YOU IT SHOULD SAY

23    "ORDER CONFIRMING CHAPTER 11 PLAN LIQUIDATION."  IS THAT

24    ACCURATE?

25         A     YEAH.

1     Q     MR. O'BERRY, PARAGRAPH SEVEN, PLEASE, WHERE IT SAYS

2  "THE REAL PROPERTY SHALL BE DEEDED TO THE MACHADO CREDITORS

3  OR ITS DESIGNEE AFTER THIS ORDER BECOMES FINAL AND NON-

4  APPEALABLE." AND REAL PROPERTY IS A CAPITALIZED TERM. NOW, WE

5  JUST WENT OVER THE DEFINITION OF REAL PROPERTY IN THE PLAN; AND

6  REAL PROPERTY MEANS THE PROPERTY LOCATED AT 5400 8 MILE RANCH

7  ROAD, ST. CLOUD, FLORIDA, 34773.

8     A     THAT'S MY HOME.

9     Q     WELL, EARLIER, YOU TESTIFIED THAT THERE'S NO OTHER

10  ADDRESSES OUT THERE. HOW WOULD ONE IDENTIFY PROPERTY, THEN,

11  BY STREET ADDRESS?

12     A     THERE IS NOTHING. YOU'D DESIGNATE IT BY SECTIONS IN

13  THAT AREA.

14     Q     BUT ISN'T IT ACCURATE WHEN YOU FILED YOUR PETITION

15  YOU LISTED ALL OF THIS PROPERTY OF THE DEBTOR BEING LOCATED AT

16  5400 8 MILE RANCH ROAD?

17     A     THAT'S MY HOME. I -- YOU KNOW, HOW ELSE ARE WE GOING

18  TO LIST IT THAN WE GO THROUGH AND PULL THE LEGAL UP.

19     Q     PUTTING YOUR HOME ASIDE, YOUR HOMESTEAD, WHAT

20  ABOUT ALL THE OTHER PROPERTY?

21     A     ALL THE OTHER PROPERTY WOULD BE CONSIDERED SECTION

22  13, 24, 19, 20, 21, 16 --

23     Q     SO, MR. O'BERRY, YOU'VE NEVER REFERRED TO ALL OF THAT

24  LAND, PUTTING YOUR HOMESTEAD ASIDE, AS BEING LOCATED AT 5400 8

25  MILE RANCH ROAD?

1    A    NO.  I REFER TO IT AS 8 MILE RANCH.

2    Q    BUT IN THE COURT DOCUMENTS.

3    A    WELL, WE HAVE TO PUT OUR ADDRESS IN.  THAT'S WHAT WE

4    PUT DOWN, WHERE MY HOUSE IS.  THAT'S WHERE I LIVE AND THAT'S

5    WHERE THE PROPERTY'S AT.  IT'S JUST A VAST PIECE OF PROPERTY.  I

6    MEAN, THERE'S NO STREETS, YOU KNOW, NOTHING LIKE THAT.

7        (WHEREUPON, A DISCUSSION WAS HELD OFF THE RECORD.)

8        MR. JONES:  JUDGE, I'M GOING TO ASK THAT THE COURT

9    TAKE JUDICIAL NOTICE, AGAIN, OF THE VOLUNTARY PETITION FOR

10   THE FILING IN CHAPTER 11 AND THE LISTING OF THE PROPERTY.

11       THE COURT:  ANY OBJECTION TO THAT, MR. WEBBER?

12       MR. WEBBER:  NO.

13       THE COURT:  I WILL TAKE JUDICIAL NOTICE OF DOCUMENT

14   ONE.

15   BY MR. JONES:

16   Q    SO, MR. O'BERRY, GOING BACK TO THE ORDER CONFIRMING

17   THE PLAN, WHEN THE COURT GRANTED YOUR PETITION AND CONFIRMED

18   THE PLAN, THEY ORDERED YOU TO CONVEY ALL OF THAT PROPERTY

19   OVER TO THE MACHADO CREDITORS, DIDN'T THEY?  DIDN'T THE COURT

20   DO THAT?

21   A    TO MY UNDERSTANDING, WHAT WAS ON THE MORTGAGE IS

22   WHAT WE CONVEYED.

23   Q    HAVE YOU CONVEYED ANYTHING TO DATE?

24   A    I JUST TOLD YOU, I DON'T MIND SIGNING THE DEED OVER,

25   JUST AS LONG AS IT'S RIGHT, BUT WHAT THEY SENT US WAS ALL THE

1   TRUSTEE'S PROPERTY AND WHERE I LIVE AND EVERYWHERE ELSE.

2       Q       OKAY.  BUT YOU WERE REQUIRED TO DEED OVER ALL OF THE

3   PROPERTY.

4       A       THAT'S THE REASON I DIDN'T DEED IT OVER.  BECAUSE IT'S

5   NOT -- THE LEGAL IS NOT RIGHT.

6       Q       DID YOU TELL THAT TO MR. WEBBER?

7       A       YES, MR. WEBBER KNOWS IT.  HE'S -- YOU KNOW, THAT'S THE

8   REASON WHEN WE WENT IN TO SIGN THE DEED, I TOLD HIM, I SAID, "WE

9   NEED TO LOOK THIS THING OVER, BECAUSE IT DON'T LOOK RIGHT."

10      Q       AND WHEN DID YOU DO THAT?

11      A       WHEN I WENT TO HIS OFFICE TO SIGN THE DEED THAT SHE

12  ORDERED US TO GET THE DEED -- YOU KNOW, PREPARE THE DEED AND TO

13  SEND IT TO IT; AND HE SAID, "WE NEED TO DO IT RIGHT AWAY."  AND I

14  TRIED TO FOLLOW UP AS GOOD AS I CAN.  AND WHEN I GOT THERE, I

15  LOOKED AT IT AND I SAID, "I DON'T THINK THIS IS RIGHT."

16      Q       SO, IS THE FIRST TIME YOU LOOKED AT THE DEED AT THE

17  END OF FEBRUARY?

18      A       THE DEED THAT THEY PREPARED AND SENT TO US, YES.

19      Q       OKAY.

20              MR. WEBBER:  JUDGE, FOR THE RECORD, DEBTOR'S 17 WAS

21              EXECUTED ON JANUARY 29, 2015.

22  BY MR. JONES:

23      Q       SO, MR. O'BERRY, I WANT TO GO BACK TO WHEN YOU OWNED

24  THIS LAND.  YOU SAY YOU --

25      A       IN '83?

1      Q      -- INHERITED IT.  WHEN?

2      A      I INHERITED PART OF IT WHEN --

3      Q      WHICH PART?  WHICH PART, SIR?

4      A      PART OF 13, PART OF 24, AND PART OF 19.  IT WAS ALL A LOAN

5  BETWEEN ME AND MY DAD.  MY BROTHERS AND THEM, WE SIT DOWN, WE

6  SAID WE NEED TO CLEAR IT UP, BECAUSE IT WAS JOINTLY OWNED.  AND

7  SO, WE DIVIDED IT UP.  AND WE WENT THROUGH THESE AGREEMENTS.

8  WE LOOKED AT THEM AND THEY WASN'T GOING TO WORK LIKE THAT,

9  AND SO MY BROTHER WENT TO DAVID TERRY.  HE'S AN ATTORNEY FOR

10  THE TRUSTEE.  THAT'S WHO HE HIRED.  WE WENT DOWN THERE AND WE

11  SIT DOWN AND DECIDED HOW TO DO IT; AND THAT'S WHAT WE DONE.

12  AND WHEN WE DONE THAT, THEN THEY EXECUTED THE DEEDS, THE

13  TRUSTEE GOT THIS PROPERTY AND THEN I GOT THIS PROPERTY HERE AND

14  MY TWO BROTHERS GOT THIS PIECE AND WE RESOLVED IT.  BECAUSE

15  THERE'S, JUST LIKE TODAY, THERE'S MORE ISSUES WITH STUFF UP HERE.

16      Q      RIGHT.

17      A      I MEAN, WE LOOKED AT IT AND --

18      Q      BUT --

19      A      -- TAKE IT HOME AND SAID, "THIS AIN'T [SIC] GOING TO

20  WORK.

21      Q      MR. O'BERRY --

22      A      IT AIN'T [SIC] GOING TO WORK OUT FOR NONE OF US.

23      Q      MR. O'BERRY, THE TRUSTEE'S DEED WAS DONE IN MARCH OF

24  2007, RIGHT BEFORE CLOSING.  ISN'T THAT ACCURATE?

25      A      THAT'S WHENEVER WE STARTED WORKING ON IT, YEAH.

1  Q  OKAY.  BUT YOU OWNED THE LAND BACK IN THE JULY OF '06.

2    THE COURT:  I'M GOING TO STOP THAT EXAM -- WE'VE BEEN

3 THERE.  THAT QUESTION HAS BEEN ASKED AT LEAST THREE TIMES.

4    MR. JONES:  OKAY.

5    THE COURT:  SO, IF YOU HAVE SOMETHING NEW, ASK IT.  I

6 NOTE IT'S 3:26; AND I THINK THE PARTIES PROBABLY WANT

7 CLOSING ARGUMENTS TODAY.  JUST GUESSING.  BUT IF THERE'S

8 SOMETHING YOU WANT TO ASK MR. O'BERRY, DO IT.

9 BY MR. JONES:

10  Q  ONE LAST QUESTION, MR. O'BERRY.  TURNING BACK TO THE

11 MORTGAGE --

12    THE COURT:  IT'S IN THE WHITE BOOK.  IT'S EXHIBIT ONE.

13    MR. JONES:  EXHIBIT ONE.  WHITE BOOK.

14 BY MR. JONES:

15  Q  LEGAL DESCRIPTION ON THE LAST PAGE, PLEASE.  TAKEN AS

16 THIS MORTGAGE LEGAL DESCRIPTION IS WRITTEN, YOU HAVE GIVEN A

17 MORTGAGE ON THE NORTHEAST QUARTER SECTION OF SECTION 24,

18 CORRECT?

19  A  IF THAT'S WHAT IT SAYS.  IF YOU CAN READ THAT.  I CAN'T

20 READ IT.

21  Q  I'M SORRY, SIR.  YOU CAN'T READ THAT?

22  A  NO.  I CAN'T SEE THAT.

23    MR. JONES:  JUDGE, MAY I?

24    THE COURT:  CERTAINLY.  YOU CAN POINT OUT TO HIM WHAT

25 YOU WOULD LIKE.

1    BY MR. JONES:

2        Q       THIS PAGE, MR. O'BERRY, WHERE IT SAYS "THE NORTHEAST

3    QUARTER OF SECTION 24."  SO, WHEN YOU SIGNED THIS MORTGAGE, YOU

4    ENCUMBERED THE NORTHEAST QUARTER OF SECTION 24, CORRECT?

5        A       THAT'S WHAT IT SAYS IN HERE.

6        Q       AND IN FACT, YOU DID NOT OWN THAT PROPERTY AT THE

7    TIME.

8        A       NO.

9        Q       OKAY.

10               MR. JONES:  I DON'T HAVE ANYTHING FURTHER, JUDGE.

11                            REDIRECT EXAMINATION

12    BY MR. WEBBER:

13        Q       MR. O'BERRY, YOU DIDN'T OWN THAT LAND UNTIL THE

14    DEEDS WERE RECORDED, RIGHT?

15        A       THAT'S RIGHT.  THAT'S WHAT I'VE BEEN TRYING TO EXPLAIN.

16        Q       OKAY.  AND THE TRUSTEE'S DEED IS DATED MARCH 28, 2007?

17        A       YEAH.

18        Q       AND DO YOU REMEMBER WHEN THE TWO BROKERS GOT

19    HIRED, WE ONLY HAD SIX MONTHS TO SELL THE PROPERTY?  DO YOU

20    REMEMBER THAT?

21        A       YES.

22        Q       AND DO YOU REMEMBER THAT THERE WAS A PROBLEM

23    ABOUT WHAT PROPERTY COULD BE SOLD?

24        A       YEAH.

25        Q       OKAY.  TELL THE JUDGE WHAT THE PROBLEMS WERE.

1        A        WELL, ACCESS, AND THEN, YOU KNOW, THE TIME FRAME ON

2    IT AND THEN THE MARKET JUST FELL THROUGH.  AND WE WERE TRYING

3    TO MAKE A DEAL WITH SOUTH FLORIDA WATER MANAGEMENT; AND ON

4    THE RIVER RESTORATION PROJECT, WHICH HAD JUST COME OUT.  AND

5    THEY JUST NEEDED MORE TIME TO RESEARCH IT AND, LIKE MR. DUBOIS

6    TOLD ME, HE SAID, YOU KNOW IT TAKES TIME FOR THIS TO GO THROUGH,

7    BUT IT'S ON THE ACQUISITION LIST.  HE SAID IT'S A VERY VALUABLE

8    PIECE OF PROPERTY FOR THE WATERSHED AND, GIVEN ENOUGH TIME, HE

9    SAID WE CAN GET IT DONE.  BUT HE SAID SIX MONTHS, HE SAID WE NEED

10   TO MAKE EVALUATIONS AND --

11       Q        MR. O'BERRY, WEREN'T THE BROKERS TRYING TO SELL YOUR

12   HOMESTEAD?

13       A        YEAH.

14       Q        WASN'T THAT ONE OF THE PROBLEMS?

15       A        IT WAS A PROBLEM.

16       Q        OKAY.  AND ONE OF THE BROKERS WAS TRYING TO SELL THE

17   NORTHEAST QUARTER OF SECTION 23, AS WELL, RIGHT?

18       A        THAT'S RIGHT.

19       Q        AND THOSE WERE BOTH PROBLEMS, WEREN'T THEY?

20       A        THEY WERE.

21       Q        NOW, IN THE PLAN ON PAGE 15, CLASS 4, PAREN 2, THE

22   UNSECURED CREDITORS GET PROPERTY THAT IS NOT ENCUMBERED BY

23   LIENS AND NOT TRANSFERRED UNDER THE PLAN.  AND THAT WAS THE

24   NORTHEAST QUARTER OF SECTION 23, RIGHT?

25       A        YEAH.

1          MR. WEBBER:  NO FURTHER QUESTIONS, JUDGE.

2          THE COURT:  THANK YOU.  ANYTHING FURTHER FOR MR.

3    O'BERRY?  THANK YOU, SIR.  YOU CAN STEP DOWN.  THANK YOU.

4          THE WITNESS:  THANK YOU.

5          THE COURT:  ANY OTHER WITNESSES OR EVIDENCE OF ANY

6    KIND BY ANY PARTY?

7          MR. WEBBER:  NOT BY THE DEBTOR, JUDGE.  WE REST.

8          THE COURT:  ANYTHING ELSE?

9          MR. JONES:  CREDITOR RESTS.

10         THE COURT:  VERY GOOD.  DO THE PARTIES WANT A FEW

11   MINUTES BEFORE CLOSING OR NOT?  IT'S UP TO YOU GUYS.

12         MR. WEBBER:  I'M READY.  I'M READY.

13         THE COURT:  OKAY.  I'M GOOD IF YOU ALL ARE.  MR. KILLIAN.

14              CLOSING ARGUMENT BY MR. KILLIAN

15         MR. KILLIAN:  JUDGE, THIS -- MY -- I HATE TO SAY MY HEAD'S

16   SPINNING WITH ALL THIS GOING THROUGH ALL THESE DOCUMENTS

17   AND DEEDS AND PROPERTY DESCRIPTIONS, AND IT'S ALL

18   CONFUSING AND I CAN SEE WHERE THE CONFUSION BEGINS.  BUT

19   WHAT THIS IS REALLY ALL ABOUT, AND IT'S VERY SIMPLE.  IT'S AN

20   ERROR IN A DESCRIPTION -- IN A LEGAL.

21         AND IT ALL STARTS WITH OUR MACHADO EXHIBIT THREE,

22   WHICH IS THIS SKETCH.  AND MY HEAD WENT ROUND AND AROUND

23   ON IT UNTIL I REALIZED THAT THIS SKETCH, THE NORTH IS TO THE

24   TOP.

25         THE COURT:  YOU HAVE TO TURN IT.

1        MR. KILLIAN:  YOU HAVE TO TURN IT.  AND THE LEGAL

2   DESCRIPTION OF PARCEL "A" AT THE TOP, IT'S THE NORTHWEST

3   QUARTER OF SECTION 23, LESS AND EXCEPT THE NORTH HALF OF

4   THE SOUTH QUARTER AND ALL -- I'M NOT GOING TO GO THROUGH

5   ALL THAT.  BUT IF YOU TURN IT -- TURN IT AND YOU LOOK AT THAT

6   QUARTER SECTION AND IT SAYS "THE NORTHEAST QUARTER OF

7   SECTION 24."  AND THAT ERROR SOMEHOW, WE DON'T KNOW,

8   CARRIED THROUGH TO THIS MORTGAGE.  AND THAT'S WHAT'S

9   BROUGHT US HERE.  THAT'S WHAT'S CAUSED ALL THIS CONFUSION.

10        IF YOU COMPARE THE MORTGAGE, WHICH IS DEBTOR'S ONE,

11   AND THE DEED THAT GAVE 8 MILE RANCH LLC THIS -- THE

12   PROPERTY THAT'S DEBTOR'S TWO.  IN PARCEL "A" IT SAYS, IN

13   DEBTOR'S TWO, IT SAYS "THE SOUTH HALF OF SECTION 13" -- AND

14   I'M GOING TO GO UP TO --

15        THE COURT:  YEAH, GO AHEAD.

16        MR. KILLIAN:  -- TO THE PICTURE.  SOUTH HALF OF SECTION 13

17   IS UP HERE.  THE NORTHEAST QUARTER LESS THE NORTHEAST HALF

18   AND ALL THAT, THAT LITTLE PIECE OF SECTION 23.  SO, THAT'S

19   WHAT THE DEBTOR GOT.

20        AND THEN WE GO TO THE MORTGAGE.  AND ONCE AGAIN, IT

21   GIVES THE SOUTH SECTION OF HALF OF SECTION 13, THIS TOWNSHIP

22   27 SOUTH, 31 EAST.  AND THE FIRST ERROR IN THAT MORTGAGE

23   DESCRIPTION, IT GOES ON TO SAY "OF THE" INSTEAD OF HAVING A

24   SEMICOLON AND SAYING -- GOING ON TO THE NEXT PART.  IT SAYS

25   "OF THE."

1        AND THEN IT SAYS "THE NORTHEAST QUARTER OF SECTION

2    24." GOING BACK TO OUR LITTLE PICTURE.  BUT THEN IT -- OF

3    RANGE 31 EAST.  BUT THEN YOU HAVE LESS AND EXCEPT THE

4    NORTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHWEST

5    QUARTER OF THE NORTHWEST QUARTER OF SECTION 23.  SO, WE

6    HAVE THE EXACT SAME LESS AND EXCEPT THAT WE HAD IN THE

7    DEED GOING -- GOING TO 8 MILE RANCH ROAD.

8        AND THEN IF YOU LOOK AT -- IF YOU ACCEPT THAT, LIKE WE

9    POINTED OUT, THAT HE DIDN'T INTEND TO GIVE THE PORTION OF

10   SECTION 23 TO THE BANK FOR THE MORTGAGE, THAT HE REALLY

11   DID INTEND TO GIVE WHAT WAS IN THE -- IN THAT LEGAL

12   DESCRIPTION.

13       WELL, YOU TAKE THE QUARTER SECTION.  HERE'S THE LINE.

14   YOU GO ONE QUARTER SECTION.  HERE'S THE QUARTER SECTION

15   OF 24.  SO, IF THAT'S WHAT -- IF THE MORTGAGE SAYS WHAT IS

16   INTENDED, HE'S GIVEN -- HERE'S A BIG PART OF THE GROVE HERE,

17   BUT MOST OF THIS QUARTER SECTION IS NOT IN THE FILE.  BUT

18   HERE'S SOME THAT'S ALREADY CLEARLY COVERED IN THE

19   MORTGAGE.

20       SO, THE DESCRIPTION MAKES ABSOLUTELY NO SENSE.  AND

21   WE HAVE THE DOCUMENT IN EVIDENCE THAT SHOWS WHERE THIS

22   MISTAKE ORIGINATED.  AND THAT CARRIED THROUGH.  AND, YOU

23   KNOW, I'M ALWAYS HESITANT TO SUGGEST THAT SOMEBODY HAS

24   COME UP WITH –  MAY HAVE FABRICATED SOMETHING AT SOME

25   POINT, BUT I WOULD SUGGEST THAT, YOU KNOW, THERE HAS

1    NEVER BEEN ANY DOCUMENT INTRODUCED ANYWHERE THAT

2    DISCUSSED THIS QUARTER SECTION SEPARATELY.

3         THE PLAN NEVER SAYS "WELL, WE'RE GOING TO KEEP THIS

4    QUARTER SECTION."  IT'S NEVER BEEN IDENTIFIED AS ANYTHING

5    SEPARATELY.  MR. SHUKER SAID, "WE NEVER DISCUSSED THE" --

6    AND THIS ISN'T A MINOR THING.  THIS IS 160 ACRES LESS A

7    QUARTER ACRE OR SOMETHING IN THE SWAMP THAT BELONGS TO

8    SOMEONE ELSE.

9         THIS WAS NEVER DISCUSSED.  IT WAS NEVER IN THE

10   SCHEDULES, IN THE PLANS, THE DISCLOSURE STATEMENT.  THERE'S

11   NEVER BEEN ANY IDENTIFICATION OF A 160-ACRE PARCEL THAT

12   THE DEBTOR'S GOING TO KEEP AND DO ANYTHING WITH.  AND I

13   DON'T KNOW IF MR. O'BERRY, YOU KNOW, HAD IT IN HIS MIND ALL

14   ALONG.  I'M -- YOU KNOW, I HATE TO SUGGEST THAT SOMEBODY'S

15   TRYING TO HIDE THE BALL.  BUT WHETHER WHEN HE SAID IN THE

16   MEDIATION, "WELL, IT'S JUST THE PROPERTY SUBJECT TO THE

17   MORTGAGE," THAT HE'S THINKING -- AND NOBODY'S TALKING

18   ABOUT, "WELL, THERE'S 160 ACRES."  THERE'S NOT.

19        I DON'T KNOW IF THAT'S WHAT WAS IN HIS MIND OR IF HE

20   DIDN'T REALIZE IT.  MY -- WHAT I SUSPECT, MAYBE, IS THAT ONCE

21   THE DEEDS WERE DONE AND ONCE THEY REALIZED THEY WENT BY

22   AND SAID, "OKAY, LET'S CHECK OUT THE DESCRIPTION VERSUS

23   WHAT WE'VE GOT," AND THEY GOT -- SOMEBODY GOT TO THIS

24   SECTION 24 MISTAKE IN THE MORTGAGE AND SAID, "WOW.  THIS

25   HUNDRED AND -- THIS IS THE WRONG PIECE OF PROPERTY.  WE GET

1       TO KEEP THAT."

2               BUT THE IDEA AND THE PLAN AND MR. SHUKER MADE IT

3       CLEAR, MR. MACHADO MADE IT CLEAR, EVERYBODY'S MADE IT

4       CLEAR THAT IF THE PROPERTY DOESN'T SELL -- AND MACHADOS --

5       KEEP IN MIND THE MACHADOS THREW IN SOME ADDITIONAL

6       PROPERTY TO SELL TO GET THAT THREE -- TO THAT THREE

7       MILLION.  AND IF IT WAS ABOVE THE THREE MILLION, THE

8       DEBTORS GOT TO SPLIT.  THERE WAS NEVER ANY CONSIDERATION

9       OF THE DEBTORS KEEPING 160 ACRES WHILE MACHADOS PUT SOME

10      IN.  I MEAN, THE -- IT DEFIES ALL LOGIC.

11              THEN WE GET BACK TO JUST THE SIMPLE DEFINITIONS OF THE

12      PLAN.  REAL PROPERTY.  ALL PROPERTY AT 5800 [SIC] 8 MILE RANCH

13      ROAD.  NOW, WE'RE -- MR. O'BERRY'S TALKED ABOUT HIS

14      HOMESTEAD, BUT WE -- WE'VE NEVER TRIED TO GET HIS

15      HOMESTEAD.  THAT'S NEVER BEEN PART OF THIS.  BUT THE PLAN

16      SAYS THEY'LL CONVEY US THE REAL PROPERTY.  REAL PROPERTY

17      IS DEFINED AS ALL THE DEBTOR'S PROPERTY AT 5800 [SIC] 8 MILE

18      RANCH ROAD.

19              IN THE ORDER CONFIRMING THE PLAN, THE COURT ORDERED

20      THAT THE PROPERTY BE TURNED OVER.  AND THE COURT ALSO

21      RETAINED JURISDICTION TO CORRECT ANY SCRIVENER'S ERROR IN

22      THE MORTGAGE.  AND THERE'S ONE DIGIT THAT SHOULD BE A

23      THREE INSTEAD OF A FOUR.  AND THE COURT CAN FIND THAT AND

24      SAY "THAT'S WHAT THE DESCRIPTION IS.  CONVEY THE PROPERTY

25      OF ALL OF THE REAL PROPERTY.  YOU NEVER SAID, YOU NEVER

1    IDENTIFIED 160 ACRES THAT YOU WERE GOING TO KEEP.  AND IF

2    YOU INTENDED TO, IF YOU WERE HIDING THE BALL" -- I DON'T

3    WANT TO SUGGEST THAT THERE'S BEEN THAT, BUT THE COURT

4    COULD FIND THAT IF THE COURT DESIRES.

5        BUT I THINK WE'RE ENTITLED TO THE ENTRY OF AN ORDER

6    DIRECTING THE DEBTORS TO COMPLY WITH THE PLAN AND TO

7    CONVEY ALL OF THE PROPERTY.

8        THE COURT:  WHAT -- HAVE YOU HAD A CHANCE TO LOOK AT

9    DEBTOR'S EXHIBIT 17?  I DON'T KNOW IF YOU HAVE A COPY OF

10    THAT OR NOT.

11        MR. KILLIAN:  I'M NOT SURE, YOUR HONOR.

12        THE COURT:  THAT'S THE DEED -- THAT'S THE LEGAL

13    DESCRIPTION ATTACHED TO THE QUIT CLAIM OR WARRANTY.  I

14    DON'T KNOW WHAT VERSION MR. O'BERRY RECEIVED FROM YOU

15    GUYS.

16        MR. KILLIAN:  NO, THE -- FROM --

17        THE COURT:  BUT HE TOOK IT TO THE OSCEOLA COUNTY

18    PROPERTY APPRAISER'S OFFICE AND THERE'S A LOT OF

19    INTERLINEATIONS ON THERE.

20        MR. KILLIAN:  I HAVEN'T SEEN THAT, YOUR HONOR.

21        THE COURT:  OKAY.  NOT A PROBLEM.  NOT A PROBLEM.

22    THANK YOU.  THANK YOU.  MR. WEBBER.

23        CLOSING ARGUMENT BY MR. WEBBER

24        MR. WEBBER:  JUDGE, THERE IS AN ERROR IN PARCEL ONE ON

25    THE MORTGAGE.  FIRST OF ALL, IT GOES PARCEL ONE, PARCEL ONE.

1      KAREN GIEL TESTIFIED THAT THE BANK CAME UP WITH THAT

2      LEGAL.  NOT JOE O'BERRY.  THAT MORTGAGE WAS ASSIGNED TO

3      MACHADO.  SO, IF CENTER STATE BANK MADE THE ERROR, THAT

4      GOES TO MACHADO ON THE ASSIGNMENT.  AND I'M NOT GOING TO

5      GO THROUGH EACH PIECE OF EVIDENCE, JUDGE, SHOWING THE

6      MORTGAGE BEING ASSIGNED AND ALL THAT.  THE COURT KNOWS

7      THAT.

8              THERE IS NO NORTHEAST QUARTER OF SECTION 24.  BUT YOU

9      ALSO HEARD MR. O'BERRY'S INTENT WAS AND DISCUSSION WITH

10     KAREN GIEL -- NOW, YOU MAY REMEMBER HER TESTIMONY:  THIS

11     LOAN WAS NINE YEARS AGO.  I CAN'T REMEMBER WHAT LAND IS

12     SUPPOSED TO BE COVERED.

13             YOU KNOW, SHE'S A BUSY BANKER.  BUT IN THEIR

14     REFORMATION COUNT, THEY SAID THERE WAS MUTUAL MISTAKE

15     AND THAT THE NORTHEAST QUARTER OF SECTION 23 MUST BE

16     INCLUDED.  WELL, IT'S NOT MR. O'BERRY'S UNDERSTANDING AT

17     ALL.  SO, IT'S NOT MUTUAL.

18             AND, JUDGE, WHAT'S INTERESTING IS IF YOU LOOK AT THE

19     CENTER STATE BANK APPRAISAL, MACHADO TWO, YOU GOT

20     SECTION 13, SECTION 19, AND SECTION 24.  AND THAT COMPLIES

21     WITH JOE O'BERRY'S TESTIMONY ABOUT THE LAND THAT HE WAS

22     GOING TO GET.  AND IT DOESN'T INCLUDE THE NORTHEAST

23     QUARTER OF SECTION 23.  AND THAT IS VERY IMPORTANT,

24     BECAUSE THAT'S CENTER STATE BANK'S APPRAISAL AND THAT

25     VERIFIES WHAT JOE O'BERRY TESTIFIED TO.

1    JUDGE, WE'RE TALKING ABOUT THE NORTHEAST QUARTER

2    OF SECTION 23.  JUST FOR THE RECORD, IT'S PARCEL ID NUMBER 23-

3    27-31-0000-0010-0000.

4    THE LAST LAND, WE HEARD, IS THAT LITTLE SWAMP PIECE

5    THAT WAS THERE WAY BEFORE THE MORTGAGE CAME INTO PLACE.

6    YOU KNOW, JUDGE, THEY ARGUED MUTUAL MISTAKE; AND

7    THEN, IN THESE PLEADINGS AND THIS MOTION TO COMPEL, THEY

8    ARGUED CONTRACT CONSTRUCTION.  SO, THEY'VE SAID THAT

9    PARAGRAPH 10 OF THE CONFIRMATION ORDER PRESERVED THE

10    REFORMATION OF THE MORTGAGE, WHICH REQUIRES A MUTUAL

11    MISTAKE.  NOW THEY'RE SAYING, "OH, NO, YOU CAN JUST TAKE

12    CONTRACT LANGUAGE AND MAKE THAT FOUR A THREE."  NO.

13    THEY HAVEN'T EVEN GIVEN ANY LAW THAT THEY COULD DO THAT.

14    MACHADO FILED AN OBJECTION TO THE DEBTOR'S PLAN,

15    JUDGE.  IT'S ECF NUMBER 92 AND IT'S IN EVIDENCE.  IT'S DEBTOR'S

16    EXHIBIT NUMBER 18.  IT WAS ACKNOWLEDGED IN THAT OBJECTION

17    THAT THE DEBTOR WOULD BE KEEPING REAL PROPERTY FOR ITS

18    USE AND BENEFIT.  AND ABSOLUTE PRIORITY RULE OBJECTION WAS

19    MADE BECAUSE THE DEBTOR WOULD RETAIN THE PROPERTY.

20    MACHADO OBJECTED TO THE EASEMENT OVER THE

21    MEDIATED REAL PROPERTY TO BE CONVEYED TO MACHADO UNDER

22    THE PLAN OF LIQUIDATION, BECAUSE THE DEBTOR WANTED EASIER

23    ACCESS TO THE NORTHWEST QUARTER OF SECTION 23.  JUDGE, AS

24    YOU HAVE SEEN, THE HOMESTEAD WAS OVER HERE ON THE

25    MACHADO SURVEY.  THIS PROPERTY IS TO BE CONVEYED TO

1    MACHADO.  AN EASEMENT WAS REQUESTED TO GO ACROSS THIS

2    PIECE TO THE NORTHEAST QUARTER OF SECTION 23.  NOW THE

3    DEBTOR HAS TO COME IN THIS WAY.  AND FOR MACHADO TO SAY

4    THAT THAT WAS NEVER DISCUSSED, WHEN IT IS IN THE

5    TRANSCRIPTS, DEFIES LOGIC.

6         ALSO IN THEIR MEMORANDUMS THAT THEY FILED WITH THIS

7    COURT, THEY SAY THAT THE NORTHEAST QUARTER OF SECTION 23

8    IS THE DEBTOR'S HOMESTEAD.  THAT'S NOT RIGHT, EITHER.  WE

9    KNOW THAT FROM THE TESTIMONY TODAY.

10        A CLAIM WAS MADE ON MARCH 24, 2014, TO STEWART TITLE

11   ON BEHALF OF THE MACHADO FAMILY LIMITED PARTNERSHIP NO. 1

12   BY CENTER STATE BANK; AND THEY'RE THE ONES THAT

13   PURCHASED THE TITLE INSURANCE, JUDGE.  THAT'S DEBTOR'S

14   EXHIBIT NUMBER 14.  BECAUSE THE LEGAL DESCRIPTION WAS "NOT

15   CLOSED IN."

16        THE DEBTOR CONTENDS THAT THE LEGAL DESCRIPTION IS A

17   FAILURE TO CLOSE IN THE SURVEY OF CERTAIN PARCELS, JUDGE,

18   AND NOT THE FAILURE OR THE OMISSION OF THE NORTHEAST

19   QUARTER OF SECTION 23.

20        PARAGRAPH 10 OF THE CONFIRMATION ORDER REFERS TO

21   THE ISSUE OF THE LEGAL DESCRIPTION NOT BEING CLOSED IN.

22   THAT WAS THE REPRESENTATION MADE TO ME.  I SO TESTIFIED.

23   AND BROAD AND CASSEL SAID THAT A SURVEY WAS NEEDED TO

24   CORRECT THE PROBLEMS.  IF YOU LOOK AT EXHIBIT NUMBER 19,

25   WHICH WAS ADMITTED TODAY, IT WAS THE POST-CONFIRMATION

1    STATUS CONFERENCE, JUDGE.  ON PAGE FOUR --

2         THE COURT:  DO WE HAVE A COPY OF IT?

3         THE CLERK:  YES, MA'AM.

4         THE COURT:  DID YOU PUT IT IN HERE?  GOT IT.

5         MR. WEBBER:  I HAD GIVEN AN EXTRA COPY, JUDGE.

6         THE COURT:  I HAVE IT.

7         MR. WEBBER:  OKAY.  JUST -- ON PAGE FOUR IT SAYS "THE

8    ORDER" -- EXCUSE ME -- LINE 7.  "THE ORDER PROVIDES AS PART OF

9    THE BUSINESS DIVORCE THAT MY CLIENTS GET CERTAIN PORTIONS

10   OF THE DEBTOR'S PROPERTY."  NOT ALL THE DEBTOR'S PROPERTY.

11   THEN YOU GO DOWN TO LINE 10:  "THE COURT RETAINS

12   JURISDICTION TO DEAL WITH THE TRANSFER AND ALSO TO DEAL

13   WITH THE DISCLOSED SCRIVENER'S ERROR IN THE LEGAL

14   DESCRIPTION."  LINE 18:  "THE LEGAL HAS BEEN VETTED AND

15   SEARCHED AND IT ACTUALLY FORMS A U."  ON LINE 20:  "THIS ONE

16   NEVER CONNECTS."

17        LINE 23 TO 25:  "SO WE BOTH HAVE PROBLEMS.  WE – THEY

18   CANNOT CONVEY THE PROPERTY LATER TO SOMEONE ELSE AND

19   WE CANNOT EITHER.  THE SURVEY IS WRONG."

20        AND THEN ON THE TOP OF FIVE, STARTING WITH LINE 1 IT

21   SAYS:  "FORTUNATELY, THE DEBTOR HAS THE TITLE POLICY.  WE

22   DON'T."  WELL, THE DEBTOR DOESN'T HAVE A TITLE POLICY.

23   THAT'S A MISSTATEMENT.  CENTER STATE BANK BOUGHT THE

24   TITLE POLICY; AND THAT'S BEEN ASSIGNED TO MACHADO.

25        SO, IT'S GOING TO TAKE A WHILE.  THE WHOLE PROPERTY IS

1    GOING TO HAVE TO BE RESURVEYED AND THE ISSUE FIXED; AND

2    THAT'S ALREADY IN PROCESS.

3         LET'S SEE.  IF YOU GO TO PAGE 6, LINE 6:  "WE NEEDED TO DO

4    A DEED.  WE CAN'T DO THE DEED, OKAY?  AND THAT'S REALLY --

5    THERE'S NO DISTRIBUTIONS TO UNSECURED CREDITORS IN THIS

6    CASE."  AND I THINK THAT'S ME TALKING; AND THAT WAS TO DATE.

7    AND TO DATE TODAY, THERE HASN'T BEEN.  BUT THE DEBTOR

8    INTENDS TO PAY UNSECURED CREDITORS.  THERE'S ONLY THREE,

9    JUDGE.

10        SO, WE GOT -- AND THEN IF YOU GO DOWN FURTHER WE GOT

11   TITLE -- YEAH, LINE 14.  "WE HAVE THE 160 OR THE 180 TO THE

12   WEST."  RIGHT HERE.  HUNDRED AND SIXTY AND HUNDRED AND

13   EIGHTY TO THE WEST.  THAT'S DISCLOSED.  THAT'S TALKED

14   ABOUT.

15        AND EVEN THE WAY THE SURVEY HAS COME OUT, IT'S A LOT

16   OF PROPERTY.  I MEAN, IT'S LIKE 1,800 ACRES -- SEVENTEEN

17   SIXTEEN SEVEN HUNDRED ARE GOING TO THEM AND 160 ARE

18   STAYING WITH THE DEBTOR.  AND WE NEED TO KNOW WHAT IT IS;

19   AND IT'S A BIG PROBLEM.

20        THE COURT:  WHY DIDN'T YOU JUST SAY IT PLAINLY,

21   THOUGH?  YOU HAD A MEDIATED SETTLEMENT AGREEMENT; AND

22   RATHER THAN SAYING "WE'RE GOING TO KEEP 160 ACRES."  THE

23   MORTGAGE IS SCREWED UP.  WE ALL REALIZE IT'S SCREWED UP.

24        MR. WEBBER:  WELL, ACTUALLY --

25        THE COURT:  WHY DIDN'T YOU JUST SAY, "I'M GOING TO KEEP

1    160 ACRES"?

2    MR. WEBBER:  WELL, TO ANSWER THAT QUESTION, WE DIDN'T

3    HAVE THE LEGAL OR A SURVEY AT THE MEDIATION, OKAY?  AND

4    BOTH OF THOSE HAD BEEN STATED IN THE TRANSCRIPTS, AS THE

5    JUDGE HAS READ THEM AND YOU'VE SEEN THAT.  AND

6    ENCUMBERED BY THE MORTGAGE -- MR. SHUKER SAID HE DIDN'T

7    REMEMBER WHY THAT WAS PUT IN THERE.  WELL, IT WAS PUT IN

8    THERE BY THE DEBTOR, BECAUSE IT DIDN'T COVER THE 161 ACRES.

9    THE COURT:  BECAUSE YOU KNEW --

10   MR. WEBBER:  IT WAS DONE LATE IN THE DAY.

11   THE COURT:  -- THE ERROR AROSE IN 2007.

12   MR. WEBBER:  NO, I DID NOT.  I DID NOT, AT THE MEDIATED

13   SETTLEMENT AGREEMENT, KNOW THAT --

14   THE COURT:  HOW DID MR. O'BERRY KNOW THAT, THEN?

15   MR. WEBBER:  MR. O'BERRY KNEW THAT THE 161 ACRES WAS

16   NEVER COVERED, BECAUSE THAT WAS HIS INTENT WITH CENTER

17   STATE BANK.  I DIDN'T KNOW IT SHOULD HAVE BEEN A THREE OR

18   FOUR AT THE MEDIATED SETTLEMENT AGREEMENT, JUDGE.  AND

19   WE DIDN'T HAVE THAT LEGAL TO ATTACH; SO WE ATTACHED ALL

20   THE PARCELS, THOSE MIDDLE PARCELS IN THERE; AND THEN WE

21   SAID "ENCUMBERED BY THE MORTGAGE" BECAUSE WE DIDN'T

22   HAVE THAT TO ATTACH AT EIGHT O'CLOCK AT NIGHT.

23   IT WASN'T HIDE THE BALL.  IT WASN'T FABRICATION.  I

24   BRISTLE AT THE FACT THAT THEY'RE ACCUSING ME OF PLAYING

25   GAMES WITH DEFINITIONS IN THE PLAN.

1       THE COURT:  BUT THERE'S A BIG DIFFERENCE BETWEEN

2   SAYING "I DON'T KNOW WHERE THE PROBLEM CAME UP, BUT

3   WE'RE KEEPING THE 160 ACRES" AND JUST SAYING, "WELL, WE'RE

4   GOING TO STAY ENCUMBERED BY THE MORTGAGE AND WE'RE

5   GOING TO ATTACH ALL THESE SEPARATE LEGALS WITH THE

6   PARCEL NUMBERS AND SUCH ON THEM AND IF THERE IS

7   TRANSFERS."

8       MR. WEBBER:  WELL, THOSE WERE SEPARATE.  WE DIDN'T

9   HAVE THE MORTGAGE LEGALS TO ATTACH TO THE MEDIATED

10  SETTLEMENT AGREEMENT.  SO, WE SAID ENCUMBERED BY THE

11  MORTGAGE.  JUDGE, THAT'S WHAT -- IT WAS EIGHT O'CLOCK AT

12  NIGHT.  THAT WAS ONE OF THE LAST TERMS NEGOTIATED.  YOU

13  HEARD MR. LUIS MACHADO TESTIFY HE REMEMBERS THAT.  YOU

14  HEARD MR. SHUKER SAY "I CAN'T REMEMBER WHY."

15      SO, THAT'S WHY THAT -- AND IT WAS LATE AND WE DIDN'T

16  HAVE THAT MORTGAGE WITH US TO ATTACH THE LEGAL.

17      THE COURT:  BUT THEN YOU DRAFTED THE PLAN --

18      MR. WEBBER:  YEAH.  AND I PUT THE MEDIATED SETTLEMENT

19  REAL PROPERTY, WHICH IS THE ENCUMBERED REAL PROPERTY.

20  JUDGE, I DIDN'T EVEN KNOW UNTIL THE SURVEY CAME OUT THAT

21  THAT FOUR -- THAT THREE OR FOUR ISSUE.

22      THE COURT:  IN THE SKETCH?

23      MR. WEBBER:  YEAH.  I -- AND I SAW THE SKETCH AT KAREN

24  GIEL'S DEPOSITION A MONTH AGO OR TWO MONTHS AGO.  JUDGE, I

25  HAD NO IDEA.  AND TO SAY THAT WE DIDN'T EVER TALK ABOUT

1    THE 160 ACRES TO THE WEST IS NOT TRUE.  THAT IS NOT TRUE.  AND

2    BROAD AND CASSEL KNEW IT.  AND THOSE ARE MACHADO'S

3    LAWYERS.

4        IF YOU LOOK, JUDGE, IN THE PLAN, YOU'LL SEE THAT

5    MACHADOS JOINED IN THE PLAN.  I MEAN, IF YOU LOOK AT THAT --

6    THE INTRO PARAGRAPH.  THEY HELPED ME DRAFT THE PLAN.  SO,

7    THE MEDIATED REAL PROPERTY IN THERE WAS THE PROPERTY

8    ENCUMBERED BY THE MORTGAGE.  WHEN THEY SAY LEGAL

9    DESCRIPTIONS TO ME, THEY MEANT NOT BEING CLOSED IN; NOT

10   THAT THE FOUR SHOULD HAVE BEEN A THREE.  I KNEW NONE OF

11   THAT IN THE COURSE OF THIS CASE UNTIL RECENTLY; AND I SO

12   TESTIFIED THAT I REALIZED WHAT THIS IS ARGUING ABOUT A

13   THREE.  THEY'RE SAYING A FOUR SHOULD BE A THREE.  I -- WE

14   DIDN'T HAVE A SURVEY.

15       AND WHEN YOU LOOK -- THERE IS A TYPO IN PARCEL ONE ON

16   THE MORTGAGE.  JUDGE, WE DON'T DISPUTE THAT AT ALL.  BUT

17   THAT WASN'T OUR MISTAKE.  AND SO, I WASN'T PLAYING ANY

18   GAMES WITH THE DEFINITIONS.  WE THOUGHT THAT IT WAS CLEAR,

19   ESPECIALLY IN THE TREATMENT OF THE UNSECURED CREDITORS

20   THAT IT'S LAND NOT BEING TRANSFERRED.  I MEAN, AND THAT'S

21   HOW THEY -- WE WERE GOING TO PAY THEM WITH THE EQUIPMENT.

22   YOU RULED AGAINST US.  SO WE COULDN'T DO THAT.  COULDN'T --

23   SO, WE HAD TO DO SOMETHING ELSE.  AND THAT'S WHAT THE

24   DEBTOR HAS TESTIFIED WE'RE GOING TO DO.

25       SO, WE BELIEVE THAT IF YOU LOOK AT THE TRANSCRIPTS,

1    JUDGE -- AND I CAN GO THROUGH AND CITE YOU SOME MORE

2    LANGUAGE.  ON MAY 13, 2013, AND SEPTEMBER 11TH, MY BIRTHDAY,

3    2013, DEBTOR'S 9 AND 10.  THAT ACREAGE IS BEING DISCUSSED.

4    THE EASEMENT ACROSS IT TO THAT LAND IS BEING DISCUSSED.

5    IT'S NOT BEING HIDDEN.  THERE'S NO HIDING THE BALL.  THERE'S

6    NO FABRICATION.

7         THE COURT:  OKAY.

8         MR. WEBBER:  NONE.  AND THEY'RE SUPPOSED TO GET,

9    JUDGE, I MEAN, THIS IS JUST PARCEL ONE HERE.

10        THE COURT:  RIGHT.

11        MR. WEBBER:  THAT'S PARCEL ONE.  AND THEN IF YOU GO TO

12   THE SURVEY THAT MACHADO DID, AND IT'S DEBTOR'S MAYBE 16.

13   YEAH.  AND IF YOU GO TO 16, MACHADO'S 16, YOU'LL SEE PARCEL

14   TWO --

15        THE COURT:  DEBTOR'S 16.

16        MR. WEBBER:  YEAH, I'M SORRY.  DEBTOR'S 16, BUT IT'S THE

17   MACHADO'S SURVEY.  I MISSPOKE, JUDGE.  YOU'LL SEE PARCEL

18   TWO, WHICH IS OVER BY THE HOMESTEAD.  YOU'LL SEE THAT'S

19   THE NORTH HALF OF SECTION 20.  YOU'LL SEE THAT'S THE

20   SOUTHWEST QUARTER OF SECTION 16, AND THE NORTHWEST OR

21   NORTHEAST SECTION OF 21.  NONE OF THOSE WERE ON THE

22   SKETCH, EITHER, THAT WAS IN CENTER STATE BANK'S FILE, BUT

23   WE DEFINITELY AGREE THAT ALL OF THAT PARCEL TWO GOES TO

24   MACHADO, AS WELL.

25        NOW, OF COURSE, THE PROBLEM IN THIS CASE IS PARCEL

1    ONE, NOT PARCEL TWO.  AND WE HAVE NO PROBLEM, I DON'T

2    THINK, WITH PARCEL TWO, UNLESS THEY SAY THAT THERE WAS

3    SOMETHING WRONG WITH THAT LEGAL.

4         THEY WITHDREW THEIR OBJECTION, CHANGED THEIR "NO"

5    VOTES TO "YES" VOTES AND THEY GET ABOUT 1,100 ACRES OF

6    LAND FOR THE $3 MILLION.  AND THE APPRAISALS YOU HAVE SHOW

7    IT'S WORTH ABOUT 12 MILLION -- SO, FOR A THREE MILLION-

8    DOLLAR DEBT.  AND WE AGREE.  THAT'S IN FULL SATISFACTION OF

9    THEIR CLAIMS.  THAT'S A LOT OF LAND.  BUT NOT THE NORTHEAST

10   QUARTER OF SECTION 23.  LET'S SEE.

11        WE ALSO THINK – I MEAN, AND THE COURT MAY DISAGREE.  I

12   MEAN, YOU'RE GOING TO HAVE TO GET TO THE INTENT, I THINK,

13   PROBABLY, OF WHAT WAS TO BE INCLUDED, WHAT WAS NOT, WHO

14   MADE THE ERROR.  IF IT WAS CENTER STATE BANK, THEN IT

15   TRAVELS TO MACHADO ON THE ASSIGNMENT.  THE DEBTOR DIDN'T

16   DRAFT IT.  JOE O'BERRY TESTIFIED THAT THEY DIDN'T DO THE

17   LEGAL.

18        YOU MAY NOT AGREE WITH CLAIM PRECLUSION UNDER

19   JUSTICE OAKS, BUT I THINK THAT YOU MAY HAVE TO GET TO THE

20   INTENT OF WHAT WAS TO BE COVERED AND WHO DOES THE

21   MISTAKE GO AGAINST.  AND THEN, IF YOU DO, THEN YOU WILL

22   AGREE THAT CLAIM PRECLUSION DOESN'T APPLY.

23        I THINK PARAGRAPH 10 IT'S CLEAR.  IT WASN'T TO

24   RESURRECT ONE OF THE FIVE LAWSUITS THAT WAS SETTLED IN

25   THE MEDIATED SETTLEMENT AGREEMENT.  PARAGRAPH 10 WAS TO

1    GET A SURVEY FOR A LEGAL, BECAUSE -- I MEAN, AND YOU SAW

2    THE TITLE CLAIM.  THAT BOLSTERS ALL OF THOSE THINGS THAT

3    THAT'S WHERE THE PROBLEM WAS AND THAT WAS WHAT THE

4    PROBLEM WE WERE DISCUSSING WAS.  LET'S SEE.

5         FINALLY, JUDGE, I THINK IT COMES DOWN TO JOE O'BERRY'S

6    TESTIMONY WITH KAREN GIEL.  WAS THE NORTHEAST QUARTER OF

7    SECTION 23 TO BE INCLUDED IN PARCEL ONE OR NOT?  AND THE

8    ANSWER IS "NO."  WE ARE READY, WILLING AND ABLE TO DO --

9    AND, JUDGE, THE REASON I PUT DEBTOR'S EXHIBIT 17 IN WAS TO

10   SHOW YOU ALL THE PROBLEMS IN THE LEGALS THAT THEY GAVE

11   US.  AND MR. O'BERRY SPENT FOUR HOURS IN OSCEOLA COUNTY.

12   WE'D BE HAPPY TO MAKE THOSE CORRECTIONS AND EXECUTE THE

13   DEED AND GIVE THEM THE 1,100 ACRES.  BE HAPPY TO DO IT.  AND

14   WE'LL FIX THEM.  BUT THE WAY IT'S DRAFTED AND PRESENTED TO

15   US, IT COULD NOT BE DELIVERED.  IT WOULD JUST CREATE MORE

16   PROBLEMS FOR MACHADO.  THEY'RE NEVER GOING TO BE ABLE TO

17   TAKE CARE OF IT IN THE FUTURE, JUDGE.

18        SO, WE ASK THAT THE MOTION TO COMPEL BE DENIED; THAT

19   WE TRANSFER ALL THE LAND, EXCEPT FOR THE NORTHEAST

20   QUARTER OF SECTION 23.  I THINK, AS MR. SHUKER STATED, THAT

21   ENDS UP BEING A SALE UNDER THE MEDIATED SETTLEMENT

22   AGREEMENT, IF YOU LOOK AT THOSE TWO PARAGRAPHS.

23        AND I'LL TELL YOU, JUDGE, WE DIDN'T THINK A LOT ABOUT

24   THE SECONDARY ASPECT.  WE WANTED IT TO SELL.  WE FIGURED IT

25   WOULD SELL.  AND IT DIDN'T SELL.  PROBABLY WE DIDN'T HAVE

1    ENOUGH TIME.  THE BUBBLE COLLAPSED.  I MEAN, THERE'S A LOT

2    OF TIME, OF GOVERNMENT, ET CETERA.  BUT WE THINK BOTH

3    FLORIDA LITIGATIONS NOW NEED TO BE DISMISSED WITH

4    PREJUDICE AFTER THE DEED IS EXECUTED.  ANY FINAL JUDGMENT

5    SATISFIED AND GENERAL LEASE IS EXECUTED, BECAUSE THAT'S

6    WHAT THE MEDIATED SETTLEMENT AGREEMENT SAYS.

7        THE COURT:  THANK YOU.  LET ME ASK YOUR THOUGHTS, MR.

8    -- THE ISSUE AS TO THE INCLUSION OF THE NORTHEAST CORNER OF

9    SECTION 23 IS ONE ISSUE; AND I UNDERSTAND THE PRIMARY ISSUE.

10    HOWEVER, I ALSO KNOW THAT THIS PARCELS, OR THESE PARCELS

11    OF PROPERTY HAVE BEEN LITIGATED BY THESE PARTIES FOR

12    YEARS IN ALL KINDS OF PLACES.  AND ONE OF THE THINGS I'M NOT

13    GOING TO DO IS IMPOSE ANY OTHER COURT TAKING ADDITIONAL

14    TIME TO TRY TO GET THIS RESOLVED.

15        I DON'T KNOW IF EXHIBIT 17 SUBMITTED BY MR. O'BERRY

16    AND YOU, MR. WEBBER, IF ALL OF THOSE CORRECTIONS ARE

17    CORRECT OR NOT.  SO, HOW WOULD I GO ABOUT TRYING TO FIGURE

18    THAT OUT?

19        MR. WEBBER:  YOU WOULD HAVE TO TAKE THAT DOWN TO

20    THE OSCEOLA COUNTY  LAND --

21        THE COURT:  YOU GOT TO HAVE A BETTER IDEA THAN THAT.

22    HOW WOULD I, AS A JUDGE, HAVE TO FIGURE THAT OUT?

23        MR. WEBBER:  MAYBE GET A TITLE COMPANY TO CERTIFY

24    THAT THE LEGALS ARE ACCURATE AND WRITE A POLICY ON IT.

25        THE COURT:  OKAY.

1          MR. WEBBER:  I MEAN, I'M THINKING ON MY FEET, JUDGE.  I --

2          THE COURT:  OKAY.  AND ANY RESPONSE BACK TO -- THE ONE

3     THING I AM GOING TO DO, I'M GOING TO TAKE THIS UNDER

4     ADVISEMENT, CLEARLY.  AND I'M GOING TO LOOK THROUGH

5     EVERYTHING AND THINK ABOUT IT.  AND I DON'T, QUITE

6     HONESTLY, KNOW WHAT I'LL DO.  BUT OBVIOUSLY, THE PARCEL OF

7     SECTION 23 IS THE PRIMARY ISSUE.  BUT THERE'S ALSO THE

8     SECONDARY ISSUE THAT WE'VE BEEN ENGAGED HERE FOR ABOUT

9     THREE YEARS; AND IT'S REALLY TIME FOR US TO BE DONE ONE

10    WAY OR THE OTHER.  SO, TOTALLY, TOTALLY DONE ONE WAY OR

11    THE OTHER.

12         SO, I WOULD WELCOME, MR. KILLIAN, YOUR THOUGHTS, TOO.

13         MR. KILLIAN:  JUDGE, MY THOUGHT IS -- AND MY PARTNER

14    HERE CAN CORRECT ME IF I -- ONCE THE -- I'LL TELL YOU, ONCE THE

15    ISSUE OF SECTION OF 23 IS RESOLVED, I DON'T THINK WE HAVE ANY

16    PROBLEM, YOU KNOW, WORKING OUT -- WORKING OUT THE DEED.  I

17    MEAN, WHAT WE SUBMITTED, THAT WAS A DRAFT.  THAT WAS A

18    FIRST EFFORT.  AND WE CLEARLY, YOU KNOW, THIS IS THE FIRST

19    TIME I'VE HEARD ABOUT THEIR HOMESTEAD BEING PART OF THAT -

20    - PART OF THAT DEED.  BUT WE CLEARLY DON'T WANT THE

21    HOMESTEAD.

22         BUT ONE THING I THINK I RECOLLECT THAT MR. GIEL FROM

23    THE BANK TESTIFIED THAT SHE USED THIS SKETCH THAT HAS THE

24    24 INSTEAD OF THE 23 IN MAKING THE LOAN.

25         THE COURT:  RIGHT.  YES.  AND MR. WEBBER?

1       MR. WEBBER:  MR. O'BERRY TESTIFIED THAT THAT WAS THE

2   PROPERTY HE WAS GOING TO INHERIT IN THE TRUSTEE'S DEED AND

3   THAT'S WHY I TIED THE TRUSTEE'S DEED TO THAT.  SHE ALSO SAID

4   SHE DIDN'T RELY ON THAT, WHEN SHE WAS PRESSED.

5       THE COURT:  AND I'VE GOT TO GO BACK AND LOOK AT

6   EVERYTHING AND THINK IT OVER.

7       MR. KILLIAN:  I THINK YOU KNOW EVERYTHING --

8       THE COURT:  NO, I --

9       MR. KILLIAN:  -- YOU KNOW MORE ABOUT THIS THAN WE DO.

10      THE COURT:  WELL, I -- NO.  I AM ABSOLUTELY CERTAIN I DO

11  NOT KNOW AS MUCH AS YOU GUYS KNOW.  BUT I WILL LOOK IT

12  OVER AND I WILL RENDER AN OPINION ON THE MOTION AS SOON AS

13  I CAN GET SOME TIME TO DO THAT.

14      NOT TOO FAR BEHINDER THINGS, BUT IF THERE'S ANY

15  URGENCY OR ANYTHING ANYBODY NEEDS ME TO KNOW, LET ME

16  KNOW, BUT --

17      MR. KILLIAN:  YOUR HONOR, WHILE WE'RE -- WHILE YOU'RE

18  DECIDING ON THE 23 -- SECTION 23 LAND, CAN WE GET AN

19  AGREEMENT THAT WE CAN -- WE CAN WORK ON IRONING OUT THE

20  ISSUES WITH THE DEED ON EVERYTHING BUT -- BUT WE SUBMIT IF

21  THAT 160 ACRES IS WHAT'S REALLY IN -- IS WHAT REALLY THE

22  DISPUTE IS, WE'VE STILL GONE 16 MONTHS WITHOUT ANY TENDER

23  OF THE REMAINING 1,100 ACRES, WHICH IS -- CAN WE GET THAT

24  PROPERTY WITHOUT ANY FURTHER DELAY; AND THEN WORRY

25  ABOUT THE 160 ACRES ONCE THE COURT DECIDES?

1       THE COURT:  I DON'T KNOW THE VALIDITY OF THE CONCERNS

2   OR THE ERRORS IN DEBTOR'S 17, WHICH IS YOUR PROPOSED LEGAL

3   FOR THAT REMAINING SECTION.  OBVIOUSLY, IT ALSO INCLUDES

4   THIS DISPUTED SECTION, BUT I WOULD WELCOME ANY THOUGHTS

5   THAT ANYBODY CAN DO, PRACTICALLY.  IF YOU CAN RESOLVE THE

6   OTHER THAT IS UNDISPUTED, YOU SHOULD.  AND I AGREE WITH

7   YOU A HUNDRED PERCENT YOU SHOULD.  IF NOT, I'VE GOT TO

8   FIGURE OUT HOW TO GET THAT DONE; AND I DON'T PARTICULARLY

9   WANT TO HAVE TO DO THAT.

10      MR. KILLIAN:  I THINK WE'RE EQUIPPED TO DO IT, YOUR

11  HONOR.

12      THE COURT:  BUT I'LL BE GLAD TO.

13      MR. WEBBER:  JUDGE, I THINK WE CAN DO IT.  I THINK WE

14  CAN DO IT, TOO.

15      THE COURT:  MR. JONES?

16      MR. JONES:  YES, YOUR HONOR.  YOU KNOW, I LOOKED AT

17  THEIR RESPONSE BACK TO THE DRAFT DEED THAT WE SENT; AND,

18  YOU KNOW, I MEAN, IT COMES TO -- THE QUESTION COMES DOWN

19  TO DO YOU BELIEVE THE SURVEYOR OR DO YOU BELIEVE THE

20  PROPERTY APPRAISER WHO -- THE SURVEYOR WHO DID THE

21  SURVEY WORKED FOR THE PROPERTY APPRAISER BUT THEY --

22  LISTEN, I'M A REAL ESTATE LAWYER BY TRAINING.  SO IS MR.

23  BAKER.  I CAN TELL YOU OFF THE TOP OF MY HEAD I DON'T HAVE

24  PROBLEMS WITH -- I DON'T RECALL ANY SIGNIFICANT PROBLEMS

25  WITH WHAT THEY TURNED BACK -- I DO, BEFORE I REPRESENT TO

1    THE COURT THAT I'M OKAY WITH THAT, I JUST WANT TO READ

2    THROUGH IT.  BECAUSE IF IT'S A WRONG CALL, AND IT SHOULD BE

3    SOUTHEAST INSTEAD OF SOUTHWEST, THAT SEEMS TO BE PETTY.

4    BUT IT'S NOT.  IT MESSES THINGS UP.  AND IF I CAN WORK ON THAT

5    AND ACCEPT WHATEVER CHANGES THAT THEY'VE GIVEN, WE

6    WOULD LIKE THE DEED TO THAT PROPERTY.

7           I MEAN, I'LL UNDERTAKE TO DO THAT.  I WOULDN'T HAVE

8    ANY PROBLEM.  YOU KNOW, WE WORKED HARD WITH THE

9    SURVEYOR, TWO TITLE COMPANIES.  I MEAN, IT'S BEEN --

10          THE COURT:  IT'S FRUSTRATING, BUT IT -- BUT THIS IS A MESS.

11   I MEAN, IT IS MORE THAN JUST A LITTLE BIT OF A MESS.  IT'S A

12   MESS.  AND WE'VE GOT TO CLEAN IT UP, COLLECTIVELY, THE

13   PEOPLE IN THIS ROOM.  AND SO, ALL I CAN DO IS, IF YOU CAN'T

14   WORK IT OUT VOLUNTARILY, I'LL HAVE TO FIGURE OUT A WAY TO

15   DO IT; AND THAT'S MY JOB.  I'D ENCOURAGE YOU TO WORK IT OUT

16   VOLUNTARILY.

17          MR. WEBBER:  JUDGE, WE'RE GOING TO TRY TO DO THAT.

18   AND THE REASON THAT WE GAVE THEM BACK THOSE

19   CORRECTIONS WAS OUR EFFORT TO GET BACK TO THEM.

20          THE COURT:  GOOD.

21          MR. WEBBER:  I MEAN, NOW LET'S WORK ON THAT.

22          THE COURT:  YES.

23          MR. WEBBER:  AND IF WE DO THE DEED, WE WILL DO SOME

24   KIND OF NOTICE SO THAT YOU KNOW THAT IT'S BEEN DELIVERED

25   EXCEPT FOR THE NORTHEAST QUARTER OF SECTION 23; AND THAT

1       SHOULD LET THE COURT KNOW THAT WE'VE DONE THAT.

2               MR. JONES:  AND IT SHOULD BE A WARRANTY DEED.  THAT'S

3       WHAT WAS ORDERED.

4               THE COURT:  AND WE'RE NOT TO THAT POINT, YET.  I THINK

5       WE'VE HAD THAT DISCUSSION BEFORE.  AND IF YOU CAN

6       CONVINCE ME HE CAN GIVE YOU A WARRANTY DEED, I

7       UNDERSTAND IT.  BUT WHEN WE WERE HERE PREVIOUSLY, THIS IS

8       A MESS.  AND UNLESS YOU CAN CLARIFY FOR ME THAT THERE IS

9       NO FURTHER LEGAL ISSUE PROBLEMS, NO ONE CAN GIVE YOU A

10      WARRANTY DEED.  I CAN'T GIVE YOU A WARRANTY DEED.

11              MR. JONES:  WELL, JUDGE, IF I ACCEPTED EVERY ONE OF

12      THEIR CHANGES TODAY --

13              THE COURT:  AND YOU KNOW, THIS IS REALLY NOT A GOOD

14      ARGUMENT FOR YOU TO MAKE RIGHT NOW.  IT'S REALLY NOT.  I

15      MEAN, WE CAN -- I CAN SIT HERE AND HAVE THIS CONVERSATION

16      WITH YOU, BUT RIGHT NOW, GIVEN THE CONCERNS THAT WERE

17      RAISED IN DEBTOR'S EXHIBIT 17, WHICH I DON'T KNOW IF THEY'RE

18      LEGITIMATE OR NOT, I WOULDN'T ORDER ANYBODY TO GIVE YOU A

19      WARRANTY DEED.

20              SO, THERE'S GOT TO BE SOME MORE STEPS TAKEN BEFORE I

21      WOULD BE COMFORTABLE ORDERING SOMETHING LIKE THAT.  I'D

22      ENCOURAGE YOU TO DO IT VOLUNTARILY.  I'M NOT GOING TO BE

23      LINGERING TOO LONG ON THIS, BECAUSE WITH THE DETAILED

24      INFORMATION THAT YOU'VE BEEN GIVING ME, THE LONGER IT

25      TAKES ME, THE MORE I FORGET, QUITE HONESTLY.  SO, I NEED TO

1    RULE UPON IT WAS QUICKLY AS I CAN.  I WILL BET YOU I GET DONE

2    BEFORE YOU-ALL FINISH YOUR DISCUSSIONS.  SO, THAT WOULD

3    JUST BE MY PREDICTION.

4          SO, I'M GOING TO GO AHEAD AND RULE UPON ALL THE

5    ISSUES OTHER THAN ANY ADDITIONAL ISSUES RAISED BY THE

6    POTENTIAL LEGAL ON THE TRANSFER -- THE UNDISPUTED PORTION.

7    I'LL GIVE YOU MY WEIGH-IN ON THE LAST.  HOPEFULLY, YOU CAN

8    DO IT ALL IN ONE TRANSFER.  BUT IF NOT, YOU CAN'T, AND WE'LL

9    COME BACK.  BUT IF YOU DO REACH AN AGREEMENT ON THE

10   OTHER, THAT WOULD BE HELPFUL.  I WOULD LIKE TO KNOW THAT,

11   ON THE 1,100 -- ROUGHLY 1,100 ACRES.  OTHERWISE, I'LL HAVE TO

12   CRAFT SOMETHING THAT WILL GET IT DONE; AND IT WILL

13   PROBABLY BE HIRING SOMEBODY.  I DON'T KNOW WHO IT WILL BE,

14   BUT IT WILL BE HIRING SOMEBODY AT YOUR-ALL'S EXPENSE.

15         ANYTHING ELSE?

16         MR. WEBBER:  NO, JUDGE.

17         THE COURT:  SO, I WILL TAKE THE MOTION TO COMPEL

18   UNDER ADVISEMENT.  AND I'M GOING TO FINISH MY NOTES, BUT

19   HAVE NICE TRAVELS BACK.

20         MR. WEBBER:  AND, JUDGE, THIS IS YOURS.  THIS IS

21   ADMITTED.

22         THE COURT:  IT IS.

23         MR. WEBBER:  DO YOU WANT IT?  WOULD IT BE HELPFUL TO

24   YOU OR NOT?  BECAUSE WE'VE GOT THE PICTURE.

25         THE COURT:  I DON'T REALLY NEED IT.

222

1          MR. WEBBER:  OKAY, WE'LL TAKE IT.

2          THE COURT:  BECAUSE WE HAVE THE COLOR EXHIBIT IN

3   HERE.

4          MR. WEBBER:  YES, YOU DO.  ALL RIGHT.  I JUST THOUGHT IT

5   WOULD BE HELPFUL.

6          THE COURT:  I DON'T THINK WE NEED IT.

7          (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED AT 4:08

8   P.M.)

9

223

1                                CERTIFICATE OF OATH

2    STATE OF FLORIDA

3    COUNTY OF ORANGE

4

5          I, SANDRA A. MOSER, NOTARY PUBLIC, CERTIFY THAT I WAS

6    AUTHORIZED TO AND MY OFFICE DID TRANSCRIBE, FROM CD-R, THE

7    FOREGOING PROCEEDINGS AND THAT THE TRANSCRIPT IS A TRUE

8    RECORD.

9          I FURTHER CERTIFY THAT I AM NOT A RELATIVE, EMPLOYEE,

10   ATTORNEY OF COUNSEL OF ANY OF THE PARTIES, NOR AM I FINANCIALLY

11   INTERESTED IN THE ACTION.

12         DATED THIS 21ST DAY OF APRIL, 2015.

13

14                    _____

15                    SANDRA A. MOSER, RPR, FPR

16                    NOTARY PUBLIC - STATE OF FLORIDA

17                    MY COMMISSION NO. FF113959

18                    MY COMMISSION EXPIRES:  5/6/2018