ORDERED.

Dated: September 10, 2015

_Karen S. Jennemann_
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| 8 MILE RANCH, LLC, ) | Case No. 6:12-bk-10227-KSJ |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |

# MEMORANDUM OPINION GRANTING CREDITORS' MOTION TO COMPEL DEBTOR'S COMPLIANCE WITH CHAPTER 11 PLAN CONFIRMATION ORDER

Creditors, the Machado Family Limited Partnership No. 1 ("Machado 1") and the Machado Family Limited Partnership No. 3 ("Machado 3") (collectively, the "Machado Creditors"), seek to compel[1] the Debtor, 8 Mile Ranch, LLC, to transfer about 1,300 acres of real property to the Machado Creditors as offered in the Debtor's Chapter 11 Plan and as directed in the Confirmation Order.[2] Debtor objects to the transfer of only a portion of the property, roughly 160 acres.[3] Because the Debtor is not entitled to retain these 160 acres, the Court will overrule the objection and grant the Machado Creditors' request to compel the transfer.

---

[1] Machado's Motion to Compel, Doc. No. 157.
[2] Doc. Nos. 73 and 139.
[3] *See*, Debtor's Memorandum of Law in Response and Opposition to Machado Motion to Compel, Doc. No. 169; Machado Family Limited Partnership No. 1's Memorandum in Response to Debtor's Memorandum of Law, Doc. No. 170; Debtor's Response to the Machado Family Limited Partnership No. 1's Memorandum, Doc. No. 173; and the Machado Family Limited Partnership No. 1's Reply to Debtor's Response, Doc. No. 179.

Debtor owned at least 1300 acres of real property in rural Osceola County, Florida (the "Property") when it filed this Chapter 11 case in July 2012. The parties' current dispute stems from errors in the legal description of the Property dating back to 2006. So, the Court begins there.

In October 2006, CenterState Bank ("CenterState") offered the Debtor's principals, Joe and Marsha O'Berry, a $1.4 million loan.[4] The O'Berrys soon hoped to receive ownership of the Property from a family trust and agreed to secure repayment of the CenterState loan with a mortgage once they obtained legal title. CenterState asked the O'Berrys to provide a rough survey of the Property they intended to later pledge as collateral.[5] The O'Berrys commissioned the infamous Sketch of Description[6] (the "Sketch") that appears to be the root cause of this legal description debacle.

The Sketch's error relates to roughly 160 acres in Section 23 (the "Section 23 Property") that is in dispute today.[7] The written description at the top of the Sketch contains an accurate description of the Section 23 Property, a portion of the purported "A" tract of property. The heading "A" Legal Description includes "NE 1/4 of Section 23, Township 27S, Range 31E, less the N 1/2 of the SW 1/4 of the NW 1/4 of the NE 1/4 of Section 23."[8] But the graphic description of this same area in the Sketch contains a mistake. As the surveyor who created the Sketch

---

[4] Promissory Note, Machado Exhibit 4. The loan was not funded until April 2007. Trans. of March 30, 2015 at 66. The loan consolidated four other loans the O'Berrys personally owed to CenterState and provided them with an additional $300,000 they used to invest in a Texas ranch with the Machado Creditors. Trans. of March 30, 2015 at 151-53.

[5] Trans. of March 30, 2015 at 142–43.

[6] Machado Exhibit 3.

[7] The accurate legal description of the Section 23 Property, taken from the Warranty Deed to the Debtor from the O'Berrys (Debtor's Exhibit 2) is: "the NE 1/4 LESS the North 1/2 of the SW 1/4 of the NE 1/4 of the NW 1/4 of the NE 1/4 of Section 23 . . . all in Township 27 South, Range 31 East, Osceola County, Florida." This encompasses substantially all of the Northeast 1/4 of Section 23, minus a small roughly half-acre parcel of swampland owned by a third party.

[8] Machado Exhibit 3.

testified: in what is the Northeast 1/4 of Section 23, the Sketch mistakenly states "the NE 1/4 of Section **24**" instead of "the NE 1/4 of Section **23**".[9]

The error, referencing Section 24 and not Section 23, was repeated in the formal Mortgage given by the O'Berrys to CenterState. The Mortgage states that its collateral includes "the Northeast 1/4 of **Section 24**, Township 27 South, Range 31 East, less the North 1/2 of the Southwest 1/4 of the Northwest 1/4 of the Northeast 1/4 of **Section 23**."[10] The Mortgage's description on this point is illogical. It purports to subtract Section 23 land from Section 24 land—an irreconcilable juxtaposition. Also, the O'Berrys never owned the "Northeast 1/4 of Section 24", so they could not have granted a mortgage on it.[11]

The loan's funding was delayed while the title insurer, Stewart Title, did a pretty poor job in "confirming" the legal description for the Mortgage, which, as is now obvious, was erroneous. The O'Berrys received the Property by trustee's deed from a family trust on March 23, 2007.[12] CenterState closed the loan on April 9, 2007, without discovering the mistaken legal description affecting the Section 23 Property.[13] The parties did not discover this and other more minor mistakes in the legal description until years later.

On April 18, 2008, a year after the loan with CenterState closed, the O'Berrys deeded the Property to the Debtor, retaining a parcel they use for their home (the "Homestead").[14] Although the evidence is ambiguous on the exact location of the Homestead *vis-a-vis* the rest of the

---

[9] Trans. of March 3, 2015 at 53–54.
[10] Debtors Exhibit 1 at p. 8.
[11] Trans. of March 30, 2015 at 196.
[12] Trustee's Deed, Machado Exhibit 6.
[13] Trans. of March 3, 2015 at 70; Settlement Statement, Machado Exhibit 9 (showing "settlement date" of April 9, 2007 and a "proration date" of August 26, 2006).
[14] Debtor's Exhibit 2. The parties agree the O'Berrys' home was never owned by the Debtor. Trans. of March 30, 2015 at 188:23.

Property,[15] the mailing address for both the Homestead and the balance of the Property owned by the Debtor is the same—5400 Eight Mile Ranch Road, Saint Cloud, Florida 34773.

The transfer of the Property to the Debtor was made to address tax and liability concerns arising after the O'Berry's agreed to form a "mitigation bank"[16] with the Machado Creditors.[17] The Machado Creditors simultaneously purchased CenterState's promissory note and received an assignment of the Mortgage containing the erroneous legal description. Soon after, the business relations between the parties soured. Machado filed several lawsuits against the Debtor and the O'Berrys: two Florida lawsuits, one of which sought to foreclose on and to reform the Mortgage to fix the errors in the legal description, and two lawsuits in Texas relating to their business ventures in that state (the "State Court Litigation").[18]

On July 27, 2012, while the State Court Litigation was pending, the Debtor filed this Chapter 11 case.[19] Debtor then filed an adversary proceeding against Machado Creditors alleging they received fraudulently transferred property from the Debtor while Louis Machado was manager of the Debtor but just prior to withdrawing as members of the Debtor (the "Adversary Proceeding").[20] So now litigation was pending in Texas state court, Florida state court, and in this Court.

Before the litigation further escalated, the parties successfully mediated their disputes agreeing to resolve the State Court Litigation, the Adversary Proceeding, and the Debtor's Chapter 11 case. The Mediated Settlement Agreement[21] provided that the Machado Creditors

---

[15] Testimony by Mr. O'Berry indicated that the Homestead is a roughly 39-acre "chimney shaped" parcel located near the east end of the Property.
[16] Mitigation banking, or environmental mitigation, is defined as "[a] project or program designed to offset the effects of human activities on an existing historic or natural resource, such as wetland, an endangered species, or an archaeological site." *Black's Law Dictionary* 652 (10th ed. 2014).
[17] Trans. of March 30, 2015 at 146, 153.
[18] The lawsuits are listed in the Mediated Settlement Agreement, Debtor's Exhibit 6.
[19] Doc. No. 1.
[20] *See* Adversary No. 6:12-ap-00219-KSJ. The Defendants were Louis Machado, LP, Machado Family Limited Partnership No. 1, and Machado Family Limited Partnership No. 3.
[21] *See* Motion to Approve Compromise, Debtor's Exhibit 7; Mediated Settlement Agreement, Debtor's Exhibit 6.

would transfer certain property to the Debtor which would be listed for sale together with the Property the Debtor already owned.[22] The Machado Creditors would receive the first $3 million of any sale proceeds, with any excess to be split 50/50 between the Machado Creditors and the Debtor.[23] If the combined property did not sell within 6 months, the Mediated Settlement Agreement allowed the Machado Creditors to credit bid and to receive title to the Property.[24]

On April 3, 2013, before the 6-month period ended, the Debtor proposed a Chapter 11 Liquidating Plan (the "Plan")[25] that incorporated the Mediated Settlement Agreement and provided that the Machado Creditors' claims shall be "satisfied by either: (1) the sale of the Mediated Real Property for the net sale price of $3,000,000; or (2) transfer of the Real Property to Machado No. 1."[26] The Machado Creditors originally objected to confirmation of the Plan for reasons unrelated to the present dispute.[27] Eventually however the parties agreed to the consensual confirmation of the Debtor's Plan.

The 6-month deadline to sell the Property ended without a sale on June 30, 2013. On September 27, 2013, the Court entered the consensual Confirmation Order[28] directing the Debtor to transfer the Property to the Machado Creditors:

> The **Real Property** shall be deeded to the Machado Creditors, or its designee, after this Order becomes final and non-appealable. Counsel for the Machado Creditors shall prepare the Warranty Deed and any other commercially reasonable conveyance documents, which shall be executed by the Debtor in order to convey clear and marketable title to the Real Property.[29]

---

[22] *See* Mediated Settlement Agreement ¶ 1, Debtor's Exhibit 6. Debtor argues that the language "that is encumbered by the mortgage" in Paragraph 1 of the Mediated Settlement Agreement, Debtor's Exhibit 6, excises the Section 23 Property from the portion to be deeded over to the Machado Creditors. This argument will be addressed *infra*.
[23] *See* Mediated Settlement Agreement ¶ 1(a)–(d), Debtor's Exhibit 6.
[24] Mediated Settlement Agreement ¶ 1(e), Debtor's Exhibit 6.
[25] Debtor's Exhibit 11.
[26] Plan at p. 15, Debtor's Exhibit 11.
[27] Machado's Limited Objection, Debtor's Exhibit 18.
[28] Confirmation Order, Debtor's Exhibit 13.
[29] Confirmation Order ¶ 7, Debtor's Exhibit 13.

The parties then spent nearly a year trying to fix errors in the Property's legal description. When the Machado Creditors sent a draft warranty deed to the Debtor, the dispute over the Section 23 Property was highlighted.[30] After failing to resolve the dispute amicably, the Machado Creditors moved to compel the Debtor to convey the Property required under the Confirmation Order.[31] The Machado Creditors primarily seek a determination they are entitled to the Section 23 Property.

As provided for in the Plan and Confirmation Order, this Court maintains jurisdiction to resolve disputes arising under Plan.[32] This Court further has inherent jurisdiction to interpret the Confirmation Order: "A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization."[33] So my task is to determine whether the Debtor or the Machado Creditors are entitled to the Section 23 Property under the Plan and Confirmation Order.

I initially observe that "a confirmation order should be interpreted together with the chapter 11 plan so that the goal of the plan is not subverted by 'arbitrary enforcement of a confirmation order.'"[34] An order confirming a chapter 11 plan is integrally related to the plan itself, and "allowing the order of confirmation to stand alone, separate and apart from the plan, in the interpretive process, would tempt parties to insert other provisions in the confirmation order that might not coincide with a plan and, on occasion, might not even comport with the Bankruptcy Code."[35] Courts must interpret plans and confirmation logically and together.

---

[30] Aside from the issue with the Section 23 Property, the Debtor also noted numerous other deficiencies with the deed proposed by the Machado Creditors. *See* Debtor's Exhibit 17.
[31] Doc. No. 157.
[32] Plan at p. 24, Doc. No. 75; Confirmation Order ¶ 10, Doc. No. 139.
[33] *In re Friedman's, Inc.*, No. 05-40129, 2006 WL 6902023, at *1 (Bankr. S.D. Ga. Mar. 28, 2006) (quoting *In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002)). *See also In re Doty*, 129 B.R. 571, 587–88 (Bankr. N.D. Ind. 1991). A bankruptcy court's interpretation of its own orders also is entitled to deference upon appellate review. *In re Optical Technologies, Inc.*, 425 F.3d 1294, 1300 (11th Cir. 2005).
[34] *In re Dynegy Inc.*, 486 B.R. 585, 590 (Bankr. S.D.N.Y. 2013).
[35] *Evercore Capital Partners II, L.L.C. v. Davis Trust (In re Davis Offshore, L.P.),* 644 F.3d 259, 268 (5th Cir. 2011).

The general rules of contract interpretation provide guidance on interpreting this Plan and Confirmation Order and in determining which party is entitled to the Section 23 Property.[36] The starting point is the language of the contract itself: "'the plain meaning of a contract's language governs its interpretation' under general contract principles."[37] When a contractual term is ambiguous, however, and is "reasonably susceptible to more than one interpretation," a court may consult extraneous evidence to elucidate the parties' meaning.[38]

Under applicable Florida law,[39] "when a contract is rendered ambiguous by some collateral matter, it has a latent ambiguity, and the court must hear parol evidence to interpret the writing properly."[40] Use of parol evidence is limited to resolving *latent* ambiguities, "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings."[41] "A latent ambiguity is thus brought to light when extraneous circumstances reveal 'an insufficiency in the contract not apparent from the face of the document.'"[42]

---

[36] *See In re FFS Data, Inc.*, 776 F.3d 1299, 1304 (11th Cir. 2015) ("The Court follows principles of contract interpretation to interpret a confirmed plan of reorganization."); *Matter of Texas Gen. Petroleum Corp.*, 52 F.3d 1330, 1335-36 (5th Cir. 1995).

[37] *FFS Data*, 776 F.3d at 1304 (quoting *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011)).

[38] *Id.* (quoting *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1360 (11th Cir. 1988)).

[39] Though the parties did not discuss choice of substantive contract law, the Court applies Florida law as the state where the Property is located, the Mortgage was executed and recorded, and the Plan was confirmed. *See, e.g.*, *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993) ("Although a confirmed bankruptcy plan is a judgment rendered by a federal court in a case arising under federal law, because there is little need for a nationally uniform body of law regarding the interpretation of Chapter 11 plans and because state law is regularly incorporated into bankruptcy law, state law constitutes the federal rule of decision here and governs our interpretation of [the debtor's] plan."); *In re UNR Indus., Inc.*, 212 B.R. 295, 301 (Bankr. N.D. Ill. 1997) (applying Illinois contract law to interpret plan confirmed in Illinois); *In re Gulf Coast Orthopedic Ctr., Inc.*, 297 B.R. 865, 869 (Bankr. M.D. Fla. 2003) (applying Florida contract law to interpretation of plan and confirmation order); *In re Angel Fire Corp.*, No. 11-93-12176-SS, 2012 WL 5880675, at *8 (Bankr. D.N.M. Nov. 20, 2012) ("The plan should be analyzed according to the principles of contract law of the state in which the plan was confirmed.").

[40] *Mac-Gray Servs., Inc. v. Savannah Associates of Sarasota, LLC*, 915 So. 2d 657, 659 (Fla. 2d DCA 2005).

[41] *Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So. 2d 544, 547 (Fla. 1st DCA 1973).

[42] *GE Fanuc Intelligent Platforms Embedded v. Brijot Imaging Sys., Inc.*, 51 So. 3d 1243, 1245 (Fla. 5th DCA 2011).

The Plan and Confirmation Order here contain such a latent ambiguity. The Confirmation Order provides that "[t]he *Real Property* shall be deeded to the Machado Creditors, or its designee . . . ."[43] The Confirmation Order however does not define the term "Real Property." But, because the Confirmation Order and Plan are construed together, the Court looks at the Plan's definition of "Real Property" as "the property located at 5400 Eight Mile Ranch Road, Saint Cloud, Florida 34773."[44] The street address however encompasses 1,300 acres of real property owned by the Debtor, the Homestead, and the disputed Section 23 Property. So, what Real Property are the Machado Creditors entitled to receive?

Defining property to be conveyed, purchased, or transferred by a street address is a classic latent ambiguity. Where a contract "identifies a parcel of land by a street address and names the city and state in which it is located, then . . . the court should properly receive parol evidence to determine the intent of the parties in light of surrounding circumstances so as to overcome any latent ambiguity regarding the extent of the parcel intended to be conveyed."[45] This is the precise problem here: the address "5400 Eight Mile Ranch Road, Saint Cloud, Florida 34773" could mean many different things. Without a legal description "the extent of the parcel to be conveyed" is unclear; the address is ambiguous.

Parol evidence to resolve this ambiguity was needed and supplied at the evidentiary hearings held on March 3 and 30, 2015. The evidence clarified that the Debtor intended "5400 Eight Mile Ranch Road, Saint Cloud, Florida 34773" to stand for **all property owned by the Debtor as of the commencement of this bankruptcy case, including the Section 23 Property**. As the Debtor's attorney put it, because the 1300 acres of rural property has no address and the legal description was erroneous, the Debtor used the closest available address to denote the

---

[43] Confirmation Order ¶ 7, Doc. No. 139.
[44] Plan at p. 10, Doc. No. 73.
[45] *W. World, Inc. v. Dansby*, 566 So. 2d 866, 868 (Fla. 1st DCA 1990).

Debtor's Property: the address of the O'Berrys' Homestead.[46] The street address, albeit nondescript, was intended to encompass all of the Debtor's real property but not the Homestead property always owned by the O'Berrys.

The Debtor's schedules reinforce this point. In Schedule A, the Debtor only lists one real property asset: 5400 Eight Mile Ranch Road, Saint Cloud, Florida 34773, valued at $10,000,000.[47] When asked why the Debtor identified all of the Debtor's property with the Homestead address, Mr. O'Berry stated: "That's what we put down, where my house is. That's where we live and that's where the property's at. It's just a vast piece of property. I mean, there's [sic] no streets, you know, nothing like that."[48] Debtor intended the address, which supplies the definition for "Real Property" in the Plan and Confirmation Order, to include the Section 23 Property.

Debtor now refutes this straightforward contractual interpretation making three main arguments. First, Debtor argues that because the Confirmation Order did not expressly incorporate the defined terms from the plan, the Plan's definition of "Real Property" is irrelevant. Second, the Debtor claims that the Confirmation Order *really* meant only to transfer the Debtor's property that was "encumbered by the mortgage", and, with that understanding, the Debtor would retain the Section 23 Property. Third, the Debtor urges the Court to consider further extrinsic evidence to conclude that the parties intended that the Debtor would retain the Section 23 Property.

The Court rejects that Debtor's argument that, because the Conformation Order does not expressly incorporate defined terms from the Plan, the Plan's definition of "Real Property" is

---

[46] Trans. of March 3, 2015 at 28, 40–41.
[47] Schedule A, Doc. No. 18. The Court took judicial notice of the Debtor's schedules at trial. Trans. of March 30, 2015 at 192:13–192:14.
[48] Trans. of March 30, 2015 at 192:3–192:6.

irrelevant. The Confirmation Order, jointly drafted by the parties,[49] consistently uses terms defined in the Plan such as "Machado Creditors," "Equity Interests," "Effective Date," and "Allowed Claim".[50] "Though the Confirmation Order does not explicitly state that it incorporates the definitions of the Plan, it uses the defined terms from the Plan with a regularity that indicates that these terms are being incorporated."[51] As the Court already has explained, a confirmation order is not construed in a vacuum, but is interpreted together with the plan of reorganization. The Court therefore applies the definition of Real Property from the Plan and concludes that it includes **all property owned by the Debtor as of the commencement of this bankruptcy case, including the Section 23 Property.**

Debtor next argues that the Machado Creditors are only entitled to Property that is "encumbered by the mortgage." Because the legal description in the Mortgage contains a mistake as to the Section 23 Property, the Mortgage arguably does not include the Section 23 Property. If the Debtor only must transfer its property that is "encumbered by the mortgage," then, the Debtor contends it can retain the Section 23 Property.

Under the Debtor's tortured construction, the Court should ignore the language of the Confirmation Order and the Plan's definition of Real Property and instead look to the Plan's treatment of the Machado Creditors, namely Machado 1, Class 2 in the Plan. The Plan defines "Class 2 – Secured Claim of Machado No. 1" as "the Allowed Secured Claim of Machado No. 1. The Claim is secured by a mortgage on the Real Property."[52] Considering "Real Property" is *includes* the Section 23 Property, the Debtor's argument is defeated by the Plan's definition of

---

[49] The Debtor's attorney, who testified at the evidentiary hearing, could not recall whether he drafted the Confirmation Order, but surmised it was jointly drafted. Trans. of March 3, 2015 at 45.
[50] *See* Confirmation Order, Doc. No. 139.
[51] *In re Skyport Global Communications, Inc.*, 2011 WL 111427 at *22 n.19 (Bankr. S.D. Tex. 2011).
[52] Debtor's Exhibit 11 at 12 (emphasis added). Machado 3's claim does not appear to be treated as a secured claim in the Plan, but the Confirmation Order and the parties themselves generally treat the two Machado Creditors as one, with aligned interests.

Class 2 claims because it include the Section 23 Property and is not limited to property "encumbered by the mortgage."

But, looking at the Plan's *treatment* of Class 2 claims, the Plan provides that the claims "shall be satisfied by either: (1) the sale of the ***Mediated Real Property*** for the net sale price of $3,000,000; or (2) transfer of the ***Real Property*** to Machado No. 1, pursuant to the terms of the Mediated Settlement."[53] The first term used above, "Mediated Real Property," is defined in the Plan and limits the included property to property "encumbered by the mortgage." The Plan expressly defines "Mediated Real Property" as "the property located at 5400 Eight Mile Ranch Road, Saint Cloud, Florida 34773 that is encumbered by the mortgage, as well as parcels owned by the Machado Family Limited Partnership No. 3 which descriptions are attached to the Mediated Settlement Agreement."[54] But, Class 2's treatment only mentions Mediated Real Property in discussing the property to be listed *for sale*; the Plan expressly uses a *different* term—Real Property—when discussing the property to be transferred to the Machado Creditors if a sale did not take place. The term Real Property does not limit included property to that "encumbered by the mortgage." So, again, the Debtor's argument fails because the Plan requires the Debtor to transfer all Real Property to the Machado Creditors if no sale occurs.

The Debtor continues to urge the Court however to look at the Mediated Settlement Agreement to conclude that the Plan's qualifying language in Class 2's treatment, "pursuant to the terms of the Mediated Settlement Agreement," incorporates the "encumbered by the mortgage" limitation. The Mediated Settlement Agreement's defines "Property" as "the property located at 5400 Eight Mile Ranch Road, Saint Cloud, Florida 34773, that is encumbered by the mortgage," plus the property held by Machado 3. This definition of property simply does not carry over into the Plan. The Plan states that the Real Property shall be transferred to Machado 1

---

[53] *Id.* at 15 (emphasis added).
[54] Plan, Debtor's Exhibit 11 at 10.

under the Mediated Settlement Agreement. The Plan itself already defines the property to be transferred; it is illogical to resort to an early agreement to supersede the express definition provided for in the Plan itself.

Moreover, even if "encumbered by the mortgage" somehow did affect the amount of property the Debtor now must convey to the Machado Creditors, the Court cannot conclude that the Debtor would retain the Section 23 Property. The Machado Creditors, in their foreclosure suit, sought reformation of the Mortgage to clear up all errors in the legal description, including the obvious error in describing the Section 23 Property. Remember, the Mortgage contained many mistakes that make determining exactly what *is* "encumbered by the mortgage" unclear. The Court specifically finds that the parol evidence did not clarify what property was or was not "encumbered by the mortgage." At the time the Mediated Settlement Agreement was signed, neither party could have known whether the Section 23 Property was or was not "encumbered by the mortgage."

Third, the Debtor asks the Court to consider further extrinsic evidence, such as the Debtor's subjective intent and statements made by parties at prior hearings, to determine what the Debtor *really* meant by "Real Property" in the Confirmation Order. The Court must emphasize that its consideration of extrinsic evidence is limited. "If a latent ambiguity exists, parol evidence may be admitted for the purpose of explaining or clarifying the language revealed to be ambiguous, but not for the purpose of uncovering the parties' alleged 'true intent.'"[55] The Court's determination that one term, 5400 Eight Mile Ranch Road, is ambiguous does not allow the Debtor to cavalierly redraft the parties' contract or settlement agreement. If the Debtor expected to retain the 160 acres affected by the erroneous legal description impacting the Section 23 Property, the Debtor should have inserted that term in the parties' settlement agreement and

---

[55] *Moore v. Pennsylvania Castle Energy Corp.*, 89 F.3d 791, 796 (11th Cir. 1996).

the later Plan and Confirmation Order. The Debtor was silent and now cannot rely on attenuated evidence to rewrite the agreement. By the terms of the Confirmation Order and Plan, the Debtor is required to deed over all Property, including the Section 23 Property, to the Machado Creditors.

The Court lastly must note the absurdity of the Debtor's position. The Plan was a *liquidating* plan. The Plan has no provision allowing the Debtor to retain anything, assuming no sale occurred and there were no proceeds to split.  The mediator who assisted in negotiating the Mediated Settlement Agreement understood that any future liquidating plan would transfer all property of the Debtor. Debtor now claims it intends to run cattle on the Section 23 Property and repay its unsecured creditors back over time. Nowhere in the Plan or in any document filed with the Court does the Debtor ever document this "intent." Debtor's entire argument smacks of a *post hoc* grab to rewrite its settlement.

The Court rejects the Debtor's arguments, finds that the Plan and Confirmation Order direct the Debtor to turn over the Section 23 Property to the Machado Creditors, and will grant the Machado Creditors' Motion to Compel.[56]  The Debtor also needs to assist in resolving the other errors in the legal description of the Property that the parties represented as "minor."  At the evidentiary hearing, the parties were confident they could work through the remaining issues in the legal description once the Court resolved the Section 23 Property issue.  The Court hopes and expects the parties to do just that.

The Debtor and the Machado Creditors shall have 30 days from the entry of this Memorandum Opinion and the accompanying Order, to be entered simultaneously, to jointly draft an executable deed providing for the transfer of the Debtor's Property, including the Section 23 Property, to the Machado Creditors. If the parties cannot accomplish this, the Court

---

[56] Doc. No. 157.

will appoint special master to resolve the remaining mistakes in the legal description and to draft an executable deed with all costs to be borne by the Machado Creditors. A status conference is set for **October 21, 2015, at 2:00 p.m.**, in Courtroom A, Sixth Floor, 400 West Washington Street, Orlando, Florida 32801, for the Court to confirm that no further action by the Court is needed.

###

Attorney Brian Rich is directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of this order.